**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>DBMP LLC,[1]<br><br>              Debtor. | Chapter 11<br><br>Case No. 20-30080 (JCW)<br><br>**Ref. Docket No. 948** |

**FUTURE CLAIMANTS' REPRESENTATIVE'S OBJECTION**
**TO MOTION OF THE DEBTOR FOR ESTIMATION OF**
**CURRENT AND FUTURE MESOTHELIOMA CLAIMS**

Sander L. Esserman (the "Future Claimants' Representative"), as the legal representative for persons who have not yet asserted an asbestos-related personal-injury claim against the above-captioned debtor (the "Debtor") but may in the future assert such a claim (the "Future Claimants"), hereby files this objection (the "Objection") to the *Motion of the Debtor for Estimation of Current and Future Mesothelioma Claims* [Dkt No. 948] (the "Estimation Motion"), seeking to estimate current and future mesothelioma claims arising from products manufactured by the former CertainTeed Corporation. In support of this Objection, the Future Claimants' Representative respectfully represents as follows:

**PRELIMINARY STATEMENT**[2]

The Debtor seeks to use estimation for an improper purpose: to deprive asbestos claimants of due process and leverage them into accepting a lower recovery on their claims than what those claimants could obtain against the Debtor and CertainTeed in the tort system. This

---

[1] The last four digits of the Debtor's taxpayer identification number are 8817. The Debtor's address is 20 Moores Road, Malvern, Pennsylvania 19355.

[2] Capitalized terms used in the Preliminary Statement but not defined therein shall have the meanings ascribed to them in the body of the Objection.

would be contrary to the requirements of the Bankruptcy Code and is fundamentally unfair to Future Claimants.

Section 502(c) does not contemplate the estimation of future claims.  Indeed, in order to ensure that the due-process rights of future claimants are protected, § 524(g) replaces the traditional claims "allowance" process for asbestos bankruptcies and channels all present and future asbestos claims to a settlement trust that will administer and liquidate claims—*after* confirmation—in accordance with trust distribution procedures approved by the District Court and accepted by the FCR and 75% of current claimants.[3]  Nothing requires the Court to estimate claims in a § 524(g) case—many asbestos bankruptcies successfully confirm § 524(g) plans without any estimation.[4]

While the Court in *Bestwall* found that estimation of certain asbestos claims was necessary under the specific circumstances of that case, estimation is neither mandatory nor appropriate here.  First, the context in which the Debtor seeks estimation here is different than it was in *Bestwall* because estimation in *Bestwall* was a last resort.  In fact, the *Bestwall* Court deferred ruling on the Debtor's initial request for estimation, observing that "the debtor should have a pretty good idea of the value it places on its asbestos liability . . . ."  Hr'g Tr. at 13:20-22, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Oct. 23, 2019) [Dkt. No. 1435]. When estimation was eventually granted a year later, it was only after mediation had proven unsuccessful and the Court had reluctantly concluded that "[n]o alternative to estimation was

---

[3] *Cf.* 11 U.S.C. § 524(g)(B)(ii)(I) (stating that a court may confirm a § 524(g) plan only if "the actual amounts, numbers, and timing of such future demands cannot be determined").

[4] *See, e.g.*, Order Confirming the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., as Modified, *In re Kaiser Gypsum Co.*, Case No. 20-cv-00537-GCM (W.D.N.C. July 28, 2021); Order Affirming the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Plan of Reorganization, as Modified, for Sepco Corporation Under Chapter 11 of the Bankruptcy Code, *In re Sepco Corp.*, Case No. 5:20-cv-00629-SO (N.D. Ohio May 5, 2020).

suggested that presents a viable path forward at this point" and that "the only way forward for the case at this point is an estimation process that will hopefully lead the parties to a consensual resolution." Bestwall Estimation Order ¶ 11; *cf.* Hr'g Tr. at 65:14-19, 67:3-8, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (JKF) (Bankr. D. Del. Sept. 26, 2011) [Dkt. No. 1699] (ordering estimation because "[t]his case seems to be on stuck. It's been on stuck for a long time and it's time to get it moving").

Here, by contrast, there is no reason to conclude that the chapter 11 case is at a dead-end. As the Court has observed, the parties have not had any meaningful discussions or negotiations,[5] but the FCR and the Official Committee of Asbestos Personal Injury Claimants (the "ACC") are pursuing litigation designed to maximize the assets available for the benefit of asbestos claimants, including substantively consolidating the Debtor and CertainTeed and seeking standing to investigate and prosecute estate causes of action related to CertainTeed's prepetition restructuring. As the Court has observed, it was only after the commencement of similar proceedings in *Garlock* that the parties finally reached accord on a § 524(g) plan. *Cf.* PI Ruling at 64 n.231 ("In Garlock, such a proceeding was filed, and thereafter, the parties reached accord on a Section 524(g) plan and trust."). Similarly, in *Specialty Products*, the parties settled and agreed on funding for a § 524(g) trust only after the court granted the ACC and FCR standing to pursue estate causes of action. *See, e.g.*, Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Joint Plan of Reorganization of Specialty Products Holding Corp., Bondex International, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc. at 32, *In re Specialty Products Holding Corp.*, Case No. 10-11780 (PJW) (Bankr. D. Del. Sept. 26, 2014)

---

[5] Findings of Fact and Conclusions of Law Regarding Order: (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors, (II) Denying Motion of the Official Committee of Asbestos Personal Injury Claimants to Lift the Stay, and Alternatively (III) Preliminarily Enjoining such Actions ¶ 259, *In re DBMP LLC*, Case No. 20-03004 (JCW) (Bankr. W.D.N.C. Aug. 10, 2021) [Adv. Dkt. No. 343] (the "PI Ruling").

3

[Dkt. No. 5026] (stating that the parties settled only after the court granted the ACC and FCR standing to pursue estate causes of action).

In addition to potentially fostering a consensual resolution, the FCR's and ACC's litigation could eliminate the issue of CertainTeed's ability to veto plan funding, effectively replacing the Funding Agreement with the actual assets that were available to asbestos claimants before CertainTeed's restructuring. *Cf.* PI Ruling ¶ 77 (describing the Funding Agreement as "a conditional agreement which is dependent on New CertainTeed's approval of any reorganization plan"); *id.* ¶ 170 ("Before the Corporate Restructuring, Old CertainTeed's asbestos creditors had the same ability and rights to access Old CertainTeed's considerable assets as did its other unsecured (non-asbestos) creditors. As a result of the Corporate Restructuring, asbestos creditors were placed one step beyond those assets and made dependent on the DBMP's willingness to press its rights under the Funding Agreement."). By contrast, the Debtor's suggestion that estimation will lead to a consensual plan is speculative at best—if CertainTeed does not like the result of the Court's estimation decision, it can simply walk away. *See, e.g.*, *id.* ¶ 74 ("In sum, while the Funding Agreement may provide funding for a plan, it will do so only if New CertainTeed favors that Plan.").

Second, *Bestwall* provides a cautionary tale of the undue delays occasioned by an estimation proceeding. The debtor in that case repeatedly assured Judge Beyer that it would be "prepared and ready" for estimation in 14 months. Hr'g Tr. at 22:4-9, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Oct. 22, 2020). Instead, progress in the case has ground to a halt amid non-ending discovery delays. The current case-management order setting the estimation timeline has proven unrealistic. The FCR in that case recently filed a motion seeking to extend the estimation timeline until—at least—the middle of 2023.

4

In a § 524(g) bankruptcy, estimation is properly used as the Court's last resort, not the Debtor's first strike. The Estimation Motion should be denied.

## OBJECTION

The Estimation Motion should be denied for, at least, three reasons. First, the Debtor's proposed estimation is a clear attempt to use this bankruptcy proceeding as a litigation tactic that deprives asbestos personal-injury claimants of due process. Second, because the Debtor is seeking to confirm a plan under § 524(g) and because the Court does not have authority to determine the distribution that personal-injury claimants will receive on account of their claims, estimation here is neither mandatory nor appropriate. Third, under the circumstances of this case, the estimation proposed by the Debtor would create, rather than prevent, undue delay in the administration of the Debtor's estate.

**I.     The proposed estimation is a litigation tactic.**

As is clear from the Estimation Motion, the estimation sought by the Debtor is a litigation tactic that seeks to deprive pending and future claimants of their due-process rights by ascribing lower values to asbestos-related claims than what holders of those claims would ordinarily be paid in the U.S. judicial system.[6]

In fact, the primary purposes behind CertainTeed's restructuring and the commencement of this chapter 11 proceeding were to prevent claimants from litigating their claims against CertainTeed and the Debtor in the U.S. judicial system and to use a *Garlock*-style estimation to obtain a final resolution of the CertainTeed's asbestos liabilities at a value less than it would pay in the tort system. This is not idle speculation. Amiel Gross, a former in-house counsel for

---

[6] *See, e.g.*, Estimation Motion ¶¶ 44-49 (arguing that asbestos claims against the Debtor do not have merit because the Debtor settled to avoid defense costs and without knowing that plaintiffs had potential other exposures); *cf.* PI Ruling at 16 n.43 ("Presumably, the attraction to this judicial district stems from Judge Hodges' groundbreaking claims estimation decision in *Garlock* . . . .").

5

CertainTeed who was also seconded to the Debtor, testified that using estimation to reduce claim values is in fact the entire purpose for CertainTeed's restructuring and the Debtor's bankruptcy: "I believed and knew that the real purpose [of CertainTeed's restructuring] was to wind up with . . . an entity loaded with asbestos liability for purpose of a bankruptcy proceeding and ultimate estimation that was less than continuing business as usual." Amiel Gross Deposition Transcript ("<u>Gross Dep. Tr.</u>") at 106:17-107:10.[7]

Mr. Gross explained that the enterprise's primary objective in filing for bankruptcy was to force its asbestos creditors out of the tort system and into an "estimation proceeding" supervised by this Court, similar to the estimation proceeding that occurred in Garlock and the one that was ordered in Bestwall: "Q. Did you understand that an estimation proceeding was part of the objective of the bankruptcy?  A. Of course." Gross Dep. Tr. at 107:20-23. According to Mr. Gross, estimation was "what happened with Garlock to a favorable outcome. And that, you know, was where the Bestwall matter was heading, and so . . . the understanding is that the *end objective is to obtain a final asbestos liability bill for less . . . than the tort system*." Gross Dep. Tr. at 108:8-16 (emphasis added).[8]

Case law is clear, however, that the Debtor is not permitted to use the bankruptcy case to escape or discount its liability under state tort law: "'Property interests are created and defined by state law. . . . [T]here is no reason why such interests should be analyzed differently simply

---

[7] The transcript of Gross's deposition is attached as Exhibit 2 to the *Objection of the Future Claimants' Representative to Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* [Dkt. No. 869].

[8] *See also* Gross Dep. at 109:6-110:24 (noting that discussions already taking place within Saint-Gobain and CertainTeed in June or July of 2019 that Mullin "would be great in estimation"); *id.* at 78 ("the French loved Charlie [Mullin]"); *id.* at 78:7-24 (executives from Paris "thought [Mullin] walked on water and he would make a great witness in an estimation proceeding").

because an interested party is involved in a bankruptcy proceeding.'"[9] Bankruptcy does not alter a debtor's underlying liability for asbestos-related claims; rather, a bankruptcy under § 524(g) merely "shift[s] [the] debtor's asbestos-related liabilities—based on events which had already occurred and for which the [debtor and its] insurers were already potentially responsible—to the post-confirmation trust."[10] While § 524(g) offers certainty and finality to asbestos defendants, it does not offer discounts.[11]

Section 502(c) "is not a mechanism for reducing the amount of a debtor's liability."[12] Using estimation to reduce the value of claims is fundamentally inconsistent with what the Bankruptcy Code requires: "the federal bankruptcy court should take whatever steps are necessary to ensure that the [claimant] is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued."[13] Section 502(c) does not permit the Debtor to deprive its claimants of due process by arguing that pending and future claims should be valued at amounts less than substantially similar claims were paid in the tort system.

---

[9] *Tidewater Fin. Co. v. Kenney*, 531 F.3d 312, 319 (4th Cir. 2008) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)); *see also In re Holden*, 491 B.R. 728, 734 (Bankr. E.D.N.C. 2013) ("'[T]here is no reason why property interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" (quoting *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000))).

[10] *In re Federal-Mogul Global, Inc.*, 684 F.3d 355, 379 (3d Cir. 2012).

[11] In fact, attempting to use a bankruptcy case as leverage to pressure a creditor to accede to liquidating his or her claim at an amount that is less than the amount at which the claim would be valued under non-bankruptcy law may be evidence of a bad-faith filing. *See Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 167-69 (3d Cir. 1999) (holding that the chapter 11 case was a bad-faith filing when, among other things, "[t]he plan's differing treatment of creditors suggests [the debtor's] petition was not filed to reorganize the company but rather to put pressure on antitrust plaintiffs to accept the company's settlement terms" and its "officers expressly and repeatedly acknowledged [the] Chapter 11 petition was filed solely to gain tactical litigation advantages").

[12] *RNI Wind Down*, 369 B.R. at 191.

[13] *Butner*, 440 U.S. at 56.

7

## II. Estimation is neither mandatory nor appropriate.

According to the *A.H. Robins* court, estimation of mass-tort claims may be necessary "for purposes of determining feasibility of a reorganization,"[14] but that is an entirely different proposition than an estimation "for purpose of allowance" under § 502(c). Here, the Debtor does not even attempt to argue that estimation would be useful for a feasibility analysis. Nor could it. The Debtor has repeatedly assured the Court that "[t]he Debtor has the ability to fully fund a section 524(g) trust and the administrative costs of its Chapter 11 Case"[15]—and the Court has already noted that, according to CertainTeed, "its assets greatly exceeded its combined operating and asbestos liabilities."[16]

The only justification that the Debtor attempts to offer for estimation is the proposition that the Court's estimation decision "will guide the parties' settlement discussions." Estimation Motion ¶ 36. However, because no claims will be allowed in the Debtor's proposed estimation, and no feasibility determinations will be made, the estimation that the Debtor is seeking is actually nothing more than an improper advisory opinion. The Debtor's proposed estimation is designed to inform CertainTeed as to the cost of resolving its asbestos liability—but if CertainTeed does not like the answer, it can simply walk away. *See, e.g.*, PI Ruling ¶ 74 ("In sum, while the Funding Agreement may provide funding for a plan, it will do so only if New CertainTeed favors that Plan.").

---

[14] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986)

[15] Motion of the Debtor for an Order (I) Preliminarily Enjoining Certain Actions Against Non-Debtors Or, (II) In the Alternative, Declaring that the Automatic Stay Applies to Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing on the Merits [Adv. Dkt. No. 2] ("Debtor's PI Motion") at 31.

[16] PI Ruling at ¶ 57; *see also* PI Hr'g Tr. 155:3-156:14, *In re DBMP LLC*, Case No. 20-03004 (JCW) (Bankr. W.D.N.C. Mar. 1, 2021).

The Fourth Circuit has instructed that courts must be mindful not to "stray into the practice of advisory opinion-making, solving questions that do not actually require answering . . . ." *In re KBR, Inc.*, 893 F.3d 241, 264 (4th Cir. 2018) (quoting *Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) (per curiam)); *In re Albracht*, 617 B.R. 851, 854 (Bankr. E.D.N.C. 2020) ("This court is not authorized and will not issue advisory opinions." (internal quotation marks omitted)).  An estimation designed merely to provide "context and information that will assist the parties in achieving consensus" is in fact a textbook definition of an improper advisory opinion.

### A. Bankruptcy courts do not have authority to fix the amount that personal-injury claimants recover on account of their claims.

Estimation of personal-injury and wrongful-death claims for purposes of distribution is expressly outside the core jurisdiction of a bankruptcy court where, as here, the estimation is not necessary to determine plan feasibility or to avoid undue delay.[17]  The Debtor's proposed plan provides that, absent agreement by the parties, the level of funding for the § 524(g) trust will be chosen by the Debtor "based on an estimation of the aggregate amount of Asbestos Personal Injury Claims by the Bankruptcy Court under section 502(c) of the Bankruptcy Code."[18]  Under the Debtor's proposed plan, neither the Debtor nor CertainTeed would be required to pay anything beyond the estimated amount, even if that amount is not in fact sufficient to pay claimants in full.

Fixing the value of personal-injury claims, however, is explicitly prohibited by 28 U.S.C. § 157(b).  Section 157(b)(2)(B) provides that core proceedings do not include "the liquidation or

---

[17] *See* 28 U.S.C. § 157(b)(2)(B), (5).

[18] Plan of Reorganization of DBMP LLC, at Art. I.A.15 [Dkt. No. 944] (defining "Asbestos Personal Injury Trust Funding Amount").

9

estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11," and § 157(b)(5) is explicit that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court . . . ." Were the Court to let the estimation process "set the outer limits of allowance for such claims, the due process rights of such claimants would be jeopardized to a troublesome degree."[19] Incorporating an estimate of claim liability into a chapter 11 plan effectively caps claimants' recoveries, and a debtor's motion to estimate "cannot be permitted to be the hidden lever to that result."[20]

In *A.H. Robins*, the Fourth Circuit instructed that bankruptcy courts do not have adjudicatory authority to do what the Debtor proposes here. There the court held that "[t]he bankruptcy court thus is without authority . . . over 'the liquidation or estimation of contingent or unliquidated personal injury or wrongful death claims against the estate for purposes of *distribution* under Title 11.'"[21] Moreover, personal-injury and wrongful-death claimants are "ultimately entitled, if they elect to do so, to have a jury trial of their claim in the district court. Section 157(b)(5) gives them that right."[22]

---

[19] *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 423 (Bankr. S.D.N.Y. 2003); *see also In re MacDonald*, 128 B.R. 161, 167 (Bankr. W.D. Tex. 1991) (explaining that using estimation to set the outer limit of administrative claims entitled to payment in full would "jeopardize" claimants' due-process rights). Concern about the abridgment of future claimants' due-process rights is one of § 524(g)'s animating purposes. *See, e.g.*, *In re Flintkote Co.*, 486 B.R. 99, 123 (Bankr. D. Del. 2012) (explaining that protecting "exposed yet unimpaired asbestos creditors" and providing them "just compensation for their future injuries and illnesses . . . was the primary goal behind the enactment of § 524(g)" (internal quotation marks omitted)), *aff'd*, 526 B.R. 515 (D. Del. 2014). Indeed, "if a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so." *Wright v. Owens Corning*, 679 F.3d 101, 107 n.6 (3d Cir. 2012).

[20] *In re Dow Corning Corp.*, 211 B.R. 545, 569 (Bankr. E.D. Mich. 1997).

[21] *A.H. Robins*, 788 F.2d at 1012 (quoting 28 U.S.C. § 157(b)(2)(B)) (emphasis added by court).

[22] *Id.*; *see also Dow Corning*, 211 B.R. at 569 ("These claims must be liquidated via a jury trial if the claimant requests one, and they cannot be estimated by a bankruptcy judge for purposes of distribution unless all parties consent.").

In *Dow Corning*, the court similarly reasoned that, "if estimation for plan confirmation purposes results in *de facto* estimation for distribution purposes via the effects of the plan of reorganization and the discharge provisions of § 1141(d), a claimant's right to a jury trial for purposes of liquidating her claim becomes hollow."[23] On that basis, the *Dow Corning* court rejected the debtor's request to estimate mass-tort claims against the estate, purportedly for reasons other than distribution:

> The strategy behind the Debtor's request for estimation of the aggregate value of tort claims is to limit the amount it will ultimately have to pay on account of tort liability. In other words, the Debtor's strategy assumes that estimation will lead to a discharge of all liability and that individual post-confirmation liquidation can only be had against a trust fund established as part of a plan of reorganization regardless of whether such liquidation proves that the estimate was too low. But this is not a foregone conclusion. And if the assumption is incorrect, the estimation process would have been a colossal waste of time and money.[24]

The *Dow Corning* court explained that "allowing a bankruptcy judge to estimate the aggregate value of all claims for the apparently benign reason of determining feasibility of a plan of reorganization, when combined with the [discharge] effects of 11 U.S.C. § 1141(d), can create the result that the estimation was actually for purposes of distribution as well."[25]

The bankruptcy court in *Roman Catholic Archbishop of Portland* similarly held that it could not estimate sex-abuse claims for purposes of determining the amount that the debtor would need to contribute to a trust to pay those claims in full:

> [The debtor] wants this court to estimate in the aggregate the amounts of the present child sex abuse claims, for the purported purpose of confirmation and voting. In fact, it intends to use the estimation, along with estimation of other present tort claims, to put an upper limit on the amount it will pay on all of the tort claims, while discharging any actual liability in excess of the estimated amount. This court does not have jurisdiction to estimate personal injury tort

---

[23] *Dow Corning*, 211 B.R. at 569.

[24] *Id.* at 566-67.

[25] *Id.* 569.

11

claims for purposes of distribution, which is in effect what debtor asks this court to do.[26]

The Debtor's proposed plan expressly provides that the Debtor will set the level of trust funding based on the proposed estimation and that the Debtor and its non-debtor affiliates will have no further obligation to the victims of their asbestos-containing products.[27] This belies any suggestion that the Debtor does not intend to "use estimation to establish a non-consensual cap on its asbestos liabilities."[28] As instructed by the Fourth Circuit in *A.H. Robins*, and for the same reasons that the court rejected estimation in *Dow Corning* and *Roman Catholic Archbishop of Portland*, the Court should deny the Motion as an attempt to use estimation as the "hidden lever" to cap for all time the funds available to compensate these victims.

Further, as the court held in *Dow Corning*, if "all of the personal injury claimants have not stipulated to th[e] Court's determining the estimation," which neither the Future Claimants' Representative nor the Committee have agreed to do here, the court "lack[s] the statutory authority to do anything but hear the estimation" and issue proposed findings of fact and conclusions of law subject *to de novo* review by the district court.[29] This, according to the *Dow Corning* court, would be a "monumental waste."[30]

---

[26] *In re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215, 221 (Bankr. D. Or. 2006).

[27] *See* Plan, Art. I.A.15.

[28] *See* Estimation Motion ¶ 32 (internal quotations omitted); *cf.* Reply of Debtor in Support of Motion of the Debtor for Estimation of Current and Future Mesothelioma Claims at 15–16, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Aug. 16, 2019) (Where the debtor also argued that it was not seeking estimation to establish a non-consensual cap on its asbestos liabilities, despite having a substantially similar funding agreement that provided a basis for a fully funded trust from which claimants could seek full and uncapped recoveries).

[29] *Dow Corning*, 211 B.R. at 569.

[30] *Id.*; *cf.* PI Ruling ¶ 73 ("In short, in order for DBMP to be able to fund a plan in this case, both asbestos claimants (by a 75% vote) and this Court must agree to New CT receiving the benefits of a Section 524(g) injunction.").

12

As in *Dow Corning*, estimation here would similarly be a monumental waste.[31] The Court does not have authority to determine the distribution that personal-injury claimants, who have a constitutional right to a jury trial, will receive on account of their claims.[32] This alone is reason enough for the Court to deny the Estimation Motion.

### B. Estimation is not necessary to determine whether a fair reorganization can be achieved.

Where a debtor's assets are sufficient to fund full payment, regardless of the liquidated value of the claim, there is no need to estimate.[33] Similarly, where plan confirmation is not dependent on resolution of the claims, there is no need to estimate.[34] "The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim. It is not a mechanism for reducing the amount of a debtor's liability."[35]

Estimation would serve no legitimate purpose in this case. While a bankruptcy court may estimate personal-injury and wrongful-death claims "to ascertain whether a fair reorganization of the debtor can be achieved," estimation for this purpose is not necessary here.[36] The Debtor has

---

[31] *See Dow Corning*, 211 B.R. at 569.

[32] Accordingly, in *Bestwall*, the Court's estimation order was explicit that "the result of any estimation hearing shall not be used to establish a non-consensual cap on the Debtor's asbestos liability." Bestwall Estimation Order, ¶ 7.

[33] *See In re Bellucci*, 119 B.R. 763, 778 (E.D. Cal. 1990) ("The uncertain status of Swift's claim is not an impediment to Bellucci's ability to prepare and file a plan. After all, Bellucci contends that assets are ample to fund a 'full payment' plan even if Swift's judgment survives appeal. . . . Thus, the debtor's invocation of section 502(c)(1) is contradicted by his own theory of the case."); *cf. Dow Corning*, 211 B.R. at 569–70 ("[N]o matter how large the actual aggregate tort liability may turn out to be, the Reorganized Debtor would clearly be able to perform the pertinent terms of the plan.").

[34] *See, e.g.*, *Dow Corning*, 211 B.R. at 567 ("[U]nder the Debtor's plan pre-confirmation claims estimation is simply unnecessary."); *In re Statewide Realty Co.*, 159 B.R. 719, 725 (Bankr. D.N.J. 1993) (declining to estimate claim where plan confirmation was not dependent on resolution of claims and the proposed distribution to unsecured creditors under the plan would not be altered as a result of the allowance or disallowance of the claim).

[35] *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

[36] *A.H. Robins*, 788 F.2d at 1012. In *A.H. Robins*, the Fourth Circuit determined that estimation would be appropriate because it was unclear whether the debtor's assets were sufficient to reorganize, and "the first and primary purpose of the proceedings . . . is to ascertain whether a fair reorganization of the debtor can be achieved."

13

already assured the Court, for purposes of the preliminary injunction, that it "has the ability to fully fund a section 524(g) trust and the administrative costs of its Chapter 11 Case."[37] Based on the Debtor's representations, the Court concluded that "by virtue of its present assets and with contribution from New CertainTeed (a corporation with significant financial resources) and perhaps other protected parties, the Debtor has the financial ability to appropriately fund a section 524(g) trust and to pay the administrative costs of the Chapter 11 Case."[38] The Debtor is thus estopped from arguing that estimation is necessary to determine if confirmation is achievable.[39]

This case, thus, stands in stark contrast to *A.H. Robins*, in which the debtor could not pay all claims in full and remain a going concern. Estimation in that case was in fact premised on the fact that full payment of the mass-tort indemnity and defense costs "would likely consume all of the assets of the debtor . . . ."[40]

The *Dow Corning* case again offers an instructive comparison. In *Dow Corning*, the court denied the debtor's estimation motion, stating that "it is clear why estimation is not necessary for plan confirmation purposes. The Reorganized Debtor's ability to pay tort claims in full would simply not be an issue . . . for no matter how large the actual aggregate tort liability

---

*Id.* Here, by contrast, there is no legitimate dispute that the Debtor can confirm a plan, by virtue of the Funding Agreement.

[37] Debtor's PI Motion at 31 ("The Debtor has the ability to fully fund a section 524(g) trust and the administrative costs of its Chapter 11 Case.").

[38] PI Ruling ¶ 241 n.242 ("[S]ince the Funding Agreement purports to be nontransferable, arguably it would not be available to support any Creditor plan. Thus, only a Debtor's plan which confers Section 524(g) relief to [New CT] and the Affiliates would provide the ability to 'fully' compensate asbestos claims.")

[39] *See Martineau v. Wier*, No. 18-2294, 2019 WL 3772151, at *6 (4th Cir. Aug. 12, 2019) (explaining that judicial estoppel will apply when a litigant "has taken a later position that is 'clearly inconsistent' with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that 'either the first or the second court was misled'; and would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001))).

[40] *A.H. Robins*, 788 F.2d at 1013.

14

may turn out to be, the Reorganized Debtor would clearly be able to perform" under its proposed plan.[41] Because there was no dispute as to whether the debtor could fulfill its obligations under the plan, estimation was not necessary for purposes of plan confirmation.

### C. Section 502(c) does not support the estimation that the Debtor seeks here.

The Debtor misconstrues *A.H. Robins* in arguing that the Fourth Circuit in that case mandated § 502(c) estimations in all mass-tort cases. *See* Estimation Motion ¶ 27. To the contrary, the Fourth Court said that estimation is required "*in a proper case under section 502(c)* . . . ." *A.H. Robins*, 788 F.2d at 1011–12 (emphasis added). Tellingly, the Debtor's quotation of *A.H. Robins* omits that italicized language. *See* Estimation Motion ¶ 27. In fact, the Fourth Circuit referred to § 502 only to explain that the ordinary claims-allowance process is improper in the context of mass-tort bankruptcies. The next sentence in the *A.H. Robins* decision, which the Debtor does not quote, amplifies this point: "This customary process of estimation of contingent claims is, however, different where the unliquidated, contingent claims are personal injury tort claims." *A.H. Robins*, 788 F.2d at 1012.[42]

---

[41] *Dow Corning*, 211 B.R. at 569–70. After the hearing on its estimation motion, the *Dow Corning* debtor filed a plan providing that the post-confirmation trust would be funded with $600 million to settle personal-injury claims and $1.4 billion to litigate them. According to the court, there was no doubt that the debtor could fund a trust in the amount of $2 billion.

[42] A claims-allowance process under § 502 is even less appropriate here than it would have been in *A.H. Robins*. In that case, the debtor's liability arose from intrauterine contraceptive devices; presumably claimants knew whether they had had such devices implanted and could file proofs of claim as part of the ordinary claims-allowance process. Future asbestos claimants, by contrast, are unknowable even to themselves and are incapable of receiving constitutionally sufficient notice that their rights are affected. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997) ("[W]e recognize the gravity of the question whether . . . notice sufficient under the Constitution and Rule 23 could ever be given to legions [of asymptomatic future asbestos claimants] so unselfconscious and amorphous."); *In re Waterman S.S. Corp.*, 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992) ("[E]ven if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected."), vacated on other grounds, 157 B.R. 220 (S.D.N.Y. 1993). Moreover, § 524(g) was not an option in *A.H. Robins* because the statute had not yet been enacted and because the case did not involve asbestos claims. Here, by contrast, § 524(g) alleviates any concern that claims would need to be liquidated prior to plan confirmation.

The Debtor's purported reliance on § 502(c) fails for at least three reasons. First, § 502(c) provides that claims "shall be estimated *for purpose of allowance under this section*," 11 U.S.C. § 502(c) (emphasis added), but the Debtor, by its own admission, is not seeking allowance of any claims here. *See* Estimation Motion ¶ 32 ("Importantly, the Debtor is not requesting an estimation for distribution purposes, nor is the Debtor seeking to use estimation to establish a non-consensual 'cap' on its asbestos liabilities."). As explained above, it may be that a court has authority under appropriate circumstances to estimate claims to evaluate the feasibility and fairness of a plan, but such an estimation does not result in the allowance or disallowance of any claim, and is not a mandatory estimation under § 502(c). *Cf. id.* ("[A]s described herein, the Debtor seeks an estimation . . . to assist in developing and then confirming plan of reorganization . . . .").[43]

Second, § 502(c), requires estimation only if the *fixing or liquidation* of a claim would delay administration of the case. *See* 11 U.S.C. § 502(c)(1); *RNI Wind Down*, 369 B.R. at 191 ("The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim."). Here, of course, the Court is not fixing or liquidating any asbestos claims.[44] Not even the Debtor is arguing that the Court would actually have to liquidate claims absent estimation.

---

[43] Section 502 generally is concerned with the allowance of claims "as of the date of the filing of the petition . . . ." 11 U.S.C. § 502(b). This, however, is fundamentally inconsistent with § 524(g), which encompasses future claims and demands. See 11 U.S.C. § 524(g)(5) ("In this subsection, the term 'demand' means a demand for payment, present or future, that . . . was not a claim during the proceedings leading to the confirmation of a plan of reorganization . . . .").

[44] *Cf.* Hr'g Tr. at 86:4-10, *In re Kaiser Gypsum Co.*, Case No. 20-cv-00537-GCM (JCW) (Bankr. W.D.N.C. Sept. 4, 2019) [Dkt. No. 1785] ("It would objectively swamp this court or any other federal court . . . . All those motions to dismiss, discovery disputes, summary judgment motions, one person's going to get all that, in addition to carrying their current caseload. I would say that is objectively and patently."); *see also* Informational Brief at 2 ("[M]ore than 60,000 asbestos claims and associated lawsuits were pending against DBMP, of which approximately 32,700 were on active dockets.").

16

Third, § 524(g) creates a mechanism that, effectively, replaces the traditional claims "allowance" process under § 502, which is unworkable in the context of asbestos bankruptcies. Indeed, the entire purpose of § 524(g) is to create a settlement trust that will administer and liquidate claims after confirmation. *Cf.* Plan at IV.E ("The purpose of the Asbestos Personal Injury Trust shall be to . . . resolve all asserted Asbestos Personal Injury Claims . . . ."). Because a § 524(g) plan can be confirmed without the liquidation of individual asbestos claims, and because § 524(g) specifically contemplates that claims will not be liquidated prior to confirmation, the Debtor cannot legitimately argue that the liquidation of asbestos claims would delay administration of this case (and again, the estimation that the Debtor is seeking would not liquidate any claims in any event).

### III. Estimation would delay the administration of this chapter 11 case.

Estimation is further unwarranted because the Debtor cannot meet its burden to establish that the administration of the chapter 11 case would be unduly delayed absent estimation.[45] To determine whether a purported delay in the administration of the bankruptcy case would be unjustifiable, a court should "perform a kind of cost-benefit analysis by considering the time, costs and benefits" associated with estimation.[46] In this analysis, "a bankruptcy court must consider the rights of all parties in interest, not just those of the debtor."[47] When "there is no reason to believe that estimation would result in a faster distribution of proceeds to tort claimants in the event that the Debtor is found liable," estimation is unwarranted.[48]

---

[45] 11 U.S.C. § 502(c) (stating that claims are to be estimated if fixing the amount of the claim "would unduly delay the administration of the case"); *Dow Corning*, 211 B.R. at 273; *see also Statewide Realty*, 159 B.R. at 725.

[46] *Dow Corning*, 211 B.R. at 563.

[47] *Id.* at 566.

[48] *Id.* at 565.

17

Here, estimation would create, rather than prevent, undue delay.[49] The Debtor's proposed estimation will bog the parties down in a litigation morass. Estimation proceedings are protracted and contentious affairs and will undoubtedly lead to an appeal. In *Bestwall*, the Court granted estimation reluctantly, only after mediation was unsuccessful, and only after concluding that there was "[n]o alternative" and that estimation was "the only way forward for the case . . . ." In granting estimation on October 22, 2020, Judge Beyer announced her intention "to keep [estimation] on as short a leash as possible . . . to ensure that estimation itself does not cause undue delay."[50] The debtor repeated its assurances that it was "prepared and ready" and would "be able to try estimation in December of 2021."[51] Instead, the debtor failed to complete document production on time, and the claimants' representatives filed two motions to compel.[52] The debtor, for its part, is appealing the Delaware District Court's ruling quashing the debtor's trust-discovery subpoenas, and the debtor has filed a motion to enforce the PIQ order as to non-responsive claimants.[53] As of the date hereof, estimation has already been delayed to May 2022,

---

[49] *See Adelphia Bus. Sols.*, 341 B.R. at 423 ("[C]ourts specifically have recognized that it is often 'inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay.'" (quoting *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994))); *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005) ("[T]o the greatest extent possible, [estimation] should not run counter to the efficient and expeditious administration of the bankruptcy estate." (citing *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135-36 (3d Cir. 1982) (explaining that, in the event that a court does proceed with estimation, the court's "principal consideration" when determining how to move forward "must be an accommodation to the underlying purposes of the Code"))); *In re FV Steel & Wire Co.*, 372 B.R. 446, 453 (Bankr. E.D. Wis. 2007) (finding that the "very purpose" of section 502(c)(1) is "to avoid undue delay." (citing *In re Windsor*, 170 B.R. at 520)).

[50] Hr'g Tr. at 13:2-6, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Oct. 22, 2020).

[51] *Id.* at 22:4-9.

[52] *See* The Official Committee of Asbestos Claimants' and the Future Claimants' Representative's Motion to Compel the Debtor to Produce Claim Files and Comply with Case Management Order, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Aug. 6, 2021) [Dkt. No. 1967]; Motion to Compel Production of Documents, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Aug. 6, 2021) [Dkt. No. 1968].

[53] *See* Notice of Appeal, *In re Bestwall LLC*, Case No. 1:21-mc-00141-CFC (D. Del. July 1, 2021) [Dkt. No. 39]; Motion to Enforce PIQ Order with Respect to Non-Compliant Claimants, *In re Bestwall LLC*, No. 17-31795 (LTB) (Bankr. W.D.N.C. Sept. 8, 2021) [Dkt. No. 2065]

and all parties agree that the current estimation timeline is unworkable. In fact, on August 30, 2021, the FCR in *Bestwall* filed a motion asking the Court to extend the confirmation timetable by at least a year.[54]

Similarly, in *Garlock*, the parties spent more than two years engaged in contentious, time-consuming, and expensive litigation regarding *just the scope of discovery* required for estimation.[55] The estimation trial itself took 17 days.[56] The court needed nearly five months to issue its decision, which the committee indicated it would appeal as soon as the estimation decision was final or otherwise ripe for appeal.[57] The parties then spent another year fighting over the committee's motion to reopen the record of the estimation proceeding to present supplemental evidence based on additional discovery of the debtors.[58] At the end of the day, however, the level of trust funding was determined, not by any of these estimation proceedings, but by multilateral settlement negotiations among the debtors, committee, and future claimants' representative that occurred nearly 2½ years after the estimation trial.[59]

Accordingly, experience amply demonstrates that estimation engenders delay—it does not reduce it. Where, as here, "estimation would only lengthen the time to distribution since funds would not be disbursed until claims are liquidated post-confirmation," estimation should be denied. *Dow Corning*, 211 B.R. at 565.

---

[54] Motion for Extension of Deadlines in Estimation Case Management Order, *In re Bestwall LLC*, No. 17-31795 (LTB) *(*Bankr. W.D.N.C. Aug. 20, 2021) [Dkt. No. 2036].

[55] Disclosure Statement for Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc., § 3.1.7, *In re Garlock Sealing Techs. LLC*, Case No. 10-31607 (Bankr. W.D.N.C. July 29, 2016) [Dkt. No. 5444].

[56] *Id.*

[57] *Id.* The *Garlock* estimation decision was never ultimately appealed because it was not incorporated into a confirmed plan of reorganization.

[58] *Id.* § 3.1.8.

[59] *Id.* §§ 3.1.14, 3.1.15.

# **CONCLUSION**

WHEREFORE, for the reasons discussed herein, the Future Claimants' Representative respectfully requests that the Court deny the Estimation Motion.

Dated: September 13, 2021         Respectfully submitted,

    */s/ Felton E. Parrish*
Felton E. Parrish (NC Bar No. 25448)
ALEXANDER RICKS PLLC
1420 East 7th Street, Suite 100
Charlotte, NC 28204
Telephone: (704) 365-3656
Facsimile: (704) 365-3676
Email: felton.parrish@alexanderricks.com

-and-

James L. Patton, Jr. (Delaware Bar No. 2202)
Edwin J. Harron (Delaware Bar No. 3396)
Sharon M. Zieg (NC Bar No. 29536)
Travis G. Buchanan (Delaware Bar No. 5595)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
        eharron@ycst.com
        szieg@ycst.com
        tbuchanan@ycst.com

*Counsel to the Future Claimants' Representative*