**EXHIBIT A**

Page 1

```
 1
 2  UNITED STATES BANKRUPTCY COURT
    WESTERN DISTRICT OF NORTH CAROLINA
 3  CHARLOTTE DIVISION
    ------------------------------------------X
 4  In re:
    DBMP LLC,
 5
                          Debtor.
 6
    Chapter 11
 7  Case No. 20-30080 (JCW)
    ------------------------------------------X
 8  DBMP LLC,

 9                            Plaintiff,

10           vs.

11  THOSE PARTIES LISTED ON APPENDIX A TO

12  COMPLAINT and JOHN AND JANE DOES 1-100

13                            Defendants   .

14

15  Adv. Pro. No. 20-03004 (JCW)

16  ------------------------------------------X

17            ***CONFIDENTIAL***

18    VIDEOTAPED DEPOSITION OF AMIEL GROSS

19

20

21  DATE:  June 2, 2021

22  TIME:  9:33 a.m.

23  PLACE:  ***REMOTE***

24  BEFORE:  Rebecca Schaumloffel, RPR, CCR-NJ

25  JOB NO:  194940
```

1      A. GROSS

2           MR. JONES:  Objection.  Object
3      to the extent it calls for legal
4      advice.
5      A.    That was not -- that was not
6  stated.  But the presentation was related to
7  the notion that this was a legitimate
8  transaction to create optionality, etc, etc.
9           But, no, to answer your question,
10 no one ever stood up and said this is the
11 official company story that you should be
12 aware of.
13     Q.    But you believe that several
14 aspects of this official company story were
15 not true; is that correct?
16     A.    Yes.
17     Q.    Okay.  Which aspects did you
18 believe were not true?
19     A.    That it was a legitimate
20 transaction for purpose of creating
21 optionality.
22     Q.    And why did you believe that not
23 to be true?
24     A.    Because I believed and knew that
25 the real purpose was to wind up with a sub --

```
 1                     A. GROSS
 2   an entity --
 3             MR. JONES:  Before you finish,
 4        let me ask you not to share any
 5        privileged communications.
 6        A.    An entity loaded with asbestos
 7   liability for purposes of a bankruptcy
 8   proceeding and ultimate estimation of capped
 9   liability that was less than continuing
10   business as usual.
11        Q.    And you believed that based on the
12   conversations that you have described
13   earlier?
14        A.    Yes, and my experience and
15   training.
16        Q.    Okay.  And you mentioned an
17   ultimate estimation.  What caused you to
18   believe that there would be -- that an
19   object -- well, withdrawn.
20             Did you understand that an
21   estimation proceeding was part of the
22   objective of the bankruptcy?
23        A.    Of course.
24        Q.    Okay. And what was the basis --
25   what's your basis of that understanding?
```

```
 1                      A. GROSS

 2    an entity --

 3            MR. JONES:  Before you finish,

 4       let me ask you not to share any

 5       privileged communications.

 6       A.   An entity loaded with asbestos

 7    liability for purposes of a bankruptcy

 8    proceeding and ultimate estimation of capped

 9    liability that was less than continuing

10    business as usual.

11       Q.   And you believed that based on the

12    conversations that you have described

13    earlier?

14       A.   Yes, and my experience and

15    training.

16       Q.   Okay.  And you mentioned an

17    ultimate estimation.  What caused you to

18    believe that there would be -- that an

19    object -- well, withdrawn.

20            Did you understand that an

21    estimation proceeding was part of the

22    objective of the bankruptcy?

23       A.   Of course.

24       Q.   Okay.  And what was the basis --

25    what's your basis of that understanding?
```

Page 108

1          A. GROSS

2     A.   My factual knowledge, my
3   experience, and my training.
4     Q.   And focusing on your factual
5   knowledge, could you explain what that is
6   with regard to an ultimate estimation being
7   an objective of the bankruptcy proceeding?
8     A.   Well, that's what happened with
9   Garlock to a favorable outcome.  And that,
10  you know, was where the Bestwall matter was
11  heading, and so -- I mean, that's -- I mean,
12  the understanding is that the end objective
13  is to obtain a final asbestos liability bill
14  for less.
15    Q.   For less than what?
16    A.   Less than the tort system.
17    Q.   And what's the basis of your
18  understand -- of that understanding?
19    A.   Garlock, Bestwall, August 13th,
20  October 10th.
21    Q.   Was estimation discussed or were
22  you present for any discussion of estimation
23  within the -- within or among or including
24  any CertainTeed or Saint-Gobain personnel?
25    A.   The estimation is further down the

**EXHIBIT B**

```
                                                          Page 1
 1

 2   UNITED STATES BANKRUPTCY COURT

 3   WESTERN DISTRICT OF NORTH CAROLINA

 4   CHARLOTTE DIVISION

 5   ----------------------------X

 6   In re                              Chapter 11
     DBMP LLC,               Case No. 20-30080 (JCW)
 7            Debtor.

 8   ----------------------------X

 9   DBMP LLC,
              Plaintiff,
10         vs.              Adv. Pro. No. 20-03004
                                20-03004 (JCW)
11   THOSE PARTIES LISTED
     ON APPENDIX A TO COMPLAINT
12   and JOHN AND JANE DOES
     1-100,
13              Defendants.

14   ----------------------------X

15

16            * * *CONFIDENTIAL* * *

17       VIDEOTAPED REMOTE DEPOSITION OF

18            MICHAEL STARCZEWSKI

19             April 30, 2021

20

21

22

23

24   Reported by: MARY F. BOWMAN, RPR, CRR

25   JOB NO. 193010
```

1            Starczewski - Confidential
2     A.    The purpose was to report
3  information to the parent company.
4     Q.    For financial planning reasons
5  and financial reporting reasons?
6     A.    Financial reporting, yes.
7     Q.    Now, if I understood you -- what
8  you said earlier -- going back to the
9  subject of group settlements, if I
10 understood you before, you entered into
11 those settlements -- or CertainTeed entered
12 into those settlements, without exploring
13 information about the exposure of the
14 various plaintiffs to other non-CertainTeed
15 asbestos products, is that correct?
16    A.    Are you referring to the two
17 inventory-type settlements with respect to
18 the two firms that I mentioned earlier?
19 Are those --
20    Q.    That's what I am referring to.
21    A.    OK.  Yes, those settlements were
22 agreed to in advance prior to knowing the
23 identity of the claimants.  It was an
24 agreement to settle trial-set cases for a
25 period of time for a fixed amount of money.

# EXHIBIT C
# FILED UNDER SEAL

**EXHIBIT D**

```
 1              UNITED STATES BANKRUPTCY COURT

 2            WESTERN DISTRICT OF NORTH CAROLINA

 3                     CHARLOTTE DIVISION

 4
    In re                              Chapter 11
 5
    DBMP LLC,                          Case No. 20-30080 (JCW)
 6          Debtor.
    ----------------------------/
 7  DBMP LLC,

 8          Plaintiff,

 9  vs.                                Adv. Pro. No. 20-03004
                                       20-03004 (JCW)
10  THOSE PARTIES LISTED
    ON APPENDIX A TO COMPLAINT
11  and JOHN AND JANE DOES
    1-100,
12
            Defendants.
13  ----------------------------/

14

15                  ** CONFIDENTIAL **

16                  REMOTELY CONDUCTED

17   VIDEOTAPED DEPOSITION OF CHARLES E. BATES, PhD

18       San Diego, California (Witness's location)

19                Friday, April 16, 2021

20

21  Stenographically reported by:
    LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22  California CSR No. 10523
    Washington CSR No. 3318
23  Oregon CSR No. 19-0458
    Texas CSR No. 11318
24

25  Job No. 192223
```

Page 14

1  are the documents and materials.

2      Q.   Any other documents you reviewed in
3  preparing for the deposition today?

4      A.   Nothing else comes to mind.  I don't
5  believe so.

6      Q.   Okay.  And just going back to the beginning
7  of your involvement with the subject of the DBMP
8  claims, were you retained by CertainTeed before DBMP
9  was graded?

10     A.   I was not.  Well, Bates White, I believe,
11 was, but I was not involved with anything having to
12 do with these claims until such time as the petition
13 date.

14     Q.   What was the involvement of Bates White
15 before the petition date?

16     A.   Well, with regard to anything having to do
17 with asbestos claims?  Are we talking generally?

18     Q.   CertainTeed.

19     A.   With CertainTeed.

20     Q.   Anything having to do with CertainTeed.

21     A.   I believe there was an engagement that was
22 several years ago that was -- involved CertainTeed
23 and some other parties.  It had to do with looking
24 at claims.  I wasn't involved with that matter, but
25 I'm aware that it existed.

Page 19

1    sure that they did a check across the engagements

2    which we had, which Bates White had, and made sure

3    they were all on the list.

4        Q.   And why was -- I'm sorry.

5        A.   And --

6        Q.   Sorry.  Didn't mean to cut you off.

7             And why was CertainTeed identified as an

8    interested party in the Bestwall bankruptcy?

9        A.   I believe for the same reason that I just

10   identified.  I don't -- directly what that is, I

11   didn't personally do the check on that.  So I'm not

12   sure.  But I understand from talking with my -- the

13   people on my team and the general counsel of my

14   company that it qualified in the sense at least

15   that -- for the purposes of this disclosure.

16       Q.   And the work that was -- when you said

17   several years ago, was it current work as of the

18   time this declaration was filed in 2017?

19       A.   I'm not sure of the exact dates.  It may

20   have overlapped with this time period.  I think in

21   abundance of caution it's certainly put here.

22       Q.   So if I understand you correctly, prior to

23   the filing, there were two separate engagements of

24   your firm by CertainTeed?

25       A.   That's my understanding.

Page 20

1  Q. Okay. And what is your understanding of
2  the first engagement and what the scope of the work
3  done was?
4  A. I think I can't say much beyond what I just
5  did because it involves multiple parties with
6  confidentiality agreements associated with it, but
7  it involved asbestos claims.
8  Q. What kind -- what kind of confidentiality?
9  Is there a court order?
10 A. No. Engagement letter which basically says
11 that we're to maintain that work, the contents of
12 that work confidentially, not to be disclosed
13 without permission of the parties involved in the
14 engagement.
15 Q. And CertainTeed was one of those parties?
16 A. Correct.
17 Q. So you're familiar with the confidentiality
18 agreement in that retention?
19 A. Correct. I'm familiar with the fact that
20 it is, yes.
21 Q. Have you reviewed that confidentiality
22 agreement?
23 A. Recently, no.
24 Q. And so you're just assuming that it doesn't
25 allow you to testify about the scope of that