# Exhibit 1

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                          :       Case No. 20-30608 (JCW)
                                        (Jointly Administered)
ALDRICH PUMP LLC, ET AL.,       :
                                        Chapter 11
     Debtors,                   :

                                        Charlotte, North Carolina
                                :       Thursday, March 30, 2023
                                        9:30 a.m.
                                :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

OFFICIAL COMMITTEE OF           :       AP 22-03028 (JCW)
ASBESTOS PERSONAL INJURY
CLAIMANTS, on behalf of the     :
estates of Aldrich Pump LLC
and Murray Boiler LLC,          :

     Plaintiff,                 :

          v.                    :

INGERSOLL-RAND GLOBAL           :
HOLDING COMPANY LIMITED,
et al.,                         :

     Defendants,                :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

OFFICIAL COMMITTEE OF           :       AP 22-03029 (JCW)
ASBESTOS PERSONAL INJURY
CLAIMANTS, on behalf of the     :
estates of Aldrich Pump LLC
and Murray Boiler LLC,          :

     Plaintiff,                 :

          v.                    :

TRANE TECHNOLOGIES PLC,         :
et al.,

                                :
     Defendants,                :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

ARMSTRONG WORLD INDUSTRIES,    :    Miscellaneous Pleading
INC. ASBESTOS PERSONAL INJURY       No. 22-00303 (JCW)
SETTLEMENT TRUST, et al.,      :    (Transferred from District
                                    of Delaware)
        Plaintiffs,            :

              v.               :

ALDRICH PUMP LLC, et al.,      :

        Defendants,            :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

AC&S ASBESTOS SETTLEMENT :     :    Miscellaneous Pleading
TRUST, et al.,                      No. 23-00300 (JCW)
                               :    (Transferred from District
        Petitioners,                New Jersey)

                               :
              v.
                               :
ALDRICH PUMP LLC, et al.,

                               :
        Respondents,
                               :
VERUS CLAIM SERVICES, LLC,

                               :
        Interested Party,
                               :
NON-PARTY CERTAIN MATCHING
CLAIMANTS,
                               :
        Interested Party.
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE J. CRAIG WHITLEY,
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors/Defendants,      Rayburn Cooper & Durham, P.A.
Aldrich Pump LLC and Murray  BY:  JOHN R. MILLER, JR., ESQ.
Boiler LLC:                       MATTHEW TOMSIC, ESQ.
                                  C. RICHARD RAYBURN, JR., ESQ.
                             227 West Trade St., Suite 1200
                             Charlotte, NC  28202

APPEARANCES (continued):

For Debtors/Defendants,        Jones Day
Aldrich Pump LLC and Murray    BY:  BRAD B. ERENS, ESQ.
Boiler LLC:                         MORGAN R. HIRST, ESQ.
                               110 North Wacker Dr., Suite 4800
                               Chicago, IL  60606

                               Jones Day
                               BY:  DAVID S. TORBERG, ESQ.
                               51 Louisiana Avenue, N.W.
                               Washington, D.C.  20001

                               Evert Weathersby Houff
                               BY:  C. MICHAEL EVERT, JR., ESQ.
                               3455 Peachtree Road NE, Ste. 1550
                               Atlanta, GA  30326

                               Evert Weathersby Houff
                               BY:  CLARE M. MAISANO, ESQ.
                               111 South Calvert St., Suite 1910
                               Baltimore, MD  21202

                               ROBERT H. SANDS, ESQ.
                               ALLAN TANANBAUM, ESQ.


Audio Operator:                COURT PERSONNEL


Transcript prepared by:        JANICE RUSSELL TRANSCRIPTS
                               1418 Red Fox Circle
                               Severance, CO  80550
                               (757) 422-9089
                               trussell31@tdsmail.com


Proceedings recorded by electronic sound recording; transcript produced by transcription service.

4

APPEARANCES (continued):


For the ACC:                    Caplin & Drysdale
                                BY:  SERAFINA CONCANNON, ESQ.
                                One Thomas Circle, NW, Suite 1100
                                Washington, DC  20005

                                Robinson & Cole LLP
                                BY:  NATALIE RAMSEY, ESQ.
                                     DAVIS LEE WRIGHT, ESQ.
                                1201 N. Market Street, Suite 1406
                                Wilmington, DE  19801

                                Robinson & Cole LLP
                                BY:  ANDREW A. DePEAU, ESQ.
                                280 Trumbull Street
                                Hartford, CT  06103

                                Winston & Strawn LLP
                                BY:  DAVID NEIER, ESQ.
                                     CRISTINA I. CALVAR, ESQ.
                                200 Park Avenue
                                New York, NY  10166-4193

                                Hamilton Stephens
                                BY:  ROBERT A. COX, JR., ESQ.
                                525 North Tryon St., Suite 1400
                                Charlotte, NC  28202

For the FCR:                    Orrick Herrington
                                BY:  JONATHAN P. GUY, ESQ.
                                     DANNY BAREFOOT, ESQ.
                                1152 15th Street, NW
                                Washington, D.C.  20005-1706

For Certain Insurers:           Duane Morris LLP
                                BY:  RUSSELL W. ROTEN, ESQ.
                                865 S. Figueroa St., Suite 3100
                                Los Angeles, CA  90017-5440

For Individual Fiduciary        Brooks Pierce
Duty Defendants:                BY:  JIM W. PHILLIPS, JR., ESQ.
                                     JEFFREY E. OLEYNIK, ESQ.
                                P. O. Box 26000
                                Greensboro, NC  27420

APPEARANCES (continued):

| For Trane Technologies Company LLC and Trane U.S. Inc.: | McCarter & English, LLP<br>BY:  GREGORY J. MASCITTI, ESQ.<br>825 Eighth Avenue, 31st Floor<br>New York, NY  10019 |
| | McGuireWoods, LLP<br>BY:  BRADLEY R. KUTROW, ESQ.<br>201 North Tryon St., Suite 3000<br>Charlotte, NC  28202 |
| | Cordes Law, PLLC<br>BY:  STACY C. CORDES, ESQ.<br>1800 East Boulevard<br>Charlotte, NC  28203 |
| For Asbestos Trusts: | Ward and Smith, P.A.<br>BY:  LANCE P. MARTIN, ESQ.<br>P. O. Box 2020<br>Asheville, NC  28802-2020 |
| | Ballard Spahr LLP<br>BY:  BETH MOSKOW-SCHNOLL, ESQ.<br>919 North Market St., 11th Floor<br>Wilmington, DE  19801-3034 |
| For the Verus Trusts: | Moon Wright & Houston, PLLC<br>BY:  ANDREW T. HOUSTON, ESQ.<br>212 N. McDowell Street, Suite 200<br>Charlotte, NC  28204 |
| | Lowenstein Sandler LLP<br>BY:  LYNDA A. BENNETT, ESQ.<br>One Lowenstein Drive<br>Roseland, NJ  07068 |
| For Verus Claims Services, LLC: | Bradley Arant Boult Cummings LLP<br>BY:  ANNA-BRYCE HOBSON, ESQ.<br>214 North Tyron St., Suite 3700<br>Charlotte, NC  28202 |
| | Anselmi & Carvelli LLP<br>BY:  ZACHARY D. WELLBROCK, ESQ.<br>West Tower, Fifth Floor<br>56 Headquarters Plaza<br>Morristown, NJ  07960 |

APPEARANCES (continued):

For Robert and Marcella          Maune Raichle
Semian:                          BY:  CLAYTON L. THOMPSON, ESQ.
                                 150 West 30th Street, Suite 201
                                 New York, NY  10001

                                 Waldrep Wall
                                 BY:  JAMES C. LANIK, ESQ.
                                 370 Knollwood Street, Suite 600
                                 Winston-Salem, NC  27103

For Non-Party Certain            Hogan McDaniel
Matching Claimants:              BY:  DANIEL K. HOGAN, ESQ.
                                 1311 Delaware Avenue
                                 Wilmington, DE  19806

                                 Waldrep Wall
                                 BY:  DIANA SANTOS JOHNSON, ESQ.
                                 370 Knollwood Street, Suite 600
                                 Winston-Salem, NC  27103

For DCPF:                        Alexander Ricks PLLC
                                 BY:  FELTON PARRISH, ESQ.
                                 1420 E. 7th Street, Suite 100
                                 Charlotte, NC  28204

                                 Young Conaway
                                 BY:  KEVIN A. GUERKE, ESQ.
                                 1000 North King Street
                                 Wilmington, Delaware  19801

ALSO PRESENT:                    JOSEPH GRIER, FCR
                                 Grier, Wright & Martinez, PA
                                 521 E. Morehead St, Suite 440
                                 Charlotte, NC  28202

APPEARANCES (via telephone):

For Non-Party Certain            Stark & Stark, PC
Matching Claimants:              BY:  JOSEPH H. LEMKIN, ESQ.
                                 P. O. Box 5315
                                 Lawrenceville, NJ  08648

APPEARANCES (via telephone continued):

For Travelers Insurance        Steptoe & Johnson LLP
Companies, et al.:             BY:  JOSHUA R. TAYLOR, ESQ.
                              1330 Connecticut Avenue, N.W.
                              Washington, D.C.  20036

For Verus Claims Services,     Anselmi & Carvelli LLP
LLC:                          BY:  ANDREW ANSELMI, ESQ.
                              West Tower, Fifth Floor
                              56 Headquarters Plaza
                              Morristown, NJ  07960

THE COURT:  All right.

That got it?

It will not, probably, surprise anyone that I feel compelled to deny the motion basically for the reasons stated by the debtor and, and the FCR, if not going back to the preliminary injunction and the reasons I stated then.  I have no doubt, I don't think anyone could have any reasonable doubt that if I grant relief from stay to one creditor to liquidate the claim, all of the claimants will -- not all -- but a substantial number of the claimants, enough to wreck the bankruptcy case, will seek like measure and that effectively precipitates a *de facto* dismissal of the case.  It will be unable to go forward and even more so than at the time of the preliminary injunction, now we've got some of these claims that are estate claims under the first-crack doctrine that would be asserted by individual claimants elsewhere as against New Trane and the new entities, the "good" companies, if you will, and it's even stronger in this case because now I have the ACC bringing those causes of action.  And so we would be undermining our own lawsuits if we did that.

I don't think anything's really changed.  I'm appreciative of the fact that, that the underlying claim here may be somewhat different than the norm, but the circumstance of the case and the relationship of the claimants to the reorganization has not changed in any material way.

# Exhibit 2

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                          :       Case No. 17-31795-LTB

BESTWALL LLC,                   :       Chapter 11

    Debtor.                     :       Charlotte, North Carolina
                                        Thursday, October 19, 2023
                                :       9:35 a.m.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LAURA TURNER BEYER,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                 Robinson, Bradshaw & Hinson, P.A.
                                BY:  RICHARD C. WORF, ESQ.
                                     GARLAND CASSADA, ESQ.
                                101 N. Tryon Street, Suite 1900
                                Charlotte, NC  28246

                                Jones Day
                                BY:  GREGORY M. GORDON, ESQ.
                                2727 North Harwood St., Suite 500
                                Dallas, TX  75201-1515

Audio Operator:                 COURT PERSONNEL

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
_____

**JANICE RUSSELL TRANSCRIPTS**
**1418 Red Fox Circle**
**Severance, CO  80550**
**(757) 422-9089**
**trussell31@tdsmail.com**

Case 20-30080   Doc 2755-8   Filed 04/28/23   Entered 04/28/23 18:30:30   Desc
Exhibit Transcript   Exhibit 10-1923   Page 12 of 107   Page 3 of 76

2

APPEARANCES (continued):

For the Debtor:               Jones Day
                              BY:  JEFFREY B. ELLMAN, ESQ.
                              1221 Peachtree Street, N.E., #400
                              Atlanta, GA  30361

                              Schachter Harris, LLP
                              BY:  ERIN A. THERRIAN, ESQ.
                              909 Lake Carolyn Pkwy., #1775
                              Irving, TX  75039

For Richard and Joann Dale:   Maune Raichle
                              BY:  CLAY THOMPSON, ESQ.
                              150 W. 30th Street, Suite 201
                              New York, NY  10001

For Richard and Joann Dale,   Waldrep Wall
Wilson Buckingham and         BY:  THOMAS W. WALDREP, JR., ESQ.
Angelika Weiss:               370 Knollwood Street, Suite 600
                              Winston-Salem, NC  27103

For Future Claimants'         Young Conaway
Representative, Sander L.     BY:  SHARON ZIEG, ESQ.
Esserman:                          EDWIN J. HARRON, ESQ.
                              1000 North King Street
                              Wilmington, DE  19801

                              Alexander Ricks PLLC
                              BY:  FELTON E. PARRISH, ESQ.
                              1420 E. 7th Street, Suite 100
                              Charlotte, NC  28204

For Official Committee of     Robinson & Cole LLP
Asbestos Claimants:           BY:  NATALIE RAMSEY, ESQ.
                                   KATHERINE S. DUTE, ESQ.
                              1201 N. Market Street, Suite 1406
                              Wilmington, DE  19801

                              JD Thompson Law
                              BY:  LINDA W. SIMPSON, ESQ.
                              Post Office Box 33127
                              Charlotte, NC  28233

Case 20-30080   Doc 2755-8   Filed 04/28/23   Entered 04/28/23 18:30:30   Desc
Exhibit Transcript Exhibit 10-1923 Page 13 of 107   Page 4 of 76

3

APPEARANCES (continued):

For Georgia-Pacific LLC:        Rayburn Cooper & Durham, P.A.
                                BY:  JOHN R. MILLER, JR., ESQ.
                                227 West Trade Street, Suite 1200
                                Charlotte, NC  28202

                                Debevoise & Plimpton
                                BY:  MARK P. GOODMAN, ESQ.
                                     NATASHA LABOVITZ, ESQ.
                                66 Hudson Boulevard
                                New York, NY 10001


APPEARANCES (via telephone):    SANDER L. ESSERMAN
                                Future Claimants' Representative
                                2323 Bryan Street, Suite 2200
                                Dallas, TX  75201-2689

69

I'll let you all get your seats.  Sorry.

MR. HARRON:  Pardon us, your Honor.  Sorry.

THE COURT:  That's okay.  I guess you never know when we're gonna come back in, huh?

Having considered the motion for relief from stay and the arguments of the parties and the responses and replies thereto, let me start by saying, Mr. Thompson.  Of course, I'm sympathetic to Mr. Dale and his situation and I understand why he would request to liquidate his claim, but I can't find that there is cause to grant his motion for relief from stay.

You know, strictly speaking and considering the Robbins factors, which are the applicable factors in this Circuit, and considering Mr. Dale's case in isolation the Court could, I suppose, conclude it's appropriate to grant the motion for relief from stay.  As bankruptcy courts, we often do that so that a state court can liquidate claims that are based on state court causes of action, as you all cited the Joyner case, which is a Judge Stocks case from the Middle District of North Carolina, but which is a very different case from, from this case.  I think that case involved two plaintiffs who were seeking relief from stay to continue with a civil action in state court that involved less than a handful of defendants, one of whom was the debtor.  But that case stands in stark contrast to this case, which is a mass tort asbestos case with an excess of 60,000 claimants and the Court is obliged to

Case 20-30080   Doc 2755-8   Filed 02/28/24   Entered 02/28/24 18:50:30   Desc
Exhibit Transcript of 11-19-23 Page Hearing   Exhibit 10-19-23 Page 15 of 107   Page 71 of 76

70

consider the motion in that context and while it may be specula to, speculative to assume that granting the Dales' motion for relief from stay would result in a wave of similar motions, I believe that that's a fair and reasonable assumption, as apparently did Judge Whitley when he denied a similar motion in the <u>Aldrich</u> case, and if I grant this motion I think I would be hard pressed to deny future motions for relief from stay in this case and that's especially true since the Dales have not pled any unique facts or circumstances that would justify lifting the stay as to them or otherwise distinguish their case from the thousands of cases that are pending in state court.

In addition, I conclude I should deny the motion because when considering the motion and the overall context of this case, I think I should deny the motion for the same reasons I determined I should grant the motion for a preliminary injunction, which decision the Fourth Circuit recently affirmed.  And I agree with the, the debtor's statement that the Fourth Circuit's opinion confirms the importance of centralizing all of the pending claims in the bankruptcy court and while the Fourth Circuit did say that rather than waiting for plan confirmation, and I quote, "Claimants can bring individual actions for relief based on the specific facts of a particular claim," the Dales have not pled any facts specific or unique to them to cause this Court to find that there's cause to grant their motion for relief from

# Exhibit 3

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                              :      Case No. 17-31795-LTB

BESTWALL LLC,                       :      Chapter 11

     Debtor.                        :      Charlotte, North Carolina
                                           Thursday, January 18, 2024
                                    :      9:34 a.m.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LAURA TURNER BEYER,
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                Robinson, Bradshaw & Hinson, P.A.
                               BY:  RICHARD C. WORF, ESQ.
                                    GARLAND CASSADA, ESQ.
                                    KEVIN CRANDALL, ESQ.
                               101 N. Tryon Street, Suite 1900
                               Charlotte, NC  28246

                               Jones Day
                               BY:  GREGORY M. GORDON, ESQ.
                               2727 North Harwood St., Suite 500
                               Dallas, TX  75201-1515


Audio Operator:                COURT PERSONNEL


Transcript prepared by:        JANICE RUSSELL TRANSCRIPTS
                               1418 Red Fox Circle
                               Severance, CO  80550
                               (757) 422-9089
                               trussell31@tdsmail.com


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

2

APPEARANCES (continued):

For the Debtor:                    Jones Day
                                   BY:  JEFFREY B. ELLMAN, ESQ.
                                   1221 Peachtree Street, N.E., #400
                                   Atlanta, GA  30361

For Richard and Joann Dale:        Maune Raichle
                                   BY:  CLAY THOMPSON, ESQ.
                                   150 W. 30th Street, Suite 201
                                   New York, NY  10001

For Richard and Joann Dale,        Waldrep Wall
Wilson Buckingham and              BY:  THOMAS W. WALDREP, JR., ESQ.
Angelika Weiss:                    370 Knollwood Street, Suite 600
                                   Winston-Salem, NC  27103

For Wilson Buckingham and          Ruckdeschel Law Firm, LLC
Angelika Weiss:                    BY:  JONATHAN RUCKDESCHEL, ESQ.
                                   8357 Main Street
                                   Ellicott City, MD  21043

For Future Claimants'              Young Conaway
Representative, Sander L.          BY:  SHARON ZIEG, ESQ.
Esserman:                               ERIN EDWARDS, ESQ.
                                   1000 North King Street
                                   Wilmington, DE  19801

                                   Young Conaway
                                   BY:  FELTON E. PARRISH, ESQ.
                                   Charlotte, NC  28204

For Official Committee of          Robinson & Cole LLP
Asbestos Claimants:                BY:  NATALIE RAMSEY, ESQ.
                                        DAVIS LEE WRIGHT, ESQ.
                                   1201 N. Market Street, Suite 1406
                                   Wilmington, DE  19801

                                   Robinson & Cole LLP
                                   BY:  KATHERINE M. FIX, ESQ.
                                   1650 Market Street, Suite 3600
                                   Philadelphia, PA  19103

                                   Hamilton Stephens
                                   BY:  LINDA W. SIMPSON, ESQ.
                                   525 N. Tryon St., 14th Floor
                                   Charlotte, NC  28202

APPEARANCES (continued):

For Georgia-Pacific LLC:        Rayburn Cooper & Durham, P.A.
                                BY:  JOHN R. MILLER, JR., ESQ.
                                227 West Trade Street, Suite 1200
                                Charlotte, NC  28202

                                Debevoise & Plimpton
                                BY:  MARK P. GOODMAN, ESQ.
                                66 Hudson Boulevard
                                New York, NY 10001


APPEARANCES (via telephone):    SANDER L. ESSERMAN
                                Future Claimants' Representative
                                2323 Bryan Street, Suite 2200
                                Dallas, TX  75201-2689

opposition to the motion for relief from stay and the arguments

at today's hearing, I conclude I should deny the motion for

relief from stay and in large part, I do so for the same

reasons I denied the Dales' motion for relief from stay, the

order for which was entered about one month ago, and for the

same reasons I granted the preliminary injunction motion early

on in this case, but I will add a few things to the remarks

that I made when I ruled on the Dales' motion for relief from

stay.

Consideration of the Robbins factors, particularly the

second factor, that being whether modifying the stay will

promote judicial economy and whether there would be greater

interference with the bankruptcy case if the stay were not

lifted because matters would have to be litigated in bankruptcy

court, I believe and find weighs against modifying the

automatic stay.

As I said in the Dales' case, I can't look at

modifying the stay in Mr. Buckingham's case in isolation, at

least particularly not with respect to the second prong.  That

issue must be considered in the context of this case being a

mass tort case and because that is the reality in which we find

ourselves, I still conclude that if I granted Mr. Buckingham's

motion for relief from stay I would be obliged to grant the

motion for relief from stay of most, if not all, claimants who

sought similar relief.  That is true for Mr. Buckingham as it

pending motion for relief from stay in Carolin.  That issue was not on the table and they cited to 362 because it includes the word "cause" as does 1112(b).  And the Fourth Circuit was defining what that broad language means and of course, ultimately concluded that it supports the construction that a debtor's lack of good faith may constitute cause for dismissal of a petition.

Similarly, the Fourth Circuit points out that 362 "inferentially permits inquiry into the debtor's good faith in commencing this case as a whole," and it cites Collier's for that proposition.

In his reply, Mr. Buckingham accurately points out that, "Nowhere in Carolin does the Fourth Circuit indicate that its two-pronged approach to dismissal is applicable to motions for relief from stay."  I guess I would add, though, but nowhere does it say that it doesn't and to me, it defies logic to conclude that the two-prong standard doesn't apply in the context of this case and I underscore that statement if considering whether to grant relief from stay on the basis that the case was filed in bad faith.  In other words, it can't be that a less stringent standard applies to a relief from stay motion which, if granted, would result in the dismissal of the case.  To conclude otherwise would mean that I could deny the motions to dismiss the case as a bad faith filing for failure to meet the objective futility prong of the two-prong standard,

but grant relief from stay upon the finding of subjective bad faith.  If I granted such relief from stay to one claimant, I would be obliged to grant it to all claimants, again resulting in the dismissal of this case and standing in stark contrast to the proposition for which I have held Carolin stands.

And as a practical matter, you know, this issue isn't gonna come up in other cases because in chapter 11 cases the Court wouldn't grant a motion for relief from stay if the case was filed in bad faith.  The Court would dismiss the case.  And that was true in a couple of the cases that were cited by Mr. Buckingham in his Footnote 6.  There were both motions to dismiss and motions for relief from stay that were pending.  The Court granted the motion to dismiss, but denied the motion for relief from stay as moot or didn't otherwise consider it.

Otherwise, with respect to the cases Mr. Buckingham cites in support of his argument that a lack of good faith constitutes cause for lifting the stay, I agree with the debtor that those cases are distinguishable.  None of them were mass tort cases with tens of thousands of claims pending against the debtor.

I would also note that several of the cases include no reference to 362 or the automatic stay and the Basin Electric Cooperative case was an involuntary petition in which the district court concluded the petition should have been dismissed based on the petitioning creditors' bad faith.  My

# Exhibit 4



**KAISER PERMANENTE**

**San Diego Medical Center**
9455 Clairemont Mesa Blvd
San Diego CA, 92123
Tel: 858-266-2640     Fax: 858-266-2630
Majid Ghassemi, M.D., Chief of Pathology/Laboratory Director

# SURGICAL PATHOLOGY REPORT

| | | | |
|---|---|---|---|
| Patient Name: | **HERLIHY, MICHAEL N** | Med. Rec. #: | **000009376460** |
| Accession #: | **CLMS23-6451** | Patient Type: | Outpatient |
| DOB/Age: | ▇▇▇ (Age: 72) Sex: M | Obtained: | 3/23/2023 |
| Facility: | CLM - San Diego Medical Center. | Received: | 3/23/2023 |
| Location: | PREO-12 | Reported: | 3/27/2023 15:35 |
| Provider(s): | ANURAG GOYAL M.D. | | |
| CC: | MITRA BLAIR BAHAEE M.D. | | |

## FINAL PATHOLOGIC DIAGNOSIS
Peritoneal mass, core biopsy
- MALIGNANT NEOPLASM, CONSISTENT WITH MALIGNANT MESOTHELIOMA, SEE COMMENT

## Comment
The malignant cells are positive for Pancytokeratin, WT-1, Calretinin, CK5/6 and Ck7. The TTF-1 and PAX-8 stains are negative.
This case was reviewed at QC conference with agreement on the above diagnosis. QCR
FFPE: Block 2

nr/3/27/2023

Report Electronically Signed by
NILOUFAR REISIAN M.D.
Date Signed Out: 3/27/2023
Interpretation Performed at:
Kaiser Foundation Hospital San Diego Laboratory

## Microscopic Description
Microscopic examination is performed.

## Studies
Immunohistochemical analysis, with appropriate control stains, is performed.

## Clinical Information
Reason: 8.9 mm omental nodule with surrounding ascites
Michael N Herlihy is a 72 year old who comes to interventional radiology for biopsy of a 9 mm omental nodule, possible paracentesis for mild ascites sent for cytology.  Suspect peritoneal carcinomatosis unknown primary.

## Gross Description
Case verification is performed. All specimens are received in formalin.

Received are 6 tan tissue cores, 0.7-0.9 cm.  TE x2. EB

eb/3/23/2023

If immunohistochemistry and/or in situ hybridization and/or image analysis tests were used in this case, these tests were developed and their performance characteristics determined by SCPMG Regional Reference Laboratories, Anatomic Pathology - Chino Hills.  It has not been cleared or approved by the US Food and Drug Administration.  FDA does not require this test to go through premarket FDA review.  This test is used for clinical purposes. It should not be regarded as investigational or for research. This laboratory is certified under the Clinical Laboratory Improvement Amendments (CLIA) as qualified to perform high complexity clinical laboratory testing.

## Specimen(s) Submitted As:
PERITONEAL MASS, CORE BIOPSY  - a

# Exhibit 5

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)
Tyler S. Summers, Esq. (State Bar No. 331515)
6101 W. Centinela Avenue, Suite 340
Culver City, CA 90230
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
tsummers@mrhfmlaw.com

Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/04/2023 12:59 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - COURT OF UNLIMITED JURISDICTION

| | |
|---|---|
| MICHAEL N. HERLIHY and ANN HERLIHY,<br><br>Plaintiffs,<br><br>vs.<br><br>AUTO PARTS WAREHOUSE, INC.;<br>CALAVERAS ASBESTOS, LTD.;<br>CERTAINTEED CORPORATION;<br>GENUINE PARTS COMPANY;<br>HONEYWELL INTERNATIONAL, INC.,<br>    f/k/a ALLIED SIGNAL, INC.,<br>    individually and as successor-in-interest<br>    to the BENDIX CORPORATION,<br>    BENDIX AVIATION CORP., and THE<br>    SIGNAL COMPANIES, INC., f/k/a<br>    SIGNAL OIL & GAS COMPANY;<br>PARKER HANNIFIN CORPORATION as<br>    Successor-In-Interest to EIS BRAKES;<br>PNEUMO ABEX LLC, Individually and as<br>    Successor-By-Merger to PNEUMO<br>    ABEX CORPORATION, Successor-In-<br>    Interest to ABEX CORPORATION f/k/a<br>    AMERICAN BRAKE SHOE<br>    COMPANY, f/k/a AMERICAN BRAKE<br>    SHOE AND FOUNDRY COMPANY<br>    including the AMERICAN<br>    BRAKEBLOK DIVISION, Successor-<br>    By-Merger to the AMERICAN BRAKE<br>    SHOE AND FOUNDRY COMPANY<br>    and THE AMERICAN BRAKEBLOK<br>    CORPORATION, f/k/a THE | Case No.: 23STCV18584<br><br>**COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS** |

1

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

AMERICAN BRAKE MATERIALS
CORPORATION;
STANDARD MOTOR PRODUCTS, INC.;
WORLDWIDE AUTO PARTS, Individually
    and as Successor-in-Interest to UNITED
    SYATT AMERICA CORPORATION as
    Successor and dba BROADWAY AUTO
    PARTS;
and DOES 1-100,

Defendants.

## GENERAL ALLEGATIONS

COME NOW, Plaintiffs MICHAEL N. HERLIHY and ANN HERLIHY (hereinafter "Plaintiffs"), and complain and allege as follows:

1. Plaintiff MICHAEL N. HERLIHY (hereinafter "Plaintiff") has been diagnosed with mesothelioma.

2. Plaintiffs were married on February 15, 1984.

3. As used herein, the term "asbestos" collectively refers to the mineral asbestos in any type or form, including but not limited to chrysotile, amosite, tremolite, actinolite, anthophyllite and/or crocidolite, as well as the asbestiform varieties thereof.

4. As used herein, the term "asbestos-containing products" collectively means asbestos and products incorporating any amount of asbestos, whether added as a component and/or present as a contaminant in any manner.

5. Prior to his diagnosis, Plaintiff was exposed to asbestos fibers by using and handling asbestos fibers and products incorporating asbestos as a component, and being in the presence of others using and handling asbestos fibers and products incorporating asbestos as a component, as alleged herein.

6. Plaintiff's cumulative exposure to asbestos, as a result of acts and omissions of defendants, their "alternate entities", and each of them, and the defective products of defendants, their "alternate entities", and each of them as hereinafter alleged, individually and together, were a substantial factor in increasing Plaintiff's risk of mesothelioma and other related injuries, and therefore a legal cause of Plaintiff's injuries and damages as set forth herein.

2
COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

7.     Plaintiff was not aware at the time of exposure that asbestos presented any risk of injury and/or disease in human beings, and particularly was not aware that exposure to asbestos presented a risk of incurable, fatal cancer in human beings.

8.     Plaintiff's claims are timely filed and are not barred by any applicable statute of limitations or statute of repose.

9.     Each of the herein named defendants is liable for its own tortious conduct and/or the tortious conduct of each and every "alternate entity", whether or not said entity is specifically named herein. Defendants, and each of them, including but not limited to the following defendants, are liable for the acts of their "alternate entity," and each of them, including that there has been a corporate name change, defendant is the successor by merger or successor by other acquisition resulting in a virtual destruction of Plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the liabilities, assets, product line, and/or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of Plaintiff's remedies against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity." Plaintiffs are aware of the following specific named "alternate entities" as to certain defendants, but do not contend this is a fully inclusive or exhaustive list of all "alternate entities" of defendants herein:

| **DEFENDANT** | **ALTERNATE ENTITIES** |
| --- | --- |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC.<br><br>BENDIX CORPORATION<br><br>BENDIX AVIATION CORP.<br><br>THE SIGNAL COMPANIES, INC.<br><br>SIGNAL OIL & GAS COMPANY |
| PARKER HANNIFIN CORPORATION | EIS BRAKES |

3

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

| PNEUMO ABEX LLC | PNEUMO ABEX CORPORATION |
|---|---|
| | ABEX CORPORATION |
| | AMERICAN BRAKE SHOE COMPANY |
| | AMERICAN BRAKE SHOE AND FOUNDRY COMPANY |
| | AMERICAN BRAKEBLOK DIVISION |
| | AMERICAN BRAKE SHOE AND FOUNDRY COMPANY |
| | THE AMERICAN BRAKEBLOK CORPORATION |
| | THE AMERICAN BRAKE MATERIALS CORPORATION |
| WORLDWIDE AUTO PARTS | UNITED SYATT AMERICA CORPORATION |
| | BROADWAY AUTO PARTS |

10. Each defendant, whether explicitly named herein or a DOE defendant, and each defendant's alternate entities, are referred to collectively henceforth as "Defendants".

11. Plaintiffs are informed and believe, and therefore allege, that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction; that at all relevant times, Defendants were and are authorized to do business in the State of California; that Defendants have minimum contacts with the State of California, including through placing their products in the stream of commerce in the State of California, and regularly conducting business in the State of California, such that Defendants are subject to the jurisdiction of the State of California.

12. Plaintiffs are informed and believe, and therefore allege, that one or more Defendants reside in Los Angeles County in the State of California, and that some of the

4

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

exposure giving rise to Plaintiffs claims occurred in Los Angeles County, such that venue is proper in Los Angeles County.

13. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, asbestosis, pleural plaques, lung cancer, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers, without perceptible trauma on exposure, and that said diseases result from exposure to asbestos over a period of time.

14. Plaintiffs are informed and believe, and therefore allege, that Defendants exposed Plaintiff to the same hazardous product, namely asbestos.

15. As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to respirable asbestos, which he inhaled and which thereby entered his body, and which caused him to suffer the severe and permanent harm set forth herein.

16. As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff suffered permanent injuries, including, but not limited to mesothelioma, and the mental, physical and emotional distress attendant thereto, all to Plaintiffs' incurred general damages in a sum in excess of $75,000.00.

17. As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs have paid and/or incurred liability for medical costs, including, but not limited to, the costs of physicians, surgeons, nurses, hospital care, medicine, hospices, medical imaging, palliative care and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time.

18. As a further direct and proximate result of Defendants' conduct as hereinafter alleged, Plaintiff has incurred, and will incur, loss of the ability to perform household services, loss of income, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs.

///

///

///

5

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

## FIRST CAUSE OF ACTION
### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50, AND EACH OF THEM, FOR A CAUSE OF ACTION FOR NEGLIGENCE, AND ALLEGE AS FOLLOWS:**

19.    Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

20.    At all relevant times, Defendants were engaged in the business of placing asbestos-containing products into the stream of commerce, including by mining, milling, refining, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and/or advertising said products.

21.    At all relevant times, Defendants negligently and carelessly placed asbestos-containing products into the stream of commerce as set forth above, which caused personal injuries and damages to users and consumers of said products, and persons in proximity to users and consumers of said asbestos-containing products, including Plaintiff (collectively, "exposed persons") when said asbestos-containing products were used and/or misused in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use.

22.    At all relevant times, Defendants negligently and carelessly researched, designed, modified, tested and/or failed to test asbestos-containing products, which caused personal injuries and damages to exposed persons when used and/or misused in a manner that was reasonably foreseeable, such that said products were unsafe and dangerous for use by exposed persons.

23.    At all relevant times, Defendants and their employees, contractors, subcontractors and/or agents, in the performance of their work, negligently and carelessly used asbestos-containing products in proximity to exposed persons, including Plaintiff, such that these persons were exposed to respirable asbestos.

6
COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

24.     At all relevant times, Defendants negligently and carelessly failed to warn and/or inadequately warned of the health hazards of these asbestos-containing products, and failed to provide adequate use instructions or other information for eliminating the health risks inherent in their use, in that asbestos-containing products caused personal injuries to exposed persons while being used and/or misused in a manner that was reasonably foreseeable and/or actually foreseen by Defendants, such that said products were unsafe and dangerous for use by exposed persons.

25.     At all relevant times, Defendants owed a duty to Plaintiff and other foreseeably affected persons to exercise due care in the pursuance of the activities mentioned above, and Defendants breached this duty of due care.

26.     Defendants knew, or should have known, and intended, that asbestos-containing products would be transported by truck, rail, ship and other common carriers, and knew, or should have known, that in the shipping process the products would break, crumble, crack, shed or be otherwise damaged, resulting in the release of airborne asbestos fibers in the proximity of Plaintiff and other exposed persons, who would then be exposed to, and inhale, said respirable fibers.

27.     Defendants knew, or should have known, and intended, that asbestos shipped in bags made of permeable materials such as jute or burlap, or breakable materials such as paper or plastic, would be transported by truck, rail, ship and other common carriers, and that as a result of such transportation, the bags would leak, tear, rip, split open, break, and otherwise cause asbestos to be released from the bags into the compartment in which they were transported and the surrounding air, thereby exposing exposed persons to these respirable fibers.

28.     Defendants knew, or should have known, and intended that the process of normal, intended, and/or foreseeable use and/or misuse of these asbestos-containing products would result in the release of airborne asbestos fibers in the proximity of exposed persons, who would then be exposed to and inhale said asbestos fibers.

///

///

7

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

29.     At all times herein relevant, Defendants were aware that asbestos-containing products were defective and dangerous, but nonetheless failed to take reasonable precautions, such as providing adequate warnings and/or other information regarding the hazards of said products to known or foreseeable exposed persons, including Plaintiff.

30.     At all times herein, Defendants failed to recall asbestos-containing products that had been placed in the stream of commerce, and/or to retrofit asbestos-containing products so as to eliminate the risk of exposure to asbestos from said products. A reasonable manufacturer, distributor, marketer, supplier and/or seller of asbestos-containing products would, under the same or similar circumstances, have warned and/or adequately warned of the hazards associated with their use, so that persons in possession of, or exposed to, said asbestos fibers could cease their use, abate any asbestos-containing materials present, and otherwise act to protect themselves from harm. A reasonable manufacturer, distributor, supplier, marketer and/or seller of asbestos fibers would also, under the same or similar circumstances, have recalled these products from the market, and/or retrofitted said products in order to make them safe.

31.     Plaintiff suffers from injury and disease, including malignant mesothelioma, as a result of said exposure to asbestos-containing products as set forth herein. Plaintiff was not aware at the time of this exposure that Defendants' asbestos-containing products presented any risk of injury and/or disease to Plaintiff from work with and around these products.

32.     Defendants' conduct and Defendants' placing of defective products into the stream of commerce, as set forth herein, were a direct and proximate cause of Plaintiff's injuries and damages.

33.     Furthermore, the conduct of Defendants in continuing to market and sell products which they knew were dangerous to human health, without adequate warnings or proper use instructions, was done with reckless and conscious disregard for, and indifference to, the safety and health of Plaintiff and other exposed persons.

///

///

8

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

34. Defendants acted with reckless disregard for the safety of Plaintiff and other exposed persons who came in contact with Defendants' asbestos-containing products, in that Defendants knew or should have known that there was a substantial risk of injury and death resulting from exposure to asbestos, as set forth above, and that these risks included asbestosis, pleural plaques, lung cancer and mesothelioma.

35. On or before 1930, and thereafter, Defendants, who as a matter of law are held to the knowledge of an expert, knew or should have known of the hazards of exposure to asbestos, by way of medical, scientific and industrial literature, including but not limited to literature available to organizations of which Defendants and their agents, officers, directors, managing agents and/or employees were members.

36. Defendants were aware that members of the general public and other exposed persons, including Plaintiff, would assume, and in fact did assume, that exposure to asbestos-containing products was safe, when in fact said exposure was and is extremely hazardous.

37. Defendants' conduct was motivated by Defendants' financial interests and was conducted for Defendants' own benefit and profit. In continuing to place asbestos-containing products in the stream of commerce in furtherance of their financial interest and for their own benefit, Defendants consciously disregarded the safety of exposed persons, including Plaintiff, and in fact were consciously willing and intended to permit asbestos to cause injury to exposed persons, including Plaintiff.

38. In furtherance of their financial interests and for their own benefit, Defendants induced exposed persons to purchase, select and work with, and in proximity to, their asbestos-containing products, causing these persons to become exposed to asbestos.

39. Defendants are liable for the fraudulent, oppressive, and malicious acts of their alternate entities, and each of them, and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, and/or should have known of, the acts and omissions of Defendants, as set forth herein.

9

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

40. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

## SECOND CAUSE OF ACTION
### (Strict Liability)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50, AND EACH OF THEM, FOR A SECOND CAUSE OF ACTION FOR STRICT LIABILITY, AND ALLEGE AS FOLLOWS:**

41. Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

42. Defendants marketed, manufactured, sold, supplied, distributed, rebranded, relabeled, and otherwise placed asbestos-containing products into the stream of commerce.

43. Certain Defendants' asbestos-containing products contained a manufacturing defect when they left Defendants' possession. Specifically, Defendants' asbestos-containing talc products were defective in that they, as manufactured, did not conform to Defendants' design or specifications by virtue of their asbestos content; such products were unsafe for their intended purpose as asbestos was a dangerous substance, capable of causing and in fact did cause serious bodily injury and harm to exposed persons, including Plaintiff.

44. Defendants' asbestos-containing products were also defective and unsafe for their intended purpose, in that they did not perform as safely as expected by an ordinary consumer when used or misused in a reasonably foreseeable or intended manner, as asbestos-containing products were capable of causing and in fact did cause serious bodily injury and harm to exposed persons, including Plaintiff.

45. These defects in Defendants' asbestos-containing products existed and were present at the time the products left Defendants' possession. These asbestos-containing products were intended to reach the ultimate consumer in the same condition as they left Defendants'

10

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

possession, custody and/or control. These asbestos-containing products did, in fact, cause severe injury and bodily harm to exposed persons, including Plaintiff, while being used and/or misused in a reasonably foreseeable manner, thereby rendering them defective, unsafe and dangerous for use.

46. The defects in the asbestos-containing products placed in the stream of commerce by Defendants were a substantial factor in increasing Plaintiff's risk of developing an asbestos-related disease, including mesothelioma, which he did in fact develop, and thus in causing the injuries and damages sustained by Plaintiffs.

47. Plaintiff's use and/or misuse, and the use and/or misuse by others in his proximity, of said asbestos-containing products occurred in a manner that was reasonably foreseeable to Defendants.

48. Asbestos-containing products posed risks to human health that were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific and medical communities at the time Defendants placed said products into the stream of commerce.

49. The potential risks of asbestos-containing products presented a substantial danger to human health when used and/or misused in a way intended by, and/or reasonably foreseeable to, Defendants.

50. Defendants knew and intended that asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts, and without knowledge of the hazards involved in such use.

51. Defendants whose asbestos-containing products reached exposed persons by way of an intermediary, such as a supplier or manufacturer of a finished product, did not reasonably rely on such intermediaries to convey adequate warnings to others regarding the hazards of asbestos generally or of Defendants' asbestos-containing products specifically.

///

///

11

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

52.     Exposed persons, including Plaintiff, did not know of the substantial danger of using asbestos-containing products, and did not have the same or similar access to medical, industrial and scientific sources of such knowledge as were actually and/or constructively available to Defendants.

53.     Said dangers were not readily recognizable by Plaintiff or other exposed persons. Defendants failed to warn, adequately warn, or instruct of the potential hazards of said asbestos-containing products, and these acts and/or omissions were a substantial factor in causing harm to Plaintiff as set forth herein.

54.     Plaintiff was not negligent in any manner, including in Plaintiff's use or alleged modification or misuse of asbestos-containing products, and negligence by Plaintiff was not a substantial factor in causing or contributing to Plaintiffs' injuries or damages.

55.     Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

### THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50 AND EACH OF THEM, FOR A THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION, AND ALLEGE AS FOLLOWS:**

56.     Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

57.     Defendants, through words and conduct, represented that asbestos generally and asbestos-containing products marketed, sold, supplied, distributed, disturbed, installed removed, and/or placed in the stream of commerce by Defendants were of merchantable quality and safe for their intended and foreseeable use.

///

12

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

58. Defendants' representations were made to members of the general public, the purchasers and users of said products, and other exposed persons including Plaintiff, intending or reasonably expecting that it would heard by Plaintiff and others similarly situated.

59. Defendants' representations were not true, because asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, in that asbestos has very dangerous properties and defects because it causes harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

60. Defendants had no reasonable grounds for believing these representations were true when Defendants made them.

61. Defendants intended that members of the general public, the purchasers and users of said products, and other exposed persons including Plaintiff would rely on these representations.

62. As intended by Defendants, Plaintiff and other similarly situated exposed persons reasonably relied on Defendants' representations of Defendants, as such representations substantially influenced Plaintiff and others to purchase, use, recommend, supply, specify and/or work in the presence of said products, such that Plaintiff and others similarly situated were injured and damaged as a proximate result.

63. As a direct and proximate result of his reliance on Defendants' representations, which were a substantial factor in causing harm, Plaintiff sustained injuries and damages as set forth herein.

64. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

///

13

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

## FOURTH CAUSE OF ACTION
### (Fraud by Nondisclosure)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B", AND DOES 1-50 AND EACH OF THEM, FOR A FOURTH CAUSE OF ACTION FOR FRAUD BY NONDISCLOSURE, AND ALLEGE AS FOLLOWS:**

65.     Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

66.     Defendants sold their products directly to Plaintiff thereby creating a direct transactional relationship between Defendants and Plaintiff giving rise to a duty to disclose. Defendants directly profited from the sale of their products to Plaintiff.

67.     Furthermore, Defendants directly advertised their products to Plaintiff and others similarly situated. Plaintiff therefore belonged to a class of persons to whom Defendants owed a duty to disclose.

68.     Defendants intentionally failed to disclose to Plaintiff and others similarly situated the fact that asbestos generally and asbestos-containing products marketed, sold, supplied, distributed, disturbed, installed removed, and/or placed in the stream of commerce by Defendants were not safe for their intended use, nor were they of merchantable quality, in that asbestos, and thus any product containing asbestos, has very dangerous properties and defects because asbestos fibers cause serious harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

69.     Defendants intentionally failed to disclose certain facts which were known exclusively to them, and which Plaintiff could not have discovered, as Defendants had knowledge of the composition and hazardous nature of their asbestos-containing products, including the existence of and amount of asbestos present in said products and the propensity of those products to release asbestos fibers into the air during their ordinary and intended use.

70.     Plaintiff and others similarly situated did not know that that asbestos, and thus any product containing asbestos, has very dangerous properties and defects because it causes serious

14

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

harm and disease in human beings, including but not limited to asbestosis, lung cancer, pleural plaques, and mesothelioma.

71.    Defendants intended to deceive Plaintiff and others similarly situated by concealing these facts as set forth herein.

72.    Plaintiff relied upon Defendants' intentional nondisclosure to Plaintiff's detriment. Had Defendants not concealed information about the hazards associated with asbestos and Defendants' asbestos-containing products, Plaintiff reasonably would have behaved differently, which may have included behavior such as using different safety and industrial hygiene measures or purchasing products with less or no asbestos content.

73.    Defendants' fraudulent nondisclosure was a substantial factor in causing harm to Plaintiff, and as a result of Defendants' concealment of facts known to them, Plaintiff sustained injuries and damages as set forth herein.

74.    Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

### FIFTH CAUSE OF ACTION
**(Vicarious Liability Based on Respondeat Superior)**

**PLAINTIFFS COMPLAIN OF AGAINST DEFENDANTS ON EXHIBIT "C" AND DOES 51-100, AND EACH OF THEM, FOR A FIFTH CAUSE OF ACTION FOR VICARIOUS LIABILITY BASED ON RESPONDEAT SUPERIOR, AND ALLEGE AS FOLLOWS:**

75.    Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

76.    At all relevant times, Defendants retained, employed and/or hired workers, contractors and/or other personnel (hereinafter collectively "employees") in areas where Defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff worked and/or was otherwise present.

15
COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

77.   At all relevant times, Defendants' employees encountered asbestos-containing products during the course and scope of their employment, and during their regular work activities negligently disturbed said products, causing the release of respirable asbestos fibers, to which Plaintiff was exposed.

78.   These employees handling and disturbing asbestos-containing products in Plaintiff's vicinity were Defendants' agents, and at all times herein relevant, were subject to Defendants' control with respect to their acts, labor, and work involving (a) the removal, transport, installation, cleaning, handling, and maintenance of asbestos-containing products, including debris and dust generated from work with asbestos-containing products, and (b) the implementation of safety policies and procedures regarding their work with and asbestos-containing products.

79.   Defendants controlled both the means and manner of performance of the work of their employees as described herein.

80.   Defendants' employees received monetary compensation from Defendants in exchange for the work performed as described herein, and these employees performed the work as described herein in the transaction and furtherance of Defendants' business.

81.   Respirable asbestos fibers were released during Defendants' employees' use, handling, breaking, and/or otherwise disturbing asbestos-containing products.

82.   Defendants' employees' use, handling, manipulation and/or disturbing of asbestos-containing products, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage to exposed persons, including Plaintiff.

83.   Defendants' employees were negligent in that they failed to isolate their work with asbestos-containing products and/or to suppress asbestos fibers from being released into the air and surrounding areas; failed to take appropriate steps to learn how to prevent exposure to asbestos-containing products; failed to warn and/or adequately warn Plaintiff that he was being exposed to asbestos-containing products; and failed to adequately warn Plaintiff of the harm

16

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

associated with his exposure to asbestos-containing products and/or provide him with protection to prevent his contamination with or inhalation of asbestos.

84. At all relevant times, Defendants had extensive knowledge and experience in the field of work to be performed, and therefore knew or should have known of the risks created by the work of its employees as set forth herein.

85. Defendants' employees knew or should have known that failure to take such steps would result in exposure to bystanders, including Plaintiff and others similarly situated.

86. Defendants' employees owed Plaintiff, and other similarly situated persons, a duty to exercise due care and diligence in their activities, so as to avoid causing harm to Plaintiff and others similarly situated.

87. Defendants' employees breached this duty of care as herein described.

88. At all times herein mentioned, Plaintiff was unaware of the dangerous conditions and unreasonable risk of personal injury created by Defendants' employees' use of and work with and around asbestos-containing products.

89. As a direct result of Defendants' conduct, Plaintiff was exposed to asbestos-containing products, causing severe and permanent injury and the damages and injuries to Plaintiff as complained of herein.

90. Based on the foregoing, Defendants, as the employers of said employees, are vicariously liable under the doctrine of respondeat superior for all negligent acts and omissions committed by their employees in the course and scope of their work that caused harm to Plaintiff.

91. Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

///

17

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

## SIXTH CAUSE OF ACTION
### (Premise Owner/Contractor Liability)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", AND DOES 51-100, AND EACH OF THEM, FOR A SIXTH CAUSE OF ACTION FOR PREMISES OWNER/CONTRACTOR LIABILITY, AND ALLEGE AS FOLLOWS:**

92.     Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

93.     Plaintiff was exposed to asbestos-containing products in a manner that was reasonably foreseeable to Defendants.

94.     At all times herein mentioned, Defendants caused asbestos-containing products to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by Defendants.

95.     At all times mentioned herein, Defendants owned, leased, maintained, managed, and/or otherwise controlled the premises where Plaintiff was present.

96.     At all relevant times and places, Defendants caused asbestos-containing products, to be constructed, installed, maintained, used, supplied, replaced, repaired, disturbed and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors and/or subcontractors, causing the release of dangerous quantities of respirable asbestos fibers, thereby creating hazardous and unsafe conditions such that Plaintiff and similarly situated persons were exposed to respirable asbestos fibers while present at said premises.

97.     At all times mentioned herein, Defendants knew or, in the exercise of ordinary and reasonable care, should have known, that the foregoing conditions and activities created hazardous and unsafe conditions which posed an unreasonable risk of harm to Plaintiff and persons present on each of the aforesaid respective premises.

98.     At all times relevant herein, Plaintiff entered and/or occupied these premises as intended and for the benefit and advantage of Defendants and at their request and invitation. In so doing, Plaintiff was exposed to dangerous quantities of respirable asbestos fibers released through activities managed, maintained, initiated, created, controlled and/or caused by Defendants.

18

99.   Plaintiff at all relevant times was unaware of the hazardous conditions or the risk of personal injury created by the aforesaid presence and use of asbestos-containing products on said premises.

100.   At all relevant times, Defendants remained in control of the premises where Plaintiff worked or was otherwise present.

101.   At all relevant times, Defendants owed to Plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid creating an unreasonable risk of harm, and to avoid causing injury, to Plaintiff and others similarly situated.

102.   At all relevant times, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that the premises in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, and that the persons present and using said premises such as Plaintiff would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

103.   At all relevant times, Defendants negligently failed to abate, correct or warn Plaintiff of the existence of these dangerous conditions and hazards on the premises.

104.   Defendants caused asbestos-containing products to be constructed, installed, maintained, used, replaced, repaired, disturbed and/or removed on these premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of respirable asbestos fibers on the premises, which Plaintiff inhaled, thereby causing him injury.

105.   At all relevant times, Defendants should have recognized that the work of said contractors with asbestos-containing products would result in the release of asbestos fibers into the air, creating dangerous conditions which posed a substantial risk of harm to Plaintiff and others similarly situated unless appropriate precautions were taken.

106.   Defendants knew or should have known that the work performed on their premises required appropriate industrial hygiene controls to be implemented to avoid creating a risk of harm from asbestos-containing products, and were aware or should have been aware that such procedures were not taken.

19

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

107.   The negligent conduct of the contractors employed by Defendants includes, but is not limited to:

a)   Failure to warn of the presence and hazardous nature of asbestos-containing products;

b)   Failure to use appropriate industrial hygiene controls to remove, reduce and/or eliminate the release of asbestos-containing products;

c)   Failure to provide adequate personal protection from exposure and inhalation of respirable asbestos fibers, including but not limited to the use of breathing protection, work clothing, disposable coveralls, change rooms, and/or showers;

d)   Failure to inspect, monitor and/or test the air on the premises for the presence of asbestos and to determine the quantity of asbestos present;

e)   Failure to provide appropriate medical monitoring for contractors, employees and others present on the premises, including Plaintiff and others similarly situated, to detect the presence of asbestos-related disease and injury.

108.   At all relevant times, Defendants were subject to certain rules, ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders.

109.   At all relevant times, Defendants were required to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances as prescribed by Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants and under the regulations

20

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

promulgated by California regional Air Quality Management Districts as empowered by California Health and Safety Code §40.200, *et seq.*

110.     Defendants violated these rules, ordinances, statutes, and other government regulations by:

a)     Failing to comply with statutes, and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b)     Failing to segregate work involving the release of asbestos;

c)     Failing to suppress asbestos using prescribed ventilation techniques;

d)     Failing to suppress asbestos using prescribed "wet down" techniques;

e)     Failing to warn or educate Plaintiff and others similarly situated regarding the presence and risks of asbestos-containing products on the premises;

f)     Failing to provide appropriate respiratory protection devices;

g)     Failing to ensure appropriate respiratory protection devices were used properly, including administering 'fit tests';

h)     Failing to provide for an ongoing health screening program for those exposed to asbestos-containing products on the premises;

i)     Failing to provide adequate housekeeping and clean-up of the work place;

j)     Failing to properly warn of the hazards associated with asbestos-containing products as required by these statutes;

k)     Failing to properly report renovation and disturbance of asbestos-containing products, as required by statutes and regulations, including but not limited to BAAQMD Regulation 11-2-401 and/or SCQAMD Rule 1403 D(1);

l)     Failing to have an asbestos removal supervisor present, as required by regulation;

m)     Failing to obtain approval for renovation as required by statutes; and

n)     Failing to maintain records as required by statute.

21

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

111.   Plaintiff was at all times unaware of the hazardous condition or the risk of personal injury created by the violation of said regulations, ordinances or statutes by Defendants.

112.   At all times relevant times, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

113.   At all relevant times, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that Plaintiff and similarly situated persons would be lawfully present on premises under Defendants' control, without knowledge of dangerous conditions on said premises; that the persons present on said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises; and that such persons were unaware of the aforesaid violations of codes, regulations and statutes by Defendants.

114.   As a direct and proximate result of the foregoing, Plaintiff developed an asbestos-related illness and injury, including mesothelioma, and Plaintiff has suffered damages as herein alleged.

115.   At all relevant times relevant herein, Defendants negligently selected, supplied, distributed, and provided asbestos-containing products to Plaintiff for use during his regular work activities, causing him to be exposed to respirable asbestos fibers.

116.   At all relevant times, Defendants selected, supplied, and distributed asbestos-containing products to their employees for use during their regular work activities, such that said employees caused the release of respirable asbestos fibers to which Plaintiff and others similarly situated were then exposed as set forth herein.

117.   At all relevant times, Defendants knew or should have known that their employees, contractors, and other persons lawfully on said premises, including Plaintiff, encountered asbestos-containing products during the course and scope of their work activities.

///

///

22

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

118. At all relevant times, Defendants, knew or should have known that the asbestos-containing products encountered on its premises by persons including Plaintiff were unsafe, in that respirable asbestos fibers were released during the use, handling, breaking, or other manipulation of those asbestos-containing products, and that once released, asbestos fibers can be inhaled, causing severe risk of disease and death in human beings.

119. At all relevant times, Defendants knew, or in the exercise of reasonable diligence, should have known, that employees and other persons lawfully present, including Plaintiff, who were exposed to asbestos-containing products as set forth herein would have asbestos fibers released from these products accumulating on their clothing, shoes, hair and persons, such that absent appropriate industrial hygiene controls to prevent such contamination, Plaintiff and other similarly situated persons would unknowingly carry these asbestos fibers home from the workplace, and contaminate their homes and vehicles, such that family members and others exposed to these asbestos fibers were at risk of severe and permanent harm.

120. At all relevant times, Defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos-containing products; to adequately instruct, train, and supervise their employees; and to implement adequate industrial hygiene controls, safety policies and procedures to protect workers, and persons encountering those workers, including Plaintiff, from suffering injury or death as a result of exposure to respirable asbestos.

121. The duties of Defendants as alleged herein exist and existed independently of their duties to maintain their premises in reasonably safe condition, free from concealed hazards.

122. Defendants negligently selected, supplied, and distributed asbestos-containing products; failed to adequately train or supervise their employees to identify asbestos-containing products; to ensure the safe handling of asbestos-containing products encountered during the course of their work activities; and to guard against inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products during the course and scope of their employment.

///

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

123.    As a direct and proximate result of Defendants' conduct, and each of them as set forth herein, Plaintiff became exposed to and inhaled respirable asbestos fibers, which were a substantial factor contributing to his risk of developing an asbestos-related disease, which he in fact developed, leading to Plaintiff's injuries and damages.

124.    Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

### SEVENTH CAUSE OF ACTION
**(Loss of Consortium)**

**PLAINTIFF ANN HERLIHY COMPLAINS OF DEFENDANTS, AND DOES 1-100, AND EACH OF THEM, FOR A CAUSE OF ACTION FOR LOSS OF CONSORTIUM, AND ALLEGES AS FOLLOWS:**

125.    Plaintiffs incorporate by reference each and every allegation of the General Allegations and of each cause of action set forth previously herein.

126.    Plaintiffs were married on February 15, 1984 and at all relevant times were husband and wife.

127.    Prior to his injuries as alleged, Plaintiff MICHAEL N. HERLIHY was able to, and did, fully perform the duties of a spouse. As a result of his injuries, Plaintiff MICHAEL N. HERLIHY has been and is unable to fully perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance and management of the family home. As a proximate result thereof, Plaintiff ANN HERLIHY was and is deprived of the full consortium of her spouse, including the performance of duties, all to Plaintiffs' damages, in an amount presently unknown to Plaintiffs but which will be proved at time of trial.

128.    As a direct and proximate result of the Defendants' acts and omissions as set forth herein, and the severe injuries caused thereby to Plaintiff MICHAEL N. HERLIHY as set forth in the complaint, Plaintiff ANN HERLIHY has suffered, and continues to suffer, loss of

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

consortium, including but not by way of limitation, loss of love, comfort, care, assistance, protection, society, moral support services, marital relations, companionship and affection of her said spouse, and has suffered severe mental and emotional distress and other damages as a result thereof. Plaintiff ANN HERLIHY seeks compensation only for such harm that has occurred and will occur during the period between Plaintiff MICHAEL N. HERLIHY's mesothelioma diagnosis and untimely death.

129.    Defendants' herein-described conduct was and is willful, malicious, fraudulent, outrageous and done in reckless and conscious disregard and indifference to the safety and health of exposed persons, including Plaintiff MICHAEL N. HERLIHY, and resulted in Plaintiff ANN HERLIHY's loss of consortium. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, in an amount to be proved at trial, as follows:

1.    For Plaintiff's general damages according to proof;

2.    For medical and related expenses according to proof;

3.    For loss of earnings according to proof;

4.    For exemplary or punitive damages according to proof;

5.    For Plaintiff's cost of suit herein;

6.    For damages for fraud according to proof; and

///

///

///

///

///

25

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

7.     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in California Code of Civil Procedure section 998, California Code of Civil Procedure section 1032 and related provisions of law.

DATED: August 4, 2023                    Maune Raichle Hartley French & Mudd LLC

By: _____

David L. Amell
Attorneys for Plaintiffs

26
COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

## EXHIBIT A

From a young age, Plaintiff Michael N. Herlihy ("Plaintiff" or "Mr. Herlihy") performed automotive repair work, including brake work, on his personal vehicles and the vehicles of friends and family all within the state of California. Plaintiffs allege that the friction products that Mr. Herlihy worked with and around in the course of this work contained asbestos and that he was exposed to asbestos as a result.

From approximately 1984 through the 1990s, Mr. Herlihy worked for two saw sharpening shops: Ruff Saw Service and Precision Saw Sharpening. CertainTeed's Riverside asbestos-cement pipe plant was one of the saw sharpening shops' biggest customers. Mr. Herlihy routinely entered the CertainTeed plant to pick up industrial sawblades which he then cleaned and sharpened before returning them to CertainTeed. Plaintiffs allege that he was exposed to asbestos as a result of this work.

27

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

## EXHIBIT "B"

AUTO PARTS WAREHOUSE, INC.;
CALAVERAS ASBESTOS, LTD.;
CERTAINTEED CORPORATION;
GENUINE PARTS COMPANY;
HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC., individually and as
    successor-in-interest to the BENDIX CORPORATION, BENDIX AVIATION CORP., and
    THE SIGNAL COMPANIES, INC., f/k/a SIGNAL OIL & GAS COMPANY;
PARKER HANNIFIN CORPORATION as Successor-In-Interest to EIS BRAKES;
PNEUMO ABEX LLC, Individually and as Successor-By-Merger to PNEUMO ABEX
    CORPORATION, Successor-In-Interest to ABEX CORPORATION f/k/a AMERICAN
    BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND FOUNDRY
    COMPANY including the AMERICAN BRAKEBLOK DIVISION, Successor-By-Merger to
    the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE AMERICAN
    BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS
    CORPORATION;
STANDARD MOTOR PRODUCTS, INC.;
WORLDWIDE AUTO PARTS, Individually and as Successor-in-Interest to UNITED SYATT
    AMERICA CORPORATION as Successor and dba BROADWAY AUTO PARTS;
and DOES 1-50.

28

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

# EXHIBIT "C"

CERTAINTEED CORPORATION;
and DOES 51-100.

29

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

# Exhibit 6

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 15

**23STCV18584**                                                          January 26, 2024
**MICHAEL N. HERLIHY, et al. vs AUTO PARTS**                              9:00 AM
**WAREHOUSE, INC., et al.**

Judge: Honorable Laura A. Seigle          CSR: None
Judicial Assistant: K. Sandoval           ERM: None
Courtroom Assistant: M. Torres            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

Other Appearance Notes: Plaintiff's counsel: David Rancilio (X);    Defense counsel: Seana Azad
and Owais Bari (X);

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: re dismissal of Defendant
Certainteed and a Trial Setting Conference (Herlihy 23STCV18584)

Matters are called for hearing.

The Order to Show Cause Re: re dismissal of Defendant Certainteed and a Trial Setting
Conference (Herlihy 23STCV18584) scheduled for 01/26/2024 is 'Held' for case 23STCV18584.

The Order to show cause is held and discharged.

The Court sets the following:

Initially, in open court, the Court set the Final Status Conference for 2-13-25 and the Jury Trial
date for 2-27-25 but LATER amends the dates as follows:

Final Status Conference (Herlihy 23STCV18584) is scheduled for 02/18/2025 at 09:00 AM in
Department 15 at Spring Street Courthouse on case 23STCV18584.

Jury Trial (Herlihy 23STCV18584) is scheduled for 03/03/2025 at 09:00 AM in Department 15
at Spring Street Courthouse on case 23STCV18584.

Plaintiff is electronically advised to give notice to all forthwith via File & Serve.

A copy of this minute order will append to the following coordinated case under JCCP4674:
23STCV18584.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the City of Emeryville, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  1900 Powell Street, Suite 200, Emeryville, California 94608.

On **January 26, 2024,** I served the foregoing:

- **LAOSD MINUTE ORDER SETTING TRIAL**

and a copy of this declaration to the interested parties herein as follows:

**[ X ] BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS:**
Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent from e-mail address chosni@mrhfmlaw.com to the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

PLEASE SEE ATTACHED SERVICE LIST

Executed on **January 26, 2024,** in Emeryville, California.

_____
Christina Hosni

_Michael N. Herlihy, et al. v. Auto Parts Warehouse, Inc., et al._
Los Angeles County Superior Court Case No.: 23STCV18584

1

PROOF OF SERVICE

**Herlihy v. Auto Parts Warehaouse, Inc., et al.**
**Los Angeles County Superior Court Case No.:**

## SERVICE LIST (via FSX)

AUTO PARTS WAREHOUSE, INC.
Larry R. Schmadeka, Esq.
FISHERBROYLES, LLP
260 Newport Center Drive, Suite 100
Newport Beach, CA 92660
T: 949-694-5388
F: 949-694-5389
larry.schmadeka@fisherbroyles.com

David D. Messa, Esq.
FISHERBROYLES, LLP
530 Lytton Avenue, Second Floor
Palo Alto, CA 94301
T: 415-915-4415
F: 415-890-4845
david.mesa@fisherbroyles.com

CALAVERAS ASBESTOS, LTD.
Melanie L. Ameele, Esq.
Timothy C. Pieper, Esq.
FOLEY MANSFIELD
181 W. Huntington Drive , Suite 210
Monrovia, CA 91016
T: 213-283-2100
mameele@foleymansfield.com
tpieper@foleymansfield.com

GENUINE PARTS COMPANY
Frank D. Pond, Esq.
Mark K. Gittler
POND NORTH LLP
800 S. Figueroa St., Suite 970
Los Angeles, CA 90017
T: 213-617-6170
F: 213-623-3594
mgittler@pondnorth.com

HONEYWELL INTERNATIONAL, INC.,
f/k/a ALLIED SIGNAL, INC., individually
and as successor-in-interest to the BENDIX
CORPORATION, BENDIX AVIATION
CORP., and THE SIGNAL COMPANIES,
INC., f/k/a SIGNAL OIL & GAS
COMPANY
Michael E. Sandgren, Esq.
Natalie Garcia Lashinsky
Aaron D. Costa
HUSCH BLACKWELL, LLP
355 S. Grand Ave., Suite 2850
Los Angeles, CA 90071
T: 213.337.6550
F: 213.337.6551
michael.sandgren@huschblackwell.com
natalie.lashinsky@huschblackwell.com
aaron.costa@huschblackwell.com

PARKER HANNIFIN CORPORATION as
Successor-In-Interest to EIS BRAKES
Leonard M. Tavera, Esq.
SEMPER LAW GROUP, LLP
330 N. Brand Boulevard, Suite 670
Glendale, CA 91203
T:213-437-9700
F:213-596-1466
ltavera@semperlawgroup.com

**Herlihy v. Auto Parts Warehaouse, Inc., et al.**
**Los Angeles County Superior Court Case No.:**

### SERVICE LIST (via FSX)

PNEUMO ABEX LLC, Individually and as
Successor-By-Merger to PNEUMO ABEX
CORPORATION, Successor-In-Interest to
ABEX CORPORATION f/k/a AMERICAN
BRAKE SHOE COMPANY, f/k/a
AMERICAN BRAKE SHOE AND
FOUNDRY COMPANY including the
AMERICAN BRAKEBLOK DIVISION,
Successor-By-Merger to the AMERICAN
BRAKE SHOE AND FOUNDRY
COMPANY and THE AMERICAN
BRAKEBLOK CORPORATION, f/k/a THE
AMERICAN BRAKE MATERIALS
CORPORATION
Stephanie L. Bowlby, Esq.
Zachary H. Lodmer, Esq.
DEHAY & ELLISTON, LLP
515 South Flower Street, Suite 180
Los Angeles, CA 90071
T: 213-271-2727
F: 213-271-2730
sbowlby@dehay.com
zlodmer@dehay.com

STANDARD MOTOR PRODUCTS, INC.
Leonard M. Tavera, Esq.
SEMPER LAW GROUP, LLP
330 N. Brand Boulevard, Suite 670
Glendale, CA 91203
T:213-437-9700
F:213-596-1466
ltavera@semperlawgroup.com

WORLDWIDE AUTO PARTS,
Individually and as Successor-in-Interest to
UNITED SYATT AMERICA
CORPORATION as Successor and dba
BROADWAY AUTO PARTS
Frank D. Pond, Esq.
Michael A. Graham, Esq.
Seana Azad, Esq.
POND NORTH
800 S. Figueroa St., Suite 970
Los Angeles, CA 90017
T: 213-617-6170
F:  213-623-3594

# Exhibit 7

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

---oOo---

HOLLY ORTWEIN and            No. RG13701633
RICHARD ORTWEIN,

        Plaintiffs,

vs.

CERTAINTEED CORPORATION
Et al.,

        Defendants.

-----------------------/

VIDEOTAPED DISCOVERY DEPOSITION OF LLOYD AMBLER

        Taken before JOSEPHINE CARDILLO,

Professional Court Reporter and Notary Public.

August 20, 2014

Aiken Welch Court Reporting
One Kaiser Plaza, Suite 250
Oakland, California  94612
510.451.1580/877.451.1580
Fax:  510.451.3797
www.aikenwelch.com

BY MR. SATTERLEY:

Q. Okay.

A. We were always trying to improve our systems, whether -- it could be laze, it could be a boring mill, it could be the -- the mixing -- the mixing containers up where the cement silica and asbestos are all mixed together with water; it could be any of those things.

We were always evaluating -- we were evaluating doing a better job of adding our asbestos to the mix. And, eventually, we even invented a -- developed an automatic asbestos bag opener.

EXAMINATION BY MR. SATTERLEY: Move to strike portions as nonresponsive.

BY MR. SATTERLEY:

Q. Mr. Ambler, when you were first hired in and was told about asbestos hazards, were you told about Crocidolite asbestosis?

A. What about it?

Q. That that was one of the ingredients of the CertainTeed pipe.

A. Oh, yes.

Q. And were you told about Chrysotile asbestosis?

A. Yes, sir.

Q. And when you were -- and in the 1967 time frame, did individuals educate you that the Crocidolite was considered to be more toxic than the Chrysotile?

A. I was told that there was a lot of talk about that, that the Crocidolite fiber was more toxic than the Chrysotile, right.

Q. Anywhere in the plants in the late 1960s or '70s, did you see any notifications about Crocidolite being more dangerous or more toxic than Chrysotile?

A. Yeah, I don't remember seeing any notification of that. But everybody knew it, 'cause it was talked about.

EXAMINATION BY MR. SATTERLEY: Move to strike portion that is nonresponsive.

BY MR. SATTERLEY:

Q. You don't read the mind of everybody, do you?

MS. GEISE: I'm going to object to the form; that's argumentative.

THE WITNESS: What do you mean, I don't read the -- I don't read the mind of

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLARENCE JOHNSON, et ux, et al.,          )   C.A. No. 78-464
                                          )            78-1027
                          Plaintiffs,     )            78-1117
                                          )            78-1041
            v.                            )            78-2023
                                          )            78-1987
TURNER & NEWALL, LTD., et al.,            )            78-3046
                                          )            79-1523
                          Defendants.     )            79-4337
                                          )            79-4338
                                                       79-4341
                                                       79-4339
                                                       79-4340
                                                       79-4342
                                                       79-2715
                                                       78-4172
                                                       79-3690
                                                       79-3770

                                          Monday,
                                          June 30, 1980
                                          Washington, D. C.

Deposition of:

                    LEON DAVID HOROWITZ

called for examination by counsel for Defendant Cassiar

Asbestos Corporation, Limited, pursuant to notice, at the

offices of Shea & Gardner, 1800 Massachusetts Avenue, N. W.,

Washington, D. C., before Gerald Nevitt, Notary Public in

and for the District of Columbia, commencing at 10:55 a.m.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel. 572-4324

2

Appearances:

        For the Plaintiffs:

             HAMBURG RUBIN MULLIN & MAXWELL
             BY:   EDWARD RUBIN, ESQ.

        For the Defendant Turner & Newall, Ltd:

             JOHN P. MASON, ESQ.

        For the Defendant CertainTeed Corporation:

             SWARTZ CAMPBELL & DETWEILER
             BY:   G. DANIEL BRUCH, JR., ESQ.

             CURTIS M. PONTZ, ESQ.

             LaBRUM & DOAK
             BY:   JAMES D. HILLY, ESQ.

        For the Defendant Cassiar Asbestos Corp., Ltd:

             SHEA & GARDNER
             BY:   DAVID BOOTH BEERS, ESQ.,
             ELIZABETH S. GIBSON, ESQ.

        For the Defendant Lake Asbestos of Quebec, Ltd:

             PORZIO & BROMBERG
             BY:   MYRON J. BROMBERG, ESQ.

        For the Defendant Johns-Manville:

             MARSHALL, DENNEHEY & WARNER
             BY:   THOMAS C. DELORENZO, ESQ.,
             ANNE M. KENNEY, ESQ.

        For the Defendant Asbestos Corporation, Ltd:

             OMINSKY JOSEPH & WELSH
             BY:   EDWARD B. JOSEPH, ESQ.

3

Appearances:    (Cont'd)

For the Defendant GAF:

    MESIROV GELMAN JAFFE & CRAMER
    BY:  EDWARD GREER, ESQ.

For the Defendant Southern Asbestos:

    WHITE & WILLIAMS
    BY:  ANDREA L. BOWMAN, ESQ.

For the Defendant Bell Asbestos Mines, Ltd:

    POST & SCHELL
    BY:  F. JAMES GALLO, ESQ.

For the Defendant Turner & Newall, Ltd:

    SULLIVAN & CROMWELL
    BY:  RICHARD J. RAWSON, ESQ.

For the Defendant Carey Canadian Mines, Ltd:

    HARVEY PENNINGTON
    BY:  JOEL D. GUSKY, ESQ.

For the Defendant United States of America:

    WILLIAM R. HERMAN, ESQ.
    Civil Division, U. S. Department of Justice

- - -

4

# I N D E X

| DEPONENT | EXAMINATION BY | PAGE |
|---|---|---|
| Leon David Horowitz | Mr. Beers | 5 |
| | Mr. Herman | 119 |
| | Mr. Gallo | 125 |
| | Mr. Bromberg | 138 |
| | Mr. Beers | 172 |
| | Mr. Rubin | 176 |
| | Mr. Hilly | 226 |
| | Mr. Bruch | 235 |
| | Mr. Hilly | 241 |
| | Mr. Pontz | 242 |
| | Ms. Gibson | 242 |
| | Mr. Bromberg | 243 |
| | Mr. Bruch | 244 |
| | Mr. Gallo | 245 |

| HOROWITZ DEPOSITION EXHIBITS | PAGE |
|---|---|
| 1 through 25 - | 5 |
| 26- | 172 |

(Exhibits attached to court original)

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel 577.4324

5

(Horowitz Deposition Exhibits Nos. 1 through 25 were marked.)

LEON DAVID HOROWITZ

having been duly sworn by the Notary-Reporter, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR DEFENDANT CASSIAR

BY MR. BEERS:

Q What is your full name, Mr. Horowitz?

MR. MASON: The usual stipulations?

MR. BEERS: Yes. They are in the Federal Rules, Mr. Mason.

A Leon David Horowitz.

Q Where do you live?

A I live in Burlington, Massachusetts, 78 Macon Road, Burlington, Massachusetts 01803.

Q Where do you work?

A I work with American Mutual Liability Insurance Company, in Wakefield, Massachusetts.

Q How old are you?

A I am 62 years old.

Q What is your position at the insurance company?

A I am Chief of the Industrial Hygiene Section of the company.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel. 572-4324

13

A.    Yes, I did.

Q    Can you give me some examples of your clients during that four-year period?

A    Well, I did a beryllium survey for RCA in New Jersey.

I did another RCA survey in another plant in New Jersey with respect to employee complaints during their work hours, which was the third shift, and there were a mixture of chemicals so I can't specify which chemicals.

Most other clients were small clients, small businesses in New York City.

Q    What did you do after you left that consulting position?

A    I was hired by Keasbey & Mattison, of Ambler, Pennsylvania, as a dust control engineer.

Q    How did you first make contact with Keasbey & Mattison?

A    They had an advertisement for a dust control engineer in the New York Times and I responded to that.

Q    To whom did you respond?

A    To the address that was in the paper.

Q    Who at --

A    A personnel man was my first contact.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel 572-4374

16

Q    When did you go to work?

A    I believe it was May of that year, 1960.

Q    What was your title?

A    I believe my first title was Dust Control Engineer.

Q    How long did you remain Dust Control Engineer?

A    I was Dust Control Engineer until a few years later, after CertainTeed took over and when I took over duties as corporate Safety Director.  I don't know the exact year, but it may have been '65.

Q    How long did you remain corporate Safety Director?

A    From '65 to '68, when I left the company.

Q    What did you do when you left the company?

A    I joined American Mutual Liability Insurance Company.

Q    When you first started with Keasbey & Mattison were your duties company-wide or did they relate to a particular plant?

A    They were company-wide with respect to dust control engineering and I added, with their agreement, to do industrial hygiene work.

Q    Did the industrial hygiene work pertain to all plants or just to a particular plant?

18

Q    Keasbey & Mattison did not have a plant in Texas or California at that time, did it?

A    Not at that time. No, they didn't have a plant.

Q    After you started work with CertainTeed did you visit all the plants that CertainTeed owned, at one time or another?

A    In all the years, yes, I visited all their plants, in all the years. While I was still a Dust Control Engineer I don't remember visiting all the new plants that came with CertainTeed, but I continued visiting the plants that dealt with asbestos and cement.

Q    Mr. Horowitz, I think you described your job as falling into two parts, dust control engineering on the one hand and industrial hygiene on the other?

A    I considered them as one. They both functioned together. That is why I brought them in. But, yes, they considered it both parts; right.

Q    Did you work for the same people while doing both functions?

A    Yes.

Q    Who was your immediate supervisor at Keasbey & Mattison when you first went there?

A    Al Spedding.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel. 572-4324

30

A     The same as the asbestos cement pipe plant only.

Q     After 1962, when you worked for CertainTeed, did you also work with the dust levels at some of the other plants?

A     The same as the asbestos cement plants prior to that time.

Q     Could you just tell us that in a complete sentence, what your understanding was as to the component parts of the dust levels in the plants, say, at Hillsboro and at Santa Clara?

A     The answer would be the same at Hillsboro and Santa Clara, which would be 100 percent asbestos as one of the raw materials to make asbestos cement pipe, 100 percent silica to make the cement, and 100 percent cement, as raw materials; and then the final product as 14 percent asbestos, with the rest as a finished cement, combined cement.

MR. BEERS:  For the next little while or long while we are going to be dealing with a series of 20-some documents.

·This is off the record.

(Discussion off the record.)

Q     I have asked the Reporter at the beginning of the deposition to mark each of these documents as Horowitz Exhibits 1 through 25.  I would like to turn to the document

39

made. All I know is that he was going to come and I was invited to the meeting.

Q    Do you remember what interest Turner & Newall had in the affairs of Keasbey & Mattison at that time?

MR. MASON:   I object to the form of that question

A    I can still answer that?

Q    Yes, sir.

A    I believe Dr. Knox felt that in England they were much more aware of the hazard of asbestos and that in America, the United States; we were not that much aware.

Q    Do you remember whether or not T & N, Turner & Newall, had any relationship with Keasbey & Mattison at the time?

A    I only know of the relationship that I understoo that they owned Keasbey & Mattison.

Q    What did Dr. Knox tell you at that meeting?

A    His concern as well as the general knowledge that seemed to prevail in the British Empire, that cancer was associated with asbestos.

Q    Did he discuss any particular form of cancer?

A    Yes. He mentioned mesothelioma.

Q    What did he say about mesothelioma?

A    That it was a unique cancer, that a person could

49

maintaining a dust-free industrial atmosphere?

A        For health reasons.

Q        Did you design the cut-off saw that is referred to in this document, the dust collection system for the cut-off saw?

A        May I read it just to recall?

Q        Certainly.

(Pause.)

A        Apparently, it was my design that they were trying to correct, from their existing design to my design, and he was urging him to do it.

Q        I would like you to now turn to a document that has been marked Horowitz Exhibit 5.  Could you read the heading of that document.

A        It is written to Mr. A. W. Spedding on September 14, 1960.  Asbestos Textile Institute Meeting, September 8th and 9th, 1960.

Q        Have you ever seen this document before?

A        Yes.  I wrote it.

Q        This is a true copy of the document that you wrote?

A        Yes.

Q        Can you tell us what this document is all about?

# Exhibit 9

Page 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.   L-3458-09

-----------------------------------:

JOYCE BRADLEY,                      :        VIDEOTAPE
        Plaintiff,                  :     DEPOSITION UPON
                                    :     ORAL EXAMINATION
    vs.                             :           OF
                                    :     LLOYD C. AMBLER
3M COMPANY, et als.,                :        VOLUME 1
        Defendants.                 :

-----------------------------------:

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.   L-1628-09

-----------------------------------:

GARY R. CHAVAN and JULIE H.         :
CHAVAN, Husband and wife,           :
        Plaintiffs,                 :
                                    :
    vs.                             :
                                    :
3M COMPANY, et als.,                :
        Defendants.                 :

-----------------------------------:

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.   L-3465-09

-----------------------------------:

PATRICIA DUGGAN and JOHN J.         :
DUGGAN, Husband and wife,           :
        Plaintiffs,                 :
                                    :
    vs.                             :
                                    :
3M COMPANY, et als.,                :
        Defendants.                 :

-----------------------------------:

BRODY DEPOSITION SERVICES, INC.
Certified Shorthand Reporters & Videographers
7 Elm Street
Westfield, New Jersey 07090
Phone: (908) 789-2000
Fax: (908) 789-2007

different question.  Why don't you switch the tape.

THE VIDEOGRAPHER:  Off the record at 12:10.

(Discussion is held off the record.)

THE VIDEOGRAPHER:  Back on the record at 12:11.

BY MR. PLACITELLA:

Q.     When CertainTeed was advised that asbestos was associated with mesothelioma, they didn't hold that information back from their employees; they told them, true?

MR. EDELL:  Objection to the form of the question.  I don't know what you mean by "associated with."

BY MR. PLACITELLA:

Q.     You can answer it.

A.     When CertainTeed was -- when CertainTeed became aware that there was a possible connection with asbestos and mesothelioma or any disease, they shared that information.

Q.     And they had safety meetings about that?

A.     They -- well, they had safety meetings about what asbestos could do and how it could be harmful and safe ways of using asbestos --

Q.   With the workers?

A.   With the workers.

Q.   Tell the ladies and gentlemen of the jury, when is the first time CertainTeed mentioned the word "mesothelioma" in relation to the sale of asbestos-containing cement pipe.

A.   Well, it's an entirely -- a different situation.

Q.   Isn't it true, sir, that, although you told the employees in the plant about mesothelioma, you never mentioned the word "mesothelioma" to a customer or a consumer ever?

A.   That's not true.

Q.   When is the first time you mentioned the word "mesothelioma" --

A.   Oh.

Q.   -- to a customer or a consumer?

A.   I may be wrong on that.  We mentioned the word "cancer."  We may not have mentioned the meso.  I'd have to look at what we said on the label and also what was in the work practices, but "cancer" was used.

Q.   Cancer was not used until 1985? True, sir?

A.   Cancer itself was not used until

labels on our pipe, one in '79 and one in '85, and you know what the wording is.

BY MR. PLACITELLA:

Q.   My question is, did you at any time tell -- put a label on your pipe that said "Small amounts of exposure can cause cancer"?

A.   We put on our pipe what we've already said we put on our pipe, and those words weren't used.

Q.   Did you ever use -- did you ever put on your pipe that family members were at risk from exposure to asbestos?

A.   That was never put on our pipe.

MR. PLACITELLA:  The defense lawyers are getting allergic to me, so I'll conclude the questions for today.  I think we are out of tape anyway.

Thank you.

THE VIDEOGRAPHER:  This concludes Day 1 at 5:19 p.m.

(5:20 p.m.)

# Exhibit 10

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-3458-09

- - - - - - - - - - - - - - - -:

JOYCE BRADLEY                          :        VIDEOTAPE
                                       :     DEPOSITION UPON
            Plaintiff,                 :    ORAL EXAMINATION
                                       :           OF
            -vs-                       :    LLOYD C. AMBLER
                                       :       VOLUME 2
3M COMPANY, et als,                    :
                                       :
            Defendants.                :

- - - - - - - - - - - - - - - -:

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-1628-09

- - - - - - - - - - - - - - - -:

GARY R. CHAVAN and JULIE H.            :
CHAVAN, Husband and Wife,              :
                                       :
            Plaintiffs,                :
                                       :
            -vs-                       :
                                       :
3M COMPANY, et als,                    :
                                       :
            Defendants.                :

- - - - - - - - - - - - - - - -:

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-3465-09

- - - - - - - - - - - - - - - -:

PATRICIA DUGGAN and JOHN J.            :
DUGGAN, Husband and Wife,              :
                                       :
            Plaintiffs,                :
                                       :
            -vs-                       :
                                       :
3M COMPANY, et als,                    :
                                       :
            Defendants.                :

- - - - - - - - - - - - - - - -:

BRODY DEPOSITION SERVICES, INC.
Certified Court Reporters & Videographers
7 Elm Street
Westfield, New Jersey 07090
Phone: (908) 789-2000  Fax: (908) 789-2007

heat down, correct?

A      The dust down, correct.

Q      Right.

And even when it was wet, there were readings of a hundred and nine fibers per cc for the person that was actually cutting the pipe, correct?

A      It was one -- one count of a hundred and nine, yes.

Q      Well, there was another one for 95, and there was another one for 60, correct?

A      Right.

Q      Okay.

A      And there was one for 11, and one for 30.

Q      All right.

So the average for the people who -- for instance, cut the pressure pipe was 65 fibers per cc, correct --

MR. EDELL:  Objection to the form of the question.

Q      -- isn't that what it said?

A      For those four tests conducted, the mean was 65 fibers per cc, yes.

Q      All right.

And that was -- the average was more than six times the then OSHA limit, correct?

A       The peak level, yes.

Q       Okay.  And then they also tested helpers, correct?

A       Yes.

Q       They were people who were not cutting the pipe --

A       That's correct, yes.

Q       -- correct?

And the helpers' average exposure was for pressure pipe 49 fibers per cc, correct?

A       On the mean.

Q       Right.

That was almost five times OSHA's limit at the time, correct?

A       That's correct, yes.

Q       The helper was a bystander, correct?

A       Ah, well, what -- I don't know what your definition of a bystander is.  A bystander could be many different things.

The helper was standing there prob -- most likely holding the pipe while it was being cut.

Q       And did you not do readings in your test that showed that people 15 feet away were still exposed to asbestos fibers in excess of the OSHA limits?

A      I don't -- I don't know if we did or didn't. I didn't see it.

Q      Do you recall ever testifying to that in prior depositions?

A      I may have.  I don't remember.

Q      Okay.  And, for example, another test was run on sewer pipe, and that showed people cutting the pipe were exposed to almost ten times the OSHA limit, true?

A      Ten times?

Q      Yes, sir.

A      On the average mean?

Q      No --

A      There was one --

Q      -- one test -- correct --

A      -- one test was nine and a half times, yes, sir.

Q      Right.  And the average -- and that average was 42, so that was about four times the OSHA levels.

A      The mean was 42, yes, sir.

Q      Okay.  Now, ten years earlier when -- remember yesterday we were talking about the flurry of activity that went on in 1967 and '68 with the Asbestos Cement Products Association over whether a

# Exhibit 11

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

COURT OF UNLIMITED JURISDICTION

Coordinated Proceedings      )   JCCP 4674
Special Title (Rule 3.550)   )
                             )
LAOSD ASBESTOS CASES         )
_____ )
                             )
MICHAEL N. HERLIHY and ANN   )
HERLIHY                      )
                             )
          Plaintiffs,        )
                             )
     vs.                     )   CASE NO.  23STCV18584
                             )
AUTO PARTS WAREHOUSE, INC.,  )
et al.,                      )
                             )
          Defendants.        )
_____ )

VOLUME I

VIDEOTAPED DEPOSITION OF

MICHAEL N. HERLIHY

SAN DIEGO, CALIFORNIA

FRIDAY, OCTOBER 20, 2023

Ruth Valdivia
CSR License No. 11752, RPR
Expiration Date:  December 31, 2023

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

COURT OF UNLIMITED JURISDICTION

```
Coordinated Proceedings      )   JCCP 4674
Special Title (Rule 3.550)   )
                             )
LAOSD ASBESTOS CASES         )
_____)
                             )
MICHAEL N. HERLIHY and ANN   )
HERLIHY                      )
                             )
          Plaintiffs,        )
                             )
     vs.                     )   CASE NO. 23STCV18584
                             )
AUTO PARTS WAREHOUSE, INC.,  )
et al.,                      )
                             )
          Defendants.        )
_____)
```

VOLUME I

Videotaped deposition of MICHAEL N. HERLIHY, taken on behalf of the plaintiffs, at the Double Tree by Hilton Hotel San Diego - Hotel Circle, 1515 Hotel Circle South, conference room, San Diego, California, commencing at 10:10 a.m.; Friday, October 20, 2023, before Ruth N. Valdivia, CSR No. 11752, RPR.

A P P E A R A N C E S

FOR THE PLAINTIFFS:

    MAUNE, RAICHLE, HARTLEY, FRENCH & MUDD, LLC
    BY:  TYLER S. SUMMERS, ESQ.
    1900 Powell Street, Suite 200
    Emeryville, California 94608
    800.358.5922
    tsummers@mrhfmlaw.com


    (All counsel below appearing remotely)

FOR THE DEFENDANT AUTO PARTS WAREHOUSE, INC.:

    FISHER BROYLES, LLP
    BY:  DAVID MESA, ESQ.
    530 Lytton Avenue, Second Floor
    Palo Alto, California 94301
    415.915.4415
    david.mesa@fisherbroyles.com


FOR THE DEFENDANT CALAVERAS ASBESTOS, LTD.:

    FOLEY MANSFIELD, LLP
    BY:  TIM PIEPER, ESQ.
    181 West Huntington Drive, Suite 210
    Monrovia, California 91016
    213-283-2100
    tpieper@foleymansfield.com


FOR THE HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED
SIGNAL, INC., individually and as
successor-in-interest to the BENDIX CORPORATION,
BENDIX AVIATION CORP., and THE SIGNAL COMPANIES,
INC., f/k/a SIGNAL OIL & GAS COMPANY:

    HUSCH BLACKWELL, LLP
    BY:  JON KASIMOV, ESQ.
    355 South Grand Avenue, Suite 2850
    Los Angeles, California 90071
    213.337.6550
    jon.kasimov@huschblackwell.com

                (continued)

A P P E A R A N C E S

(continued)

FOR THE DEFENDANTS PARKER HANNIFIN CORPORATION as successor-in-interest to EIS BRAKES - and - STANDARD MOTOR PRODUCTS, INC.:

    SEMPER LAW GROUP, LLP
    BY:  SUKO GOTOH, ESQ.
    330 North Brand Boulevard, Suite 670
    Glendale, California 91203
    213.437.9700
    sgotoh@semperlawgroup.com


FOR THE DEFENDANT PNEUMO ABEX LLC, individually and as successor-by-merger to PNEUMO ABEX CORPORATION, successor-in-interest to ABEX CORPORATION f/k/a AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, successor-by-merger to the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE AMERICAN BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS CORPORATION:

    DEHAY & ELLISTON, LLP
    BY:  ZACHARY H. LODMER, ESQ.
    515 South Flower Street, Suite 180
    Los Angeles, California 90071
    213.271.2727
    zlodmer@dehay.com


FOR THE DEFENDANT WORLDWIDE AUTO PARTS, individually and as successor-in-interest to UNITED SYATT AMERICA CORPORATION as Successor and dba BROADWAY AUTO PARTS:

    POND NORTH LLP
    BY:  SEANA AZAD, ESQ.
    505 Montgomery Street, 11th Floor
    San Francisco, California 94111
    415-217-1240
    sazad@pondnorth.com

(continued)

I N D E X

(continued)

THE VIDEOGRAPHER:

    GREG BUHLERT
    Dean Jones Legal Video, Inc.
    Los Angeles and Santa Ana, California

I N D E X

                                                    PAGE

EXAMINATION BY MR. SUMMERS                            9


                    EXHIBITS

                    (None)



QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

                    (None)



                INFORMATION REQUESTED

                    (None)

Q.   From 1984 until about when?          10:37

A.   Ten years.          10:37

Q.   Okay.          10:37

A.   About nine years, something like that.  I really can't remember.          10:37

Q.   But about ten years?          10:37

A.   Yeah.          10:37

Q.   And can you tell -- describe for me or name for me any, let's say, major clients or customers that Precision Saw had?          10:37

A.   Sure.  I had the City of Riverside account, the County of Riverside account, all the school districts in Riverside, a lot of -- four or five major framing companies, glass doors, a lot of restaurants came in.  I had the Sheplers knives done.          10:38

Certainteed, I think that was -- some -- they cut some far -- they cut some type of piping and big piping and other -- welding shop.  They had cold saws and stuff like that.          10:38

Q.   So, sir, just to be clear, I think you mentioned --          10:38

MR. PIEPER:  Move to strike nonresponsive portions.          10:38

MR. SUMMERS:  I'm sorry?          10:38

Abrams, Mah & Kahn          23

cardboard or something so they don't get too damaged   10:59
and go to my shop.  And I'd take them out, came to   10:59
this tank I used to clean them.  First, I would kind   10:59
of dust the dust off.  As I dust them off -- about   10:59
12 inches from me, and then I would put them in the   11:00
tank.  And then I'd do the second one or third one   11:00
or whatever.  And I'm sitting there for, you know,   11:00
depending what time I'd meet them, overnight or   11:00
three, four hours.   11:00

Q.   Okay.  So I believe you predicted some of   11:00
my questioning.  But I just want to make sure that   11:00
I -- that I -- I get another answer.  Well, not   11:00
another answer.  I'm sorry.  I just want to make   11:00
sure that I don't get an objection based on the   11:00
length of your answer.  Okay?   11:00

A.   Okay.   11:00

Q.   Can you describe, once you got the blades   11:00
back to the shop -- and I believe you did, but if   11:00
you could state it so, the process of cleaning the   11:00
blades once you got back to the shop.   11:00

A.   Yeah.  I'd get down and brush them off   11:00
with the -- I don't know -- handheld nylon brush and   11:01
get all the dust off.  And that was a little dusty,   11:01
cloudy, light dust or whatever.  You know, takes a   11:01
few -- a minute or two on both sides.   11:01

Q.   Okay.

A.   But, you know, probably about the time I worked for Pechanga.

Q.   Okay.

A.   I heard it somewhere.  I don't know where. I can't remember exactly where I heard it, but...

Q.   That's okay, sir.

Sir, in general, if you purchase a product and there's a label that has a warning on it, do you follow that warning?

A.   The best that I can, yes.

Q.   Sir, when did you first learn that there was or might be asbestos in the dust on the blades that you cleaned for Certainteed?

MR. PIEPER:  Objection.  Vague.  Ambiguous. Overbroad.  Calls for speculation.  Lacks foundation.  Assumes facts.

BY MR. SUMMERS:

Q.   Go ahead.

A.   I really never heard of it.  Nobody told me about it.

Q.   If Certainteed had warned you that the dust on the saw blades you were cleaning and sharpening did or might contain asbestos, would you have worked with those blades?

A.   I would say yes, but I would take extra or special care to be around it.

Q.   And has Certainteed ever reached out to you or otherwise communicated with you to let you know that the products that you worked with or the equipment that you worked with may have been contaminated with asbestos?

A.   No.

Q.   Sir, if you saw a warning on -- either on brake parts or their packaging that said that the use of those brakes could cause cancer, would you have used those brakes?

A.   Unless I had another alternative to use a better brake system, yes.

Q.   Sir, do you ever recall seeing a warning on a package of Bendix brakes?

A.   No, I can't recall that.

Q.   Do you ever recall seeing a warning on a package of Napa Rayloc brakes?

A.   No.

Q.   Sir, you testified previously to working at Precision Saw cleaning saw blades with dust on them and that those saw blades came from Certainteed.

After you worked with those saw blades,

# Exhibit 12

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - COURT OF UNLIMITED JURISDICTION

_____
                                      )
Coordinated Proceedings               )     JCCP 4674
Special Title (Rule                   )
3.550)                                )
                                      )
LAOSD ASBESTOS CASES,                 )
_____       )
                                      )     Case No.: 23STCV18584
MICHAEL N. HERLIHY and                )
ANN HERLIHY,                          )
                                      )
          Plaintiffs,                 )
                                      )
     vs.                              )
                                      )
AUTO PARTS WAREHOUSE,                 )
INC., et al.,                         )
                                      )
                                      )
          Defendants.                 )
_____

DEPOSITION OF MICHAEL N. HERLIHY

VOLUME III

SAN DIEGO, CALIFORNIA

NOVEMBER 3, 2023


REPORTED BY KAYLEE LACHMANN, RPR, CRR, CSR NO. 14348

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - COURT OF UNLIMITED JURISDICTION

_____          )
Coordinated Proceedings          )          JCCP 4674
Special Title (Rule          )
3.550)          )
          )
LAOSD ASBESTOS CASES,          )
_____          )
          )          Case No.: 23STCV18584
MICHAEL N. HERLIHY and          )
ANN HERLIHY,          )
          )
          Plaintiffs,          )
          )
     vs.          )
          )
AUTO PARTS WAREHOUSE,          )
INC., et al.,          )
          )
          )
          Defendants.          )
_____

     VIDEO RECORDED DEPOSITION OF MICHAEL N. HERLIHY,

VOLUME III, commencing at the hour of 10:05 a.m.,

Friday, November 3, 2023, at 1515 Hotel Circle South,

San Diego, California 92108, before Kaylee Lachmann,

Certified Shorthand Reporter, Registered Professional

Reporter, and Certified Realtime Reporter in and for

the State of California.

APPEARANCES

FOR THE PLAINTIFFS:

      MAUNE RAICHLE HARTLEY FRENCH & MUDD
      BY:  TYLER SUMMERS, ESQ.
      1900 POWELL STREET, SUITE 200
      EMERYVILLE, CA 94608
      (800) 358-5922
      TSUMMERS@MRHFMLAW.COM


FOR THE DEFENDANT, AUTO PARTS WAREHOUSE, INC.:

      FISHERBROYLES, LLP
      BY: DAVID MESA, ESQ.
      530 LYTTON AVENUE, SECOND FLOOR
      PALO ALTO, CA 94301
      (415) 915-4415
      DAVID.MESA@FISHERBROYLES.COM
      (PRESENT REMOTELY)


FOR THE DEFENDANT, HONEYWELL INTERNATIONAL, INC.:

      HUSCH BLACKWELL LLP
      BY: JON KASIMOV, ESQ.
      355 SOUTH GRAND AVENUE, SUITE 2850
      LOS ANGELES, CA 90071
      (213) 337-6548
      JON.KASIMOV@HUSCHBLACKWELL.COM
      (PRESENT REMOTELY)


FOR THE DEFENDANT, CALAVERAS ASBESTOS, LTD.:

      FOLEY & MANSFIELD, PLLP
      BY: NA HYUN SEO, ESQUIRE
      181 WEST HUNTINGTON DRIVE, SUITE 210
      MONROVIA, CA 91016
      (213) 283-2100
      NSEO@FOLEYMANSFIELD.COM
      (PRESENT REMOTELY)

APPEARANCES CONTINUED

FOR THE DEFENDANT, PNUEMO ABEX LLC:

        DEHAY & ELLISTON L.L.P.
        BY: STEPHANIE L. BOWLBY, ESQ.
            ZACHARY H. LODMER, ESQ.
        515 SOUTH FLOWER STREET, SUITE 1800
        LOS ANGELES, CA 90071
        (213) 271-2722
        SBOWLBY@DEHAY.COM
        ZLODMER@DEHAY.COM
        (PRESENT REMOTELY)


FOR THE DEFENDANTS, STANDARD MOTOR PRODUCTS, INC. AND
PARKER-HANNIFIN CORPORATION, SUCCESSOR-IN-INTEREST TO
THE EIS AUTOMOTIVE CORPORATION:

        SEMPER LAW GROUP, LLP
        BY: LENOR RAMIREZ, ESQ.
        330 NORTH BRAND BOULEVARD, SUITE 670
        GLENDALE, CA 91203
        (213) 437-9700
        LRAMIREZ@SEMPERLAWGROUP.COM
        (PRESENT REMOTELY)


FOR THE DEFENDANT, WORLDWIDE AUTO PARTS:

        POND NORTH LLP
        BY: SEANA AZAD, ESQ.
        505 MONTGOMERY STREET, 11TH FLOOR
        SAN FRANCISCO, CA 94111
        (415) 217-1244
        SAZAD@PONDNORTH.COM
        (PRESENT REMOTELY)


ALSO PRESENT:

        DAVID KIM, VIDEOGRAPHER

I N D E X

WITNESS: MICHAEL N. HERLIHY

EXAMINATION                                              PAGE

BY MR. MESA                                               266

BY MS. RAMIREZ                                           270

BY MR. AZAD                                               273

BY MR. KASIMOV                                           275

BY MS. SEO                                               281

BY MR. KASIMOV                                           329

BY MR. SUMMERS                                           350

E X H I B I T S

(NONE)

Q.   Do you recall the name of the person who called and came in?

A.   No.

Q.   Then who was your primary contact at CertainTeed?                                                                    11:37

MR. SUMMERS:  Objection.  Vague.

A.   I really didn't have one to speak of.

Q.   Do you recall speaking to anybody in CertainTeed.

MR. SUMMERS:  Objection.  Vague and                                    11:37
ambiguous.  Asked and answered.

A.   If I drop -- when I dropped off I would talk to a couple people, the workers or the employees.

Q.   When you were talking about maybe just business transactions, did you speak to somebody in              11:37
CertainTeed?

MR. SUMMERS:  Objection.  Vague.  Overbroad.

A.   I would give them the price, but I wouldn't know who.  They would say they were the manager or something.  I don't know.                                              11:38

Q.   So the person that you spoke with in CertainTeed, they told you that they were the manager?

A.   Yeah, I guess so, or the shop foreman.  I don't have a name to give you.

Q.   Do you have any documents related to your                        11:38

# Exhibit 13

# CONSOLIDATED FINANCIAL STATEMENTS DECEMBER 31, 2023



SAINT-GOBAIN

**Anxiety claims**

Eight of the Group's subsidiaries that operate or have operated facilities in France classified as containing asbestos, were the subject of anxiety claims brought by current or former employees not suffering from an occupational disease due to asbestos – claiming compensation for prejudice of anxiety suffered as a result of their alleged exposure to asbestos.

As of December 31, 2023, a total of 861 lawsuits had been brought against these companies.

At the same date, the lawsuits have been all definitely completed.

The total amount of compensation paid since the outset of the litigations was €8.8 million as of December 31, 2023 (against approximately €8.5 million as of December 31, 2022).

It should be clarified that the above figures do not take into account suits filed against companies that are no longer part of the Group.

Last, the total amount registered as provision for asbestos-related litigations in France – inexcusable faults lawsuits and anxiety claims – amounted to around €7 million as of December 31, 2023 (compared to around €8 million as of December 31, 2022).

### Situation in the United States

**Measures taken to achieve an equitable and permanent resolution of the former CertainTeed Corporation's legacy asbestos liabilities in the United States**

DBMP LLC, an affiliate of CertainTeed LLC based in North Carolina, that holds the legacy asbestos liabilities of the former CertainTeed Corporation, filed, on January 23, 2020, a voluntary petition for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of North Carolina in Charlotte. The matter remains pending. The purpose of the filing is to achieve a certain, final and equitable resolution of all current and future claims arising from asbestos-containing products manufactured and sold by the former CertainTeed Corporation.

DBMP LLC intends to seek court authority to establish a trust under Section 524(g) of the US Bankruptcy Code – a specific provision that is applicable to companies that face substantial numbers of asbestos-related claims – to achieve a fair and equitable resolution of its asbestos-related liabilities. Upon establishment of the trust, current and future plaintiffs with qualifying claims will be able to receive faster payment of their claims without the delay, stress and uncertainty of litigation in the tort system; at the same time, the creation and funding of such a trust will permanently and finally resolve DBMP LLC's asbestos liability.

During the course of this bankruptcy process, which is expected to take up to approximately five to eight years, all asbestos litigations have been stayed and all related costs suspended, providing DBMP LLC with the time and protection to negotiate an agreement to be approved on behalf of all claimants and by the court.

This action was taken as a result of the increasing risks presented in the US tort system. Despite the passage of time, the aging of the population and lessening opportunity for claimants to assert legitimate claims of exposure to the asbestos-containing products of the former CertainTeed Corporation, naming practices in the tort system continued to result in a steady volume of claims against DBMP LLC, with no foreseeable end in sight. In addition, there has been, in general, an escalation of settlement demands and verdicts in the tort system.

Certain adversary proceedings have been filed by representatives of current and future asbestos plaintiffs against DBMP LLC, CertainTeed LLC, Saint-Gobain Corporation, Compagnie de Saint-Gobain and various other parties. No decisions on the merits of the claims have been made and such claims do not affect the Company's financial assessment of the Chapter 11 case.

**Impact on the financial statements**

Following the commencement of the proceeding under Chapter 11 of the US Bankruptcy Code on January 23, 2020, the assets and liabilities of DBMP LLC and its wholly-owned subsidiary Millwork & Panel LLC, and in particular the provision for asbestos-related litigation in the United States, are no longer consolidated in the Group's financial statements.

Nonetheless, because of a funding agreement between CertainTeed LLC and DBMP LLC by which CertainTeed LLC has agreed to fund the costs of the Chapter 11 case and, ultimately, the 524(g) trust, in both cases solely to the extent DBMP LLC is unable to do so in full, the Group recorded in its consolidated financial statements a provision corresponding to the amount of the estimated debt against DBMP LLC amounting to $407 million as of December 31, 2023 ($410 million as of December 31, 2022).

The Group's consolidated income for 2023 is not impacted by the ongoing Chapter 11 proceeding described above.

As a result of this bankruptcy proceeding, all legal costs and indemnity payments related to DBMP LLC's asbestos tort claims have been suspended, and no further charges in relation to such claims have been taken in 2023 (as in 2022).

### Situation in Brazil

In Brazil, former employees of Brasilit, that once manufactured fiber cement containing asbestos, suffering from asbestos-related occupational illnesses are offered, depending on the case, either financial compensation alone or lifetime medical assistance combined with financial compensation. Around 1,200 contractual instruments have accordingly been signed to date.

Two class actions were initiated against Brasilit in 2017 by two associations defending former employees exposed to asbestos at the São Caetano (São Paulo state) and Recife (Pernambuco state) plants, asking for their medical assistance and compensation to be revised. First and second instance decisions were rendered in connection with the suit related to the São Caetano plant respectively in July 2020 and July 2021, rejecting the claims of the plaintiffs. The latter have nevertheless appealed the second instance decision. First and second instance decisions were rendered in relation to Recife case, respectively in February and October 2022 rejecting the claiming party arguments. The plaintiff has appealed such second instance decision.

A third class action was initiated against Brasilit in 2019 in Capivari (State of São Paulo) by the Labor prosecutor asking for health insurance, as well as collective moral damages, in favor of employees, former employees and their respective families, as well as subcontractors who were exposed to asbestos. First and second instance decisions were rendered respectively in September 2020 and May 2023 partly in favor of the plaintiffs. In particular, collective moral damages were granted to the plaintiffs, for an amount reduced to BRL 5 million (€0.8 million). Brasilit has appealed the second instance decision.

Brasilit is subject to controls by the Ministry of Labor and continues to comply with all of its legal obligations with regard to medical assistance for its current and former employees.

## NOTE 11    SHAREHOLDERS' EQUITY AND EARNINGS PER SHARE

### 11.1  Equity

#### 11.1.1  Equity

At December 31, 2023, Saint-Gobain's capital stock was composed of 506,438,012 shares with a par value of €4 each (515,769,082 shares at December 31, 2022).

#### 11.1.2  Additional paid-in capital and legal reserve

This item includes capital contributions in excess of the par value of capital stock as well as the legal reserve, which corresponds to a cumulative portion of the yearly net income of Compagnie de Saint-Gobain.

#### 11.1.3  Retained earnings and consolidated net income

Retained earnings and consolidated net income correspond to the Group's share in the undistributed earnings of all consolidated companies.

#### 11.1.4  Treasury stock

Treasury stock is measured at cost and recorded as a deduction from equity. Gains and losses on disposals of treasury stock are recognized directly in equity and have no impact on net income for the period.

Forward purchases of treasury stock are treated in the same way. When a fixed number of shares is purchased forward at a fixed price, this amount is recorded in "Other liabilities" against a deduction from equity under "Retained earnings and net income for the year".

Saint-Gobain shares held or controlled by Compagnie de Saint-Gobain and Saint-Gobain Corporation are shown as a deduction from equity under "Treasury stock" at acquisition cost.

The liquidity agreement signed with Exane BNP Paribas on November 16, 2007 and implemented on December 3, 2007 for a period up to December 31, 2007 has been automatically renewed since that date.

At December 31, 2023, 4,376,475 shares were held in treasury (December 31, 2022: 4,406,990 shares). In 2023, the Group acquired 17,111,277 shares (2022: 18,011,705 shares) directly on the market The number of shares sold in 2023 was 2,935,434 versus 3,174,316 in 2022. 14,206,358 shares were canceled in 2023, compared with 13,177,086 shares in 2022.

For the purposes of a compensation plan set up in January 2008 for certain employees in the United States, Compagnie de Saint-Gobain shares are held by the trustee, Wachovia Bank, National Association. In the consolidated financial statements, these shares are treated as being controlled by Saint-Gobain Corporation.

#### 11.1.5  Number of shares

| | Number of shares | |
| --- | --- | --- |
| | Issued | Outstanding |
| **NUMBER OF SHARES AT DECEMBER 31, 2021** | **524,017,595** | **521,270,908** |
| Group Savings Plan | 4,916,097 | 4,916,097 |
| Stock subscription option plans | 12,476 | 12,476 |
| Shares purchased | | (18,011,705) |
| Shares sold | | 3,174,316 |
| Shares canceled | (13,177,086) | |
| **NUMBER OF SHARES AT DECEMBER 31, 2022** | **515,769,082** | **511,362,092** |
| Group Savings Plan | 4,778,291 | 4,778,291 |
| Stock subscription option plans | 96,997 | 96,997 |
| Shares purchased | | (17,111,277) |
| Shares sold | | 2,935,434 |
| Shares canceled | (14,206,358) | |
| **NUMBER OF SHARES AT DECEMBER 31, 2023** | **506,438,012** | **502,061,537** |

#### 11.1.6  Dividends

The Annual Shareholders' Meeting of June 8, 2023 approved the recommended dividend payout for 2022 representing €2 per share (€1.63 per share for 2021). The ex-dividend date was June 12 and the dividend was paid on June 14, 2023.