# Exhibit 1

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                          :     Case No. 20-30608 (JCW)
                                      (Jointly Administered)
ALDRICH PUMP LLC, ET AL.,       :
                                      Chapter 11
     Debtors,                   :
                                      Charlotte, North Carolina
                                :     Thursday, March 30, 2023
                                      9:30 a.m.
                                :

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

OFFICIAL COMMITTEE OF           :     AP 22-03028 (JCW)
ASBESTOS PERSONAL INJURY
CLAIMANTS, on behalf of the     :
estates of Aldrich Pump LLC
and Murray Boiler LLC,          :

     Plaintiff,                 :

          v.                    :

INGERSOLL-RAND GLOBAL           :
HOLDING COMPANY LIMITED,
et al.,                         :

     Defendants,                :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

OFFICIAL COMMITTEE OF           :     AP 22-03029 (JCW)
ASBESTOS PERSONAL INJURY
CLAIMANTS, on behalf of the     :
estates of Aldrich Pump LLC
and Murray Boiler LLC,          :

     Plaintiff,                 :

          v.                    :

TRANE TECHNOLOGIES PLC,         :
et al.,

                                :
     Defendants,                :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

2

ARMSTRONG WORLD INDUSTRIES,    :    Miscellaneous Pleading
INC. ASBESTOS PERSONAL INJURY        No. 22-00303 (JCW)
SETTLEMENT TRUST, et al.,       :    (Transferred from District
                                     of Delaware)
        Plaintiffs,             :

               v.               :

ALDRICH PUMP LLC, et al.,       :

        Defendants,             :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

AC&S ASBESTOS SETTLEMENT :      :    Miscellaneous Pleading
TRUST, et al.,                       No. 23-00300 (JCW)
                                :    (Transferred from District
        Petitioners,                 New Jersey)
                                :
               v.               :

ALDRICH PUMP LLC, et al.,       :

        Respondents,            :

VERUS CLAIM SERVICES, LLC,      :

        Interested Party,       :

NON-PARTY CERTAIN MATCHING
CLAIMANTS,                      :

        Interested Party.       :
: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE J. CRAIG WHITLEY,
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors/Defendants,      Rayburn Cooper & Durham, P.A.
Aldrich Pump LLC and Murray  BY:  JOHN R. MILLER, JR., ESQ.
Boiler LLC:                       MATTHEW TOMSIC, ESQ.
                                  C. RICHARD RAYBURN, JR., ESQ.
                             227 West Trade St., Suite 1200
                             Charlotte, NC  28202

3

APPEARANCES (continued):

For Debtors/Defendants,        Jones Day
Aldrich Pump LLC and Murray    BY:  BRAD B. ERENS, ESQ.
Boiler LLC:                         MORGAN R. HIRST, ESQ.
                               110 North Wacker Dr., Suite 4800
                               Chicago, IL  60606

                               Jones Day
                               BY:  DAVID S. TORBERG, ESQ.
                               51 Louisiana Avenue, N.W.
                               Washington, D.C.  20001

                               Evert Weathersby Houff
                               BY:  C. MICHAEL EVERT, JR., ESQ.
                               3455 Peachtree Road NE, Ste. 1550
                               Atlanta, GA  30326

                               Evert Weathersby Houff
                               BY:  CLARE M. MAISANO, ESQ.
                               111 South Calvert St., Suite 1910
                               Baltimore, MD  21202

                               ROBERT H. SANDS, ESQ.
                               ALLAN TANANBAUM, ESQ.

Audio Operator:                COURT PERSONNEL

Transcript prepared by:        JANICE RUSSELL TRANSCRIPTS
                               1418 Red Fox Circle
                               Severance, CO  80550
                               (757) 422-9089
                               trussell31@tdsmail.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

4

APPEARANCES (continued):

For the ACC:                        Caplin & Drysdale
                                    BY:  SERAFINA CONCANNON, ESQ.
                                    One Thomas Circle, NW, Suite 1100
                                    Washington, DC  20005

                                    Robinson & Cole LLP
                                    BY:  NATALIE RAMSEY, ESQ.
                                         DAVIS LEE WRIGHT, ESQ.
                                    1201 N. Market Street, Suite 1406
                                    Wilmington, DE  19801

                                    Robinson & Cole LLP
                                    BY:  ANDREW A. DePEAU, ESQ.
                                    280 Trumbull Street
                                    Hartford, CT  06103

                                    Winston & Strawn LLP
                                    BY:  DAVID NEIER, ESQ.
                                         CRISTINA I. CALVAR, ESQ.
                                    200 Park Avenue
                                    New York, NY  10166-4193

                                    Hamilton Stephens
                                    BY:  ROBERT A. COX, JR., ESQ.
                                    525 North Tryon St., Suite 1400
                                    Charlotte, NC  28202

For the FCR:                        Orrick Herrington
                                    BY:  JONATHAN P. GUY, ESQ.
                                         DANNY BAREFOOT, ESQ.
                                    1152 15th Street, NW
                                    Washington, D.C.  20005-1706

For Certain Insurers:               Duane Morris LLP
                                    BY:  RUSSELL W. ROTEN, ESQ.
                                    865 S. Figueroa St., Suite 3100
                                    Los Angeles, CA  90017-5440

For Individual Fiduciary            Brooks Pierce
Duty Defendants:                    BY:  JIM W. PHILLIPS, JR., ESQ.
                                         JEFFREY E. OLEYNIK, ESQ.
                                    P. O. Box 26000
                                    Greensboro, NC  27420

APPEARANCES (continued):

For Trane Technologies
Company LLC and Trane
U.S. Inc.:

McCarter & English, LLP
BY:  GREGORY J. MASCITTI, ESQ.
825 Eighth Avenue, 31st Floor
New York, NY  10019

McGuireWoods, LLP
BY:  BRADLEY R. KUTROW, ESQ.
201 North Tryon St., Suite 3000
Charlotte, NC  28202

Cordes Law, PLLC
BY:  STACY C. CORDES, ESQ.
1800 East Boulevard
Charlotte, NC  28203

For Asbestos Trusts:

Ward and Smith, P.A.
BY:  LANCE P. MARTIN, ESQ.
P. O. Box 2020
Asheville, NC  28802-2020

Ballard Spahr LLP
BY:  BETH MOSKOW-SCHNOLL, ESQ.
919 North Market St., 11th Floor
Wilmington, DE  19801-3034

For the Verus Trusts:

Moon Wright & Houston, PLLC
BY:  ANDREW T. HOUSTON, ESQ.
212 N. McDowell Street, Suite 200
Charlotte, NC  28204

Lowenstein Sandler LLP
BY:  LYNDA A. BENNETT, ESQ.
One Lowenstein Drive
Roseland, NJ  07068

For Verus Claims Services,
LLC:

Bradley Arant Boult Cummings LLP
BY:  ANNA-BRYCE HOBSON, ESQ.
214 North Tyron St., Suite 3700
Charlotte, NC  28202

Anselmi & Carvelli LLP
BY:  ZACHARY D. WELLBROCK, ESQ.
West Tower, Fifth Floor
56 Headquarters Plaza
Morristown, NJ  07960

6

APPEARANCES (continued):

For Robert and Marcella          Maune Raichle
Semian:                          BY:  CLAYTON L. THOMPSON, ESQ.
                                 150 West 30th Street, Suite 201
                                 New York, NY  10001

                                 Waldrep Wall
                                 BY:  JAMES C. LANIK, ESQ.
                                 370 Knollwood Street, Suite 600
                                 Winston-Salem, NC  27103

For Non-Party Certain            Hogan McDaniel
Matching Claimants:              BY:  DANIEL K. HOGAN, ESQ.
                                 1311 Delaware Avenue
                                 Wilmington, DE  19806

                                 Waldrep Wall
                                 BY:  DIANA SANTOS JOHNSON, ESQ.
                                 370 Knollwood Street, Suite 600
                                 Winston-Salem, NC  27103

For DCPF:                        Alexander Ricks PLLC
                                 BY:  FELTON PARRISH, ESQ.
                                 1420 E. 7th Street, Suite 100
                                 Charlotte, NC  28204

                                 Young Conaway
                                 BY:  KEVIN A. GUERKE, ESQ.
                                 1000 North King Street
                                 Wilmington, Delaware  19801

ALSO PRESENT:                    JOSEPH GRIER, FCR
                                 Grier, Wright & Martinez, PA
                                 521 E. Morehead St, Suite 440
                                 Charlotte, NC  28202

APPEARANCES (via telephone):

For Non-Party Certain            Stark & Stark, PC
Matching Claimants:              BY:  JOSEPH H. LEMKIN, ESQ.
                                 P. O. Box 5315
                                 Lawrenceville, NJ  08648

7

APPEARANCES (via telephone continued):

For Travelers Insurance          Steptoe & Johnson LLP
Companies, et al.:               BY:  JOSHUA R. TAYLOR, ESQ.
                                 1330 Connecticut Avenue, N.W.
                                 Washington, D.C.  20036

For Verus Claims Services,       Anselmi & Carvelli LLP
LLC:                             BY:  ANDREW ANSELMI, ESQ.
                                 West Tower, Fifth Floor
                                 56 Headquarters Plaza
                                 Morristown, NJ  07960

THE COURT:  All right.

That got it?

It will not, probably, surprise anyone that I feel compelled to deny the motion basically for the reasons stated by the debtor and, and the FCR, if not going back to the preliminary injunction and the reasons I stated then.  I have no doubt, I don't think anyone could have any reasonable doubt that if I grant relief from stay to one creditor to liquidate the claim, all of the claimants will -- not all -- but a substantial number of the claimants, enough to wreck the bankruptcy case, will seek like measure and that effectively precipitates a *de facto* dismissal of the case.  It will be unable to go forward and even more so than at the time of the preliminary injunction, now we've got some of these claims that are estate claims under the first-crack doctrine that would be asserted by individual claimants elsewhere as against New Trane and the new entities, the "good" companies, if you will, and it's even stronger in this case because now I have the ACC bringing those causes of action.  And so we would be undermining our own lawsuits if we did that.

I don't think anything's really changed.  I'm appreciative of the fact that, that the underlying claim here may be somewhat different than the norm, but the circumstance of the case and the relationship of the claimants to the reorganization has not changed in any material way.

# Exhibit 2

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                              :        Case No. 17-31795-LTB

BESTWALL LLC,                       :        Chapter 11

   Debtor.                          :        Charlotte, North Carolina
                                             Thursday, October 19, 2023
                                    :        9:35 a.m.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LAURA TURNER BEYER,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                     Robinson, Bradshaw & Hinson, P.A.
                                    BY:  RICHARD C. WORF, ESQ.
                                         GARLAND CASSADA, ESQ.
                                    101 N. Tryon Street, Suite 1900
                                    Charlotte, NC  28246

                                    Jones Day
                                    BY:  GREGORY M. GORDON, ESQ.
                                    2727 North Harwood St., Suite 500
                                    Dallas, TX  75201-1515

Audio Operator:                     COURT PERSONNEL

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**JANICE RUSSELL TRANSCRIPTS**
**1418 Red Fox Circle**
**Severance, CO  80550**
**(757) 422-9089**
**trussell31@tdsmail.com**

Case 21-30085 Doc 2742-2 Filed 11/28/23 Entered 11/28/23 07:46:40 Desc Main
Exhibit Transcript of Document 19-23 Page 11 of 104    Page 3 of 76

2

APPEARANCES (continued):

For the Debtor:                    Jones Day
                                   BY:  JEFFREY B. ELLMAN, ESQ.
                                   1221 Peachtree Street, N.E., #400
                                   Atlanta, GA  30361

                                   Schachter Harris, LLP
                                   BY:  ERIN A. THERRIAN, ESQ.
                                   909 Lake Carolyn Pkwy., #1775
                                   Irving, TX  75039

For Richard and Joann Dale:        Maune Raichle
                                   BY:  CLAY THOMPSON, ESQ.
                                   150 W. 30th Street, Suite 201
                                   New York, NY  10001

For Richard and Joann Dale,        Waldrep Wall
Wilson Buckingham and              BY:  THOMAS W. WALDREP, JR., ESQ.
Angelika Weiss:                    370 Knollwood Street, Suite 600
                                   Winston-Salem, NC  27103

For Future Claimants'              Young Conaway
Representative, Sander L.          BY:  SHARON ZIEG, ESQ.
Esserman:                               EDWIN J. HARRON, ESQ.
                                   1000 North King Street
                                   Wilmington, DE  19801

                                   Alexander Ricks PLLC
                                   BY:  FELTON E. PARRISH, ESQ.
                                   1420 E. 7th Street, Suite 100
                                   Charlotte, NC  28204

For Official Committee of          Robinson & Cole LLP
Asbestos Claimants:                BY:  NATALIE RAMSEY, ESQ.
                                        KATHERINE S. DUTE, ESQ.
                                   1201 N. Market Street, Suite 1406
                                   Wilmington, DE  19801

                                   JD Thompson Law
                                   BY:  LINDA W. SIMPSON, ESQ.
                                   Post Office Box 33127
                                   Charlotte, NC  28233

Case 20-30805 Doc 2742-2 Filed 04/18/23 Entered 04/18/23 07:46:40 Desc Main
Exhibit Transcript of Hearing Document 19-23 Page 13 of 104    Page 4 of 76

3

APPEARANCES (continued):

For Georgia-Pacific LLC:        Rayburn Cooper & Durham, P.A.
                                BY:  JOHN R. MILLER, JR., ESQ.
                                227 West Trade Street, Suite 1200
                                Charlotte, NC  28202

                                Debevoise & Plimpton
                                BY:  MARK P. GOODMAN, ESQ.
                                     NATASHA LABOVITZ, ESQ.
                                66 Hudson Boulevard
                                New York, NY 10001


APPEARANCES (via telephone):    SANDER L. ESSERMAN
                                Future Claimants' Representative
                                2323 Bryan Street, Suite 2200
                                Dallas, TX  75201-2689

I'll let you all get your seats.  Sorry.

MR. HARRON:  Pardon us, your Honor.  Sorry.

THE COURT:  That's okay.  I guess you never know when we're gonna come back in, huh?

Having considered the motion for relief from stay and the arguments of the parties and the responses and replies thereto, let me start by saying, Mr. Thompson.  Of course, I'm sympathetic to Mr. Dale and his situation and I understand why he would request to liquidate his claim, but I can't find that there is cause to grant his motion for relief from stay.

You know, strictly speaking and considering the Robbins factors, which are the applicable factors in this Circuit, and considering Mr. Dale's case in isolation the Court could, I suppose, conclude it's appropriate to grant the motion for relief from stay.  As bankruptcy courts, we often do that so that a state court can liquidate claims that are based on state court causes of action, as you all cited the Joyner case, which is a Judge Stocks case from the Middle District of North Carolina, but which is a very different case from, from this case.  I think that case involved two plaintiffs who were seeking relief from stay to continue with a civil action in state court that involved less than a handful of defendants, one of whom was the debtor.  But that case stands in stark contrast to this case, which is a mass tort asbestos case with an excess of 60,000 claimants and the Court is obliged to

Case 20-30805 Doc 2742-2 Filed 11/28/23 Entered 11/28/23 07:46:40 Desc Main
Exhibit Transcript Document 19-23 Page 15 of 104   Page 71 of 76

70

consider the motion in that context and while it may be specula

to, speculative to assume that granting the Dales' motion for

relief from stay would result in a wave of similar motions, I

believe that that's a fair and reasonable assumption, as

apparently did Judge Whitley when he denied a similar motion in

the Aldrich case, and if I grant this motion I think I would be

hard pressed to deny future motions for relief from stay in

this case and that's especially true since the Dales have not

pled any unique facts or circumstances that would justify

lifting the stay as to them or otherwise distinguish their case

from the thousands of cases that are pending in state court.

In addition, I conclude I should deny the motion

because when considering the motion and the overall context of

this case, I think I should deny the motion for the same

reasons I determined I should grant the motion for a

preliminary injunction, which decision the Fourth Circuit

recently affirmed.  And I agree with the, the debtor's

statement that the Fourth Circuit's opinion confirms the

importance of centralizing all of the pending claims in the

bankruptcy court and while the Fourth Circuit did say that

rather than waiting for plan confirmation, and I quote,

"Claimants can bring individual actions for relief based on the

specific facts of a particular claim," the Dales have not pled

any facts specific or unique to them to cause this Court to

find that there's cause to grant their motion for relief from

# Exhibit 3

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:                          :      Case No. 17-31795-LTB

BESTWALL LLC,                   :      Chapter 11

   Debtor.                       :      Charlotte, North Carolina
                                   Thursday, January 18, 2024
                               :      9:34 a.m.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LAURA TURNER BEYER,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                 Robinson, Bradshaw & Hinson, P.A.
                                BY:  RICHARD C. WORF, ESQ.
                                     GARLAND CASSADA, ESQ.
                                     KEVIN CRANDALL, ESQ.
                                101 N. Tryon Street, Suite 1900
                                Charlotte, NC  28246

                                Jones Day
                                BY:  GREGORY M. GORDON, ESQ.
                                2727 North Harwood St., Suite 500
                                Dallas, TX  75201-1515

Audio Operator:                 COURT PERSONNEL

Transcript prepared by:         JANICE RUSSELL TRANSCRIPTS
                                1418 Red Fox Circle
                                Severance, CO  80550
                                (757) 422-9089
                                trussell31@tdsmail.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

2

APPEARANCES (continued):

For the Debtor:                    Jones Day
                                   BY:  JEFFREY B. ELLMAN, ESQ.
                                   1221 Peachtree Street, N.E., #400
                                   Atlanta, GA  30361

For Richard and Joann Dale:        Maune Raichle
                                   BY:  CLAY THOMPSON, ESQ.
                                   150 W. 30th Street, Suite 201
                                   New York, NY  10001

For Richard and Joann Dale,        Waldrep Wall
Wilson Buckingham and              BY:  THOMAS W. WALDREP, JR., ESQ.
Angelika Weiss:                    370 Knollwood Street, Suite 600
                                   Winston-Salem, NC  27103

For Wilson Buckingham and          Ruckdeschel Law Firm, LLC
Angelika Weiss:                    BY:  JONATHAN RUCKDESCHEL, ESQ.
                                   8357 Main Street
                                   Ellicott City, MD  21043

For Future Claimants'              Young Conaway
Representative, Sander L.          BY:  SHARON ZIEG, ESQ.
Esserman:                               ERIN EDWARDS, ESQ.
                                   1000 North King Street
                                   Wilmington, DE  19801

                                   Young Conaway
                                   BY:  FELTON E. PARRISH, ESQ.
                                   Charlotte, NC  28204

For Official Committee of          Robinson & Cole LLP
Asbestos Claimants:                BY:  NATALIE RAMSEY, ESQ.
                                        DAVIS LEE WRIGHT, ESQ.
                                   1201 N. Market Street, Suite 1406
                                   Wilmington, DE  19801

                                   Robinson & Cole LLP
                                   BY:  KATHERINE M. FIX, ESQ.
                                   1650 Market Street, Suite 3600
                                   Philadelphia, PA  19103

                                   Hamilton Stephens
                                   BY:  LINDA W. SIMPSON, ESQ.
                                   525 N. Tryon St., 14th Floor
                                   Charlotte, NC  28202

3

APPEARANCES (continued):

For Georgia-Pacific LLC:        Rayburn Cooper & Durham, P.A.
                                BY:  JOHN R. MILLER, JR., ESQ.
                                227 West Trade Street, Suite 1200
                                Charlotte, NC  28202

                                Debevoise & Plimpton
                                BY:  MARK P. GOODMAN, ESQ.
                                66 Hudson Boulevard
                                New York, NY 10001


APPEARANCES (via telephone):   SANDER L. ESSERMAN
                                Future Claimants' Representative
                                2323 Bryan Street, Suite 2200
                                Dallas, TX  75201-2689

opposition to the motion for relief from stay and the arguments at today's hearing, I conclude I should deny the motion for relief from stay and in large part, I do so for the same reasons I denied the Dales' motion for relief from stay, the order for which was entered about one month ago, and for the same reasons I granted the preliminary injunction motion early on in this case, but I will add a few things to the remarks that I made when I ruled on the Dales' motion for relief from stay.

Consideration of the Robbins factors, particularly the second factor, that being whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court, I believe and find weighs against modifying the automatic stay.

As I said in the Dales' case, I can't look at modifying the stay in Mr. Buckingham's case in isolation, at least particularly not with respect to the second prong.  That issue must be considered in the context of this case being a mass tort case and because that is the reality in which we find ourselves, I still conclude that if I granted Mr. Buckingham's motion for relief from stay I would be obliged to grant the motion for relief from stay of most, if not all, claimants who sought similar relief.  That is true for Mr. Buckingham as it

79

pending motion for relief from stay in <u>Carolin</u>.  That issue was not on the table and they cited to 362 because it includes the word "cause" as does 1112(b).  And the Fourth Circuit was defining what that broad language means and of course, ultimately concluded that it supports the construction that a debtor's lack of good faith may constitute cause for dismissal of a petition.

Similarly, the Fourth Circuit points out that 362 "inferentially permits inquiry into the debtor's good faith in commencing this case as a whole," and it cites Collier's for that proposition.

In his reply, Mr. Buckingham accurately points out that, "Nowhere in <u>Carolin</u> does the Fourth Circuit indicate that its two-pronged approach to dismissal is applicable to motions for relief from stay."  I guess I would add, though, but nowhere does it say that it doesn't and to me, it defies logic to conclude that the two-prong standard doesn't apply in the context of this case and I underscore that statement if considering whether to grant relief from stay on the basis that the case was filed in bad faith.  In other words, it can't be that a less stringent standard applies to a relief from stay motion which, if granted, would result in the dismissal of the case.  To conclude otherwise would mean that I could deny the motions to dismiss the case as a bad faith filing for failure to meet the objective futility prong of the two-prong standard,

but grant relief from stay upon the finding of subjective bad faith.  If I granted such relief from stay to one claimant, I would be obliged to grant it to all claimants, again resulting in the dismissal of this case and standing in stark contrast to the proposition for which I have held Carolin stands.

And as a practical matter, you know, this issue isn't gonna come up in other cases because in chapter 11 cases the Court wouldn't grant a motion for relief from stay if the case was filed in bad faith.  The Court would dismiss the case.  And that was true in a couple of the cases that were cited by Mr. Buckingham in his Footnote 6.  There were both motions to dismiss and motions for relief from stay that were pending. The Court granted the motion to dismiss, but denied the motion for relief from stay as moot or didn't otherwise consider it.

Otherwise, with respect to the cases Mr. Buckingham cites in support of his argument that a lack of good faith constitutes cause for lifting the stay, I agree with the debtor that those cases are distinguishable.  None of them were mass tort cases with tens of thousands of claims pending against the debtor.

I would also note that several of the cases include no reference to 362 or the automatic stay and the Basin Electric Cooperative case was an involuntary petition in which the district court concluded the petition should have been dismissed based on the petitioning creditors' bad faith.  My

# Exhibit 4

# *David Tarin M.D., PhD, FRCPath*

*856 San Antonio Place*
*San Diego*
*CA 92106-3057*
E-mail: dtarin1@gmail.com
*Phone: 619-225-1106*
*Mobile; 858-361-3658*

---

*NAME: Peter BERGRUD*                    *AGE:77*

*DATE OF BIRTH:* ███████            *DATE OF DEATH: 04/21/2019*

*DATE FILE RECEIVED:10/14/2019*        *DATE REPORT ISSUED: 11/25/2019*

*REQUESTED BY:***Ms Sarah Jett***         *FOR****: MRHFM, Portland, OR***


*RECORDS REVIEWED:*

**Medical Records  (195 pages plus 68 photographs)**

*Kaiser Permanente – Medical records*
*Death Certificate*
*National Autopsy Services – Autopsy report-19-4-23 PLB*
                     *-  and photographs (68)*


**Pathology Slides (65): all stained**
*Series S19-32390: 4 slides and 3 controls for immunohistochemical(IHC) stains*
*Series19-2-06952-5: 58 slides including IHC controls*

---

SUMMARY OF CLINICAL HISTORY
The history of this illness began with a routine chest Xray (November 2018) for persistent cough. A moderate sized left pleural effusion was seen and computer tomographic (CT) was ordered, which confirmed the observation, but the cause was not evident. Cytology of fluid should only a mild inflammatory cell exudate. At follow-up CT on 01/08/2019 pleural nodules were noted in addition to the persisting effusion which was now loculated. Mild to moderate bilateral emphysema was also documented. By 02/25/2019 the continuing presence of the pleural effusion and pleural nodules with pleural calcification was causing concern for possible malignancy and he now reported pleuritic chest pain. These features prompted video-assisted thoracoscopy (VATS) with pleural biopsy on 02/26/2019. The biopsy was reported as confirming a malignant biphasic mesothelioma. Immunohistochemical (IHC) studies demonstrated that the tumor cells stained with

reagents for CK7, calretinin, CK5/6, pankeratin, GATA3 and WT-1. They did not stain with stains for TTF-1, CK20, MOC-31, BerEP4, and EMA. Post-operative positron emission tomography showed hypermetabolic left pleural nodules and hypermetabolic enlarged mediastinal lymph nodes. Surgery was considered, but treatment with chemotherapy was chosen as more suitable treatment for this patient. During the next month the patient's condition declined, he became weaker and CT in early April 2019 showed enlargement of the intrathoracic masses, with recurrence of the left pleural effusion. Soon after he became severely hypotensive and was diagnosed to be in septic shock. Chemotherapy was therefore discontinued on 04/15/2019 and treatment was redirected towards providing terminal comfort care. Mr Bergrud died on 04/21/2019.

*Social history*
Former smoker - 16 pack years. Ceased 1974*:*
The patient has an occupational history of working construction working with cutting asbestos cement pipes without respiratory protection for 4 years with frequent exposure to this in the late 70s and 80s. He was employed in the Air Force working in Missile Sites.

*Family history:*
Father died of lung cancer
Brother had a stroke

*Past Medical History*:
Old cerebrovascular accident – June 2016 – residual weakness of right leg

*Occupational History:*
Heavy equipment operator. Further details and discussion to follow.
More detail and discussion will follow in a separate report.

DEATH CERTIFICATE – *Signed* 04/25/2019
Cause of death stated to be Mesothelioma

AUTOPSY REPORT
A partial autopsy on the thoracic contents of the deceased was conducted on 04/23/2019. The report is skimpy on details but provided several (68) photographs. It is evident that the left pleural cavity was obliterated by tumor which was adherent to the inside of the chest wall and to the sternum. Multiple tumor nodules were visible in the parietal pleura. The left lung was described as extensively necrotic. Serial slicing of the left lung revealed that it was extensively replaced by tumor. The weight of the left lung was given as 1704gm and that of the right lung was 591 gms. Both were therefore markedly overweight. The right pleural cavity contained 2 liters of effusion.

**MY REPORT ON HISTOLOGY SLIDES (DR DAVID TARIN)**

*Series S19-32380 – Pleural biopsy*
*Single slide stained with hematoxylin and eosin (H&E):* This slides carries multiple small fragments of tissue ranging from 0.3 cm to 0.7 cm. The fragments are derived from tumor tissue composed of tubulo-papillary epithelioid and whorled spindle cell sarcomatous regions interdigitating with each other. The tumor cells display moderate cellular and nuclear pleomorphism and substantial embedded anthracotic pigment. Immunohistochemical (IHC) stains demonstrate the tumor cells in the biopsy to stain positively for calretinin, D2-40 and WT-1. These features establish the biopsy as being derived from a biphasic malignant pleural mesothelioma.

*Series19-2-06952-5: 58 slides including IHC controls*
Histopathological and IHC observations on the autopsy derived tissue blocks confirm extensive necrosis in the tumor in the left pleural cavity. This is mainly due to post mortem autolysis and deterioration, but enough morphological detail remains to confirm the biopsy diagnosis of mesothelioma and demonstrate it to be invading lung parenchyma and adipose tissue of the chest wall. The IHC stains show that the remaining identifiable tumor cells are positive for CK8/18, pancytokeratin, calretinin, WT-1 (weak nuclear and cytoplasmic staining). Iron stains revealed 1 asbestos body in 3 sections. The tumor cells were negative for TTF-1, CEA, HBME-1, and PSA markers. Hematoxylin and van Gieson staining confirmed extensive bilateral interstitial fibrosis grade 3 with peripheral honeycombing, typical of asbestosis in the lung tissue not involved with tumor.

***Diagnosis:***
1. **Malignant biphasic mesothelioma of left lung**
2. **Bilateral Grade 3 asbestosis CAP-NIOSH**

*Interpretation:*
The clinical history, radiological observations, biopsy pathology diagnosis, IHC staining profile and autopsy findings all combine to establish irrevocably that the deceased died of a malignant biphasic mesothelioma. The accompanying widespread bilateral peripheral fibrosis and honeycombing in the lungs had the characteristic features of pulmonary asbestosis and this is supported by the presence of an asbestos body in the lung tissue sections.

SIGNED:

David Tarin MD PhD FRCPath

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CLARENCE JOHNSON, et ux, et al.,           )    C.A. No. 78-464
                                           )              78-1027
                            Plaintiffs,    )              78-1117
                                           )              78-1041
               v.                          )              78-2023
                                           )              78-1987
TURNER & NEWALL, LTD., et al.,             )              78-3046
                                           )              79-1523
                            Defendants.    )              79-4337
                                                         79-4338
                                                         79-4341
                                                         79-4339
                                                         79-4340
                                                         79-4342
                                                         79-2715
                                                         78-4172
                                                         79-3690
                                                         79-3770


                                           Monday,
                                           June 30, 1980
                                           Washington, D. C.


Deposition of:

                    LEON DAVID HOROWITZ

called for examination by counsel for Defendant Cassiar

Asbestos Corporation, Limited, pursuant to notice, at the

offices of Shea & Gardner, 1800 Massachusetts Avenue, N. W.,

Washington, D. C., before Gerald Nevitt, Notary Public in

and for the District of Columbia, commencing at 10:55 a.m.


OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING. MD. 20904
Tel. 572-4324

2

Appearances:

For the Plaintiffs:

HAMBURG RUBIN MULLIN & MAXWELL
BY:  EDWARD RUBIN, ESQ.

For the Defendant Turner & Newall, Ltd:

JOHN P. MASON, ESQ.

For the Defendant CertainTeed Corporation:

SWARTZ CAMPBELL & DETWEILER
BY:  G. DANIEL BRUCH, JR., ESQ.

CURTIS M. PONTZ, ESQ.

LaBRUM & DOAK
BY:  JAMES D. HILLY, ESQ.

For the Defendant Cassiar Asbestos Corp., Ltd:

SHEA & GARDNER
BY:  DAVID BOOTH BEERS, ESQ.,
ELIZABETH S. GIBSON, ESQ.

For the Defendant Lake Asbestos of Quebec, Ltd:

PORZIO & BROMBERG
BY:  MYRON J. BROMBERG, ESQ.

For the Defendant Johns-Manville:

MARSHALL DENNEHEY & WARNER
BY:  THOMAS C. DELORENZO, ESQ.,
ANNE M. KENNEY, ESQ.

For the Defendant Asbestos Corporation, Ltd:

OMINSKY JOSEPH & WELSH
BY:  EDWARD B. JOSEPH, ESQ.

3

Appearances:   (Cont'd)

For the Defendant GAF:

    MESIROV GELMAN JAFFE & CRAMER
    BY:   EDWARD GREER, ESQ.

For the Defendant Southern Asbestos:

    WHITE & WILLIAMS
    BY:   ANDREA L. BOWMAN, ESQ.

For the Defendant Bell Asbestos Mines, Ltd:

    POST & SCHELL
    BY:   F. JAMES GALLO, ESQ.

For the Defendant Turner & Newall, Ltd:

    SULLIVAN & CROMWELL
    BY:   RICHARD J. RAWSON, ESQ.

For the Defendant Carey Canadian Mines, Ltd:

    HARVEY PENNINGTON
    BY:   JOEL D. GUSKY, ESQ.

For the Defendant United States of America:

    WILLIAM R. HERMAN, ESQ.
    Civil Division, U. S. Department of Justice

- - -

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING. MD. 20904
Tel 372-4324

4

# I N D E X

| DEPONENT | EXAMINATION BY | PAGE |
|---|---|---|
| Leon David Horowitz | Mr. Beers | 5 |
| | Mr. Herman | 119 |
| | Mr. Gallo | 125 |
| | Mr. Bromberg | 138 |
| | Mr. Beers | 172 |
| | Mr. Rubin | 176 |
| | Mr. Hilly | 226 |
| | Mr. Bruch | 235 |
| | Mr. Hilly | 241 |
| | Mr. Pontz | 242 |
| | Ms. Gibson | 242 |
| | Mr. Bromberg | 243 |
| | Mr. Bruch | 244 |
| | Mr. Gallo | 245 |

| HOROWITZ DEPOSITION EXHIBITS | PAGE |
|---|---|
| 1 through 25 - | 5 |
| 26- | 172 |

(Exhibits attached to court original)

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel 577.4324

5

(Horowitz Deposition Exhibits Nos.

1 through 25 were marked.)

LEON DAVID HOROWITZ

having been duly sworn by the Notary-Reporter, was examined

and testified as follows:

EXAMINATION BY COUNSEL FOR DEFENDANT CASSIAR

BY MR. BEERS:

Q    What is your full name, Mr. Horowitz?

MR. MASON:   The usual stipulations?

MR. BEERS:   Yes.   They are in the Federal Rules,

Mr. Mason.

A    Leon David Horowitz.

Q    Where do you live?

A    I live in Burlington, Massachusetts, 78 Macon

Road, Burlington, Massachusetts 01803.

Q    Where do you work?

A    I work with American Mutual Liability Insurance

Company, in Wakefield, Massachusetts.

Q    How old are you?

A    I am 62 years old.

Q    What is your position at the insurance company?

A    I am Chief of the Industrial Hygiene Section of

the company.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel. 577-4174

13

A.    Yes, I did.

Q    Can you give me some examples of your clients during that four-year period?

A    Well, I did a beryllium survey for RCA in New Jersey.

I did another RCA survey in another plant in New Jersey with respect to employee complaints during their work hours, which was the third shift, and there were a mixture of chemicals so I can't specify which chemicals.

Most other clients were small clients, small businesses in New York City.

Q    What did you do after you left that consulting position?

A    I was hired by Keasbey & Mattison, of Ambler, Pennsylvania, as a dust control engineer.

Q    How did you first make contact with Keasbey & Mattison?

A    They had an advertisement for a dust control engineer in the New York Times and I responded to that.

Q    To whom did you respond?

A    To the address that was in the paper.

Q    Who at --

A    A personnel man was my first contact.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING. MD. 20904
Tel 577-4374

16

Q  When did you go to work?

A  I believe it was May of that year, 1960.

Q  What was your title?

A  I believe my first title was Dust Control Engineer.

Q  How long did you remain Dust Control Engineer?

A  I was Dust Control Engineer until a few years later, after CertainTeed took over and when I took over duties as corporate Safety Director. I don't know the exact year, but it may have been '65.

Q  How long did you remain corporate Safety Director?

A  From '65 to '68, when I left the company.

Q  What did you do when you left the company?

A  I joined American Mutual Liability Insurance Company.

Q  When you first started with Keasbey & Mattison were your duties company-wide or did they relate to a particular plant?

A  They were company-wide with respect to dust control engineering and I added, with their agreement, to do industrial hygiene work.

Q  Did the industrial hygiene work pertain to all plants or just to a particular plant?

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel 572-4324

18

Q      Keasbey & Mattison did not have a plant in Texas or California at that time, did it?

A      Not at that time.  No, they didn't have a plant.

Q      After you started work with CertainTeed did you visit all the plants that CertainTeed owned, at one time or another?

A      In all the years, yes, I visited all their plants, in all the years.  While I was still a Dust Control Engineer I don't remember visiting all the new plants that came with CertainTeed, but I continued visiting the plants that dealt with asbestos and cement.

Q      Mr. Horowitz, I think you described your job as falling into two parts, dust control engineering on the one hand and industrial hygiene on the other?

A      I considered them as one.  They both functioned together.  That is why I brought them in.  But, yes, they considered it both parts; right.

Q      Did you work for the same people while doing both functions?

A      Yes.

Q      Who was your immediate supervisor at Keasbey & Mattison when you first went there?

A      Al Spedding.

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904
Tel. 572-4324

30

A    The same as the asbestos cement pipe plant only.

Q    After 1962, when you worked for CertainTeed, did you also work with the dust levels at some of the other plants

A    The same as the asbestos cement plants prior to that time.

Q    Could you just tell us that in a complete sentence, what your understanding was as to the component parts of the dust levels in the plants, say, at Hillsboro and at Santa Clara?

A    The answer would be the same at Hillsboro and Santa Clara, which would be 100 percent asbestos as one of the raw materials to make asbestos cement pipe, 100 percent silica to make the cement, and 100 percent cement, as raw materials; and then the final product as 14 percent asbestos, with the rest as a finished cement, combined cement.

MR. BEERS:  For the next little while or long while we are going to be dealing with a series of 20-some documents.

·This is off the record.

(Discussion off the record.)

Q    I have asked the Reporter at the beginning of the deposition to mark each of these documents as Horowitz Exhibits 1 through 25.  I would like to turn to the document

made.  All I know is that he was going to come and I was invited to the meeting.

Q  Do you remember what interest Turner & Newall had in the affairs of Keasbey & Mattison at that time?

MR. MASON:  I object to the form of that questio

A  I can still answer that?

Q  Yes, sir.

A  I believe Dr. Knox felt that in England they were much more aware of the hazard of asbestos and that in America, the United States; we were not that much aware.

Q  Do you remember whether or not T & N, Turner & Newall, had any relationship with Keasbey & Mattison at the time?

A  I only know of the relationship that I understoo that they owned Keasbey & Mattison.

Q  What did Dr. Knox tell you at that meeting?

A  His concern as well as the general knowledge that seemed to prevail in the British Empire, that cancer was associated with asbestos.

Q  Did he discuss any particular form of cancer?

A  Yes.  He mentioned mesothelioma.

Q  What did he say about mesothelioma?

A  That it was a unique cancer, that a person could

49

maintaining a dust-free industrial atmosphere?

A        For health reasons.

Q        Did you design the cut-off saw that is referred to in this document, the dust collection system for the cut-off saw?

A        May I read it just to recall?

Q        Certainly.

(Pause.)

A        Apparently, it was my design that they were trying to correct, from their existing design to my design, and he was urging him to do it.

Q        I would like you to now turn to a document that has been marked Horowitz Exhibit 5.   Could you read the heading of that document.

A        It is written to Mr. A. W. Spedding on September 14, 1960.  Asbestos Textile Institute Meeting, September 8th and 9th, 1960.

Q        Have you ever seen this document before?

A        Yes.   I wrote it.

Q        This is a true copy of the document that you wrote?

A        Yes.

Q        Can you tell us what this document is all about?

OFFICIAL REPORTER COMPANY
12401 Palermo Drive
SILVER SPRING, MD. 20904

# Exhibit 6

Page 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.  L-3458-09

```
--------------------------------:
JOYCE BRADLEY,                   :        VIDEOTAPE
          Plaintiff,            :     DEPOSITION UPON
                                :     ORAL EXAMINATION
     vs.                        :           OF
                                :     LLOYD C. AMBLER
3M COMPANY, et als.,            :        VOLUME 1
          Defendants.          :
--------------------------------:
```

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.  L-1628-09

```
--------------------------------:
GARY R. CHAVAN and JULIE H.      :
CHAVAN, Husband and wife,        :
          Plaintiffs,           :
                                :
                                :
     vs.                        :
                                :
                                :
3M COMPANY, et als.,            :
          Defendants.          :
--------------------------------:
```

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MIDDLESEX COUNTY
DOCKET NO.  L-3465-09

```
--------------------------------:
PATRICIA DUGGAN and JOHN J.      :
DUGGAN, Husband and wife,        :
          Plaintiffs,           :
                                :
                                :
     vs.                        :
                                :
                                :
3M COMPANY, et als.,            :
          Defendants.          :
--------------------------------:
```

BRODY DEPOSITION SERVICES, INC.
Certified Shorthand Reporters & Videographers
7 Elm Street
Westfield, New Jersey 07090
Phone: (908) 789-2000
Fax: (908) 789-2007

Brody Deposition Services, Inc.                    908-789-2000
7 Elm Street                          Westfield, New Jersey  07090

Page 126

different question.  Why don't you switch the tape.

THE VIDEOGRAPHER:  Off the record at 12:10.

(Discussion is held off the record.)

THE VIDEOGRAPHER:  Back on the record at 12:11.

BY MR. PLACITELLA:

Q.    When CertainTeed was advised that asbestos was associated with mesothelioma, they didn't hold that information back from their employees; they told them, true?

MR. EDELL:  Objection to the form of the question.  I don't know what you mean by "associated with."

BY MR. PLACITELLA:

Q.    You can answer it.

A.    When CertainTeed was -- when CertainTeed became aware that there was a possible connection with asbestos and mesothelioma or any disease, they shared that information.

Q.    And they had safety meetings about that?

A.    They -- well, they had safety meetings about what asbestos could do and how it could be harmful and safe ways of using asbestos --

Q. With the workers?

A. With the workers.

Q. Tell the ladies and gentlemen of the jury, when is the first time CertainTeed mentioned the word "mesothelioma" in relation to the sale of asbestos-containing cement pipe.

A. Well, it's an entirely -- a different situation.

Q. Isn't it true, sir, that, although you told the employees in the plant about mesothelioma, you never mentioned the word "mesothelioma" to a customer or a consumer ever?

A. That's not true.

Q. When is the first time you mentioned the word "mesothelioma" --

A. Oh.

Q. -- to a customer or a consumer?

A. I may be wrong on that. We mentioned the word "cancer." We may not have mentioned the meso. I'd have to look at what we said on the label and also what was in the work practices, but "cancer" was used.

Q. Cancer was not used until 1985? True, sir?

A. Cancer itself was not used until

labels on our pipe, one in '79 and one in '85, and you know what the wording is.

BY MR. PLACITELLA:

Q.    My question is, did you at any time tell -- put a label on your pipe that said "Small amounts of exposure can cause cancer"?

A.    We put on our pipe what we've already said we put on our pipe, and those words weren't used.

Q.    Did you ever use -- did you ever put on your pipe that family members were at risk from exposure to asbestos?

A.    That was never put on our pipe.

MR. PLACITELLA:  The defense lawyers are getting allergic to me, so I'll conclude the questions for today.  I think we are out of tape anyway.

Thank you.

THE VIDEOGRAPHER:  This concludes Day 1 at 5:19 p.m.

(5:20 p.m.)

# Exhibit 7

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

---oOo---

HOLLY ORTWEIN and                    No. RG13701633
RICHARD ORTWEIN,

      Plaintiffs,

vs.

CERTAINTEED CORPORATION
Et al.,

      Defendants.

-----------------------/

VIDEOTAPED DISCOVERY DEPOSITION OF LLOYD AMBLER

Taken before JOSEPHINE CARDILLO,

Professional Court Reporter and Notary Public.

August 20, 2014

Aiken Welch Court Reporting
One Kaiser Plaza, Suite 250
Oakland, California  94612
510.451.1580/877.451.1580
Fax:  510.451.3797
www.aikenwelch.com

BY MR. SATTERLEY:

Q. Okay.

A. We were always trying to improve our systems, whether -- it could be laze, it could be a boring mill, it could be the -- the mixing -- the mixing containers up where the cement silica and asbestos are all mixed together with water; it could be any of those things.

We were always evaluating -- we were evaluating doing a better job of adding our asbestos to the mix. And, eventually, we even invented a -- developed an automatic asbestos bag opener.

EXAMINATION BY MR. SATTERLEY: Move to strike portions as nonresponsive.

BY MR. SATTERLEY:

Q. Mr. Ambler, when you were first hired in and was told about asbestos hazards, were you told about Crocidolite asbestosis?

A. What about it?

Q. That that was one of the ingredients of the CertainTeed pipe.

A. Oh, yes.

Q. And were you told about Chrysotile asbestosis?

A.   Yes, sir.

Q.   And when you were -- and in the 1967 time frame, did individuals educate you that the Crocidolite was considered to be more toxic than the Chrysotile?

A.   I was told that there was a lot of talk about that, that the Crocidolite fiber was more toxic than the Chrysotile, right.

Q.   Anywhere in the plants in the late 1960s or '70s, did you see any notifications about Crocidolite being more dangerous or more toxic than Chrysotile?

A.   Yeah, I don't remember seeing any notification of that.  But everybody knew it, 'cause it was talked about.

EXAMINATION BY MR. SATTERLEY:  Move to strike portion that is nonresponsive.

BY MR. SATTERLEY:

Q.   You don't read the mind of everybody, do you?

MS. GEISE:  I'm going to object to the form; that's argumentative.

THE WITNESS:  What do you mean, I don't read the -- I don't read the mind of

# Exhibit 8

Page 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-3458-09

JOYCE BRADLEY

      Plaintiff,

    -vs-

3M COMPANY, et als,

      Defendants.

: VIDEOTAPE
: DEPOSITION UPON
: ORAL EXAMINATION
: OF
: LLOYD C. AMBLER
: VOLUME 2

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-1628-09

GARY R. CHAVAN and JULIE H.
CHAVAN, Husband and Wife,

      Plaintiffs,

    -vs-

3M COMPANY, et als,

      Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:MIDDLESEX COUNTY
DOCKET NO. L-3465-09

PATRICIA DUGGAN and JOHN J.
DUGGAN, Husband and Wife,

      Plaintiffs,

    -vs-

3M COMPANY, et als,

      Defendants.

BRODY DEPOSITION SERVICES, INC.
Certified Court Reporters & Videographers
7 Elm Street
Westfield, New Jersey 07090
Phone: (908) 789-2000 Fax: (908) 789-2007

Brody Deposition Services, Inc.
7 Elm Street

908-789-2000
Westfield, New Jersey 07090

heat down, correct?

A        The dust down, correct.

Q        Right.

And even when it was wet, there were readings of a hundred and nine fibers per cc for the person that was actually cutting the pipe, correct?

A        It was one -- one count of a hundred and nine, yes.

Q        Well, there was another one for 95, and there was another one for 60, correct?

A        Right.

Q        Okay.

A        And there was one for 11, and one for 30.

Q        All right.

So the average for the people who -- for instance, cut the pressure pipe was 65 fibers per cc, correct --

MR. EDELL:  Objection to the form of the question.

Q        -- isn't that what it said?

A        For those four tests conducted, the mean was 65 fibers per cc, yes.

Q        All right.

And that was -- the average was more than six times the then OSHA limit, correct?

A       The peak level, yes.

Q       Okay.  And then they also tested helpers, correct?

A       Yes.

Q       They were people who were not cutting the pipe --

A       That's correct, yes.

Q       -- correct?

        And the helpers' average exposure was for pressure pipe 49 fibers per cc, correct?

A       On the mean.

Q       Right.

        That was almost five times OSHA's limit at the time, correct?

A       That's correct, yes.

Q       The helper was a bystander, correct?

A       Ah, well, what -- I don't know what your definition of a bystander is.  A bystander could be many different things.

        The helper was standing there prob -- most likely holding the pipe while it was being cut.

Q       And did you not do readings in your test that showed that people 15 feet away were still exposed to asbestos fibers in excess of the OSHA limits?

A      I don't -- I don't know if we did or didn't. I didn't see it.

Q      Do you recall ever testifying to that in prior depositions?

A      I may have.  I don't remember.

Q      Okay.  And, for example, another test was run on sewer pipe, and that showed people cutting the pipe were exposed to almost ten times the OSHA limit, true?

A      Ten times?

Q      Yes, sir.

A      On the average mean?

Q      No --

A      There was one --

Q      -- one test -- correct --

A      -- one test was nine and a half times, yes, sir.

Q      Right.  And the average -- and that average was 42, so that was about four times the OSHA levels.

A      The mean was 42, yes, sir.

Q      Okay.  Now, ten years earlier when -- remember yesterday we were talking about the flurry of activity that went on in 1967 and '68 with the Asbestos Cement Products Association over whether a

# Exhibit 9



# PohlmanUSA
## Court Reporting and Litigation Services

Juan Bergrud - Volume I

October 15, 2019

Peter L. Bergrud, deceased, et al.

vs.

Bartells Asbestos Settlement Trust, et al.

SUPERIOR COURT OF WASHINGTON

FOR PIERCE COUNTY

-----------------------------------x
CHERYL L. BERGRUD, Individually   )
and as Personal Representative    )
for the Estate of Peter L.        )   Case No.
Bergrud,                          )   19-2-06952-5
                 Plaintiff,       )
                                  )
        vs.                       )
                                  )
BARTELLS ASBESTOS SETTLEMENT      )
TRUST, et al.,                    )
                                  )
                 Defendants.      )
-----------------------------------x


VOLUME I

DISCOVERY DEPOSITION OF

JUAN BERGRUD


October 15, 2019

9:58 a.m.


31611 Pete von Reichbauer Way South

Federal Way, Washington 98003


Reported Stenographically By:
Mayleen Ahmed, RMR, CRR, CRC
WA CCR No. 3402

                              I N D E X

                                                    PAGE
    Appearances of Counsel   ...................... 3
    Telephonic Appearances   ...................... 5


                      WITNESS:   JUAN BERGRUD
    EXAMINATION                                     PAGE
    By Ms. Kruger   ............................. 6
    By Mr. Madderra ............................. 86
    By Ms. Pearson  ............................. 95


    -------------------- EXHIBITS ----------------------
              (Attached to original transcript)
      BERGRUD
      EXHIBIT              DESCRIPTION           PAGE

    Exhibit 1   Arthur Bergrud Social Security       16
                records

    Exhibit 2   Juan Bergrud employment listing      34

    Exhibit 3   Peter Bergrud Social Security        34
                records

    Exhibit 4   Juan Bergrud Social Security        115



                  INSTRUCTIONS NOT TO ANSWER:
                      PAGE        LINE
                       11          25


                   INFORMATION REQUESTED:
                         (None)

                    MOTIONS TO STRIKE:
                         (None)


                           o0o

APPEARANCES OF COUNSEL

On behalf of the Plaintiffs and the witness
Juan Bergrud:
    D'ARCY L.R. RAPP, ESQ.
    MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
    1015 Locust Street - Suite 1200
    St. Louis, Missouri 63101
    drapp@mrhfmlaw.com
              -and-
    MEREDITH GOOD, ESQ.
    MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
    80 SE Madison Street - Suite 310
    Portland, Oregon 97214
    mgood@mrhfmlaw.com


On behalf of Honeywell International, Inc.:
    KRISTINE E. KRUGER, ESQ.
    PERKINS COIE LLP
    1201 Third Avenue - Suite 4900
    Seattle, Washington 98101
    kkruger@perkinscoie.com


On behalf of BorgWarner Morse TEC LLC:
    MICHAEL MADDERRA, ESQ.
    BENNETT BIGELOW & LEEDOM, P.S.
    601 Union Street - Suite 1500
    Seattle, Washington 98101-1363
    mmadderra@bbllaw.com


On behalf of CertainTeed Corporation and
H.D. Fowler Co., Inc.:
    PATRICIA T.O. PEARSON, ESQ.
    GORDON THOMAS HONEYWELL LLP
    600 University Street - Suite 2100
    Seattle, Washington 98101-4185
    ppearson@gth-law.com


On behalf of Consolidated Supply Co. and
McWane, Inc.:
    KARLEEN J. SCHARER, ESQ.
    BULLIVANT HOUSER BAILEY PC
    1700 Seventh Avenue - Suite 1810
    Seattle, Washington 98101-1397
    karleen.scharer@bullivant.com

APPEARANCES OF COUNSEL (Cont'd)

On behalf of Genuine Parts Co.:
     LORIANNE G. HANSON, ESQ.
     BULLIVANT HOUSER BAILEY PC
     1700 Seventh Avenue - Suite 1810
     Seattle, Washington 98101-1397
     lorianne.hanson@bullivant.com


On behalf of Mueller Co. LLC:
     ANDREW J. CHRISTMAN, ESQ.
     von BRIESEN & ROPER, S.C.
     411 East Wisconsin Avenue - Suite 1000
     Milwaukee, Wisconsin 53202
     achristman@vonbriesen.com


On behalf of Crown Cork & Seal and
General Electric Company:
     ALICE C. SERKO, ESQ.
     TANENBAUM KEALE LLP
     701 Pike Street - Suite 1575
     Seattle, Washington 98101
     aserko@tktrial.com


On behalf of the Water Applications Distribution
Group, Inc:
     WILLIAM R. SQUIRES III, ESQ.
     CORR CRONIN LLP
     1001 Fourth Avenue - Suite 3900
     Seattle, Washington 98154-1051
     rsquires@corrcronin.com


On behalf of J-M Manufacturing Co., Inc.:
     TYLER J. HERMSEN, ESQ.
     WILLIAMS KASTNER, PLLC
     601 Union Street - Suite 4100
     Seattle, Washington 98101
     thermsen@williamskastner.com

TELEPHONIC APPEARANCES OF COUNSEL:

On behalf of ITT LLC
RONALD C. GARDNER, ESQ.
GARDNER TRABOLSI & ASSOCIATES PLLC
2200 Sixth Avenue - Suite 600
Seattle, Washington 98121
rgardner@gandtlawfirm.com


On behalf of the Hajoca Corporation:
KEVIN J. CRAIG, ESQ.
GORDON REESE SCULLY MANSUKHANI LLP
701 Fifth Avenue - Suite 2100
Seattle, Washington 98104
kcraig@grsm.com

oOo

Q.   So Lany's only biological children were Rebella and Amy?

**A.   Correct.**

Q.   Sorry for that detour.  I would like to go back to the Social Security records now.

**A.   Oh, okay.**

Q.   So it looks like we have Almon Lawler in Bothell in 1968 and 1969?

**A.   Yes.**

Q.   Did you work there with Lany?

**A.   Yes.**

Q.   And was Mr. Almon Lawler your boss?

**A.   Yeah.  He owned the company.  It was a small company.  He tried to start up.**

Q.   And what did you guys do there?

**A.   Same thing; I was the operator and Lany installed the pipe.**

Q.   And Pinkertons, Inc., in 1969, do you recall that?

**A.   A neighbor of ours worked for the -- he was -- he was up in the Pinkertons guard.  And he couldn't get people, so he'd call us every once in a while to see if we could fill in here or there and help him out; so...**

Q.   Got it.

A.    We worked for him.

Q.    And what did you guys do there?

A.    If there was a building that they were working on or something, when the crew went home, they had to have somebody there to watch it overnight for theft and stuff like that.

Q.    Okay.

A.    But it wasn't a permanent job.  It was just helping him out.

Q.    And then Pacific Service Co., Inc. in 1969, Sno-King Drive-in Theater.  It looks like he was only there in the first quarter.

A.    Yeah.

Q.    Does that ring a bell?

A.    Snow-King?  Where is that?

(Witness reviewing document.)

A.    No.

Q.    Okay.  Then we have Leo Cowdrick and John Cowdrick, Cowdrick & Son?

A.    Correct.  Yeah.

Q.    And did you work with Lany at this job?

A.    I believe so.  They were good friends of ours.  They started their own business and they got -- they wanted us to help, help them out for a while.  You see we didn't make that much money there.

**We didn't stay.  Just helping them out.**

Q.   So both you and Lany worked there?

A.   **Yeah.  yeah.  I can remember that job even.**

Q.   Are Leo and John still with us?

A.   **Leo is not.  But his son John is.**

Q.   Were they close friends?

A.   **Correct.  Yeah.**

MS. RAPP:  Wait.  Who?  Were who close friends?

MS. KRUGER:  Leo and John.

THE WITNESS:  Leo and John.

MS. RAPP:  Okay.

THE WITNESS:  Cowdrick.

A.   **And his grandson, Larry, worked with us for a long time.  He's over at the -- he's over in Eastern Washington too now.**

Q.   So Cowdrick & Son is no longer in the Seattle area?

A.   **No.**

Q.   And then it looks like we have a long stint at Shoreline Construction.

A.   **Correct.**

Q.   And you worked with Lany here?

A.   **Correct.**

Q.   And what did you guys do at Shoreline?

Q.   I know some of the other counsel in the room will be interested in the detail of that work, but I'm just going to get a thumbnail sketch.

A.   **Okay.**

Q.   It looks like Puget Pipeline was next.

A.   **Puget Pipeline?**

**(Witness reviewing document.)**

A.   **I couldn't tell you.**

Q.   You don't recall that?

A.   **No.  Or Noble.  Some of these jobs, you know, I mean, there is so short and everything on it, because of his expertise, he'd go and help them out for just a little bit, get a certain thing done, and come back.**

Q.   Okay.

A.   **Yeah.**

Q.   What was his expertise?

A.   **Pipe layer and he worked, yeah, in manholes.**

MS. PEARSON:  I'm sorry.  I'm having a hard time hearing that.  Can you read that answer back?

(Record read.)

A.   **The work in the manholes is -- you know, once they're buried, they got leaks in them, you got to stop the leaks, and you use special hot, hot concrete to plug the leaks and channel the manholes.**

# Exhibit 10



**Pohlman**USA®

Court Reporting and
Litigation Services

Juan Bergrud - Volume II

October 16, 2019

Peter L. Bergrud, deceased, et al.

vs.

Bartells Asbestos Settlement Trust, et al.

SUPERIOR COURT OF WASHINGTON

FOR PIERCE COUNTY

```
------------------------------------x
CHERYL L. BERGRUD, Individually   )
and as Personal Representative    )
for the Estate of Peter L.        )   Case No.
Bergrud,                          )   19-2-06952-5
              Plaintiff,          )
                                  )
         vs.                      )   VOLUME II
                                  )
BARTELLS ASBESTOS SETTLEMENT      )
TRUST, et al.,                    )
                                  )
              Defendants.         )
------------------------------------x
```

DISCOVERY DEPOSITION OF

JUAN BERGRUD

October 16, 2019

9:06 a.m.

31611 Pete von Reichbauer Way South

Federal Way, Washington 98003

Reported Stenographically By:
Mayleen Ahmed, RMR, CRR, CRC
WA CCR No. 3402

                         I N D E X

                                                    PAGE
    Appearances of Counsel    ..................... 3
    Telephonic Appearances    ..................... 4


                 WITNESS:  JUAN BERGRUD
    EXAMINATION                                      PAGE
    By Ms. Serko   ............................... 6
    By Ms. Pearson ............................... 12


                         EXHIBITS
                       (None marked)


                    MOTIONS TO STRIKE

                    PAGE          LINE
                     37            8


                 INFORMATION REQUESTED
                       (None)

                 INSTRUCTIONS NOT TO ANSWER
                       (None)


                         oOo

APPEARANCES OF COUNSEL

On behalf of the Plaintiffs and the witness
Juan Bergrud:
    D'ARCY L.R. RAPP, ESQ.
    MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
    1015 Locust Street - Suite 1200
    St. Louis, Missouri 63101
    drapp@mrhfmlaw.com
            -and-
    MEREDITH GOOD, ESQ.
    MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
    80 SE Madison Street - Suite 310
    Portland, Oregon 97214
    mgood@mrhfmlaw.com


On behalf of CertainTeed Corporation and
H.D. Fowler Co., Inc.:
    PATRICIA T.O. PEARSON, ESQ.
    GORDON THOMAS HONEYWELL LLP
    600 University Street - Suite 2100
    Seattle, Washington 98101-4185
    ppearson@gth-law.com


On behalf of Consolidated Supply Co. and
McWane, Inc.:
    KARLEEN J. SCHARER, ESQ.
    BULLIVANT HOUSER BAILEY PC
    1700 Seventh Avenue - Suite 1810
    Seattle, Washington 98101-1397
    karleen.scharer@bullivant.com


On behalf of Mueller Co. LLC:
    ANDREW J. CHRISTMAN, ESQ.
    von BRIESEN & ROPER, S.C.
    411 East Wisconsin Avenue - Suite 1000
    Milwaukee, Wisconsin 53202
    achristman@vonbriesen.com


On behalf of Crown Cork & Seal and GE:
    ALICE C. SERKO, ESQ.
    TANENBAUM KEALE LLP
    701 Pike Street - Suite 1575
    Seattle, Washington 98101
    aserko@tktrial.com

APPEARANCES OF COUNSEL (Cont'd)

On behalf of the Water Applications Distribution
Group, Inc:
    WILLIAM R. SQUIRES III, ESQ.
    CORR CRONIN LLP
    1001 Fourth Avenue - Suite 3900
    Seattle, Washington 98154-1051
    rsquires@corrcronin.com


On behalf of J-M Manufacturing Co., Inc.:
    DAVID SHAW, ESQ.
    WILLIAMS KASTNER, PLLC
    601 Union Street - Suite 4100
    Seattle, Washington 98101
    dshaw@williamskastner.com

                          o0o


         TELEPHONIC APPEARANCES OF COUNSEL

On behalf of Honeywell International, Inc.:
    KRISTINE E. KRUGER, ESQ.
    PERKINS COIE LLP
    1201 Third Avenue - Suite 4900
    Seattle, Washington 98101
    kkruger@perkinscoie.com


On behalf of BorgWarner Morse TEC LLC:
    MICHAEL MADDERRA, ESQ.
    BENNETT BIGELOW & LEEDOM, P.S.
    601 Union Street - Suite 1500
    Seattle, Washington 98101-1363
    mmadderra@bbllaw.com


On behalf of Genuine Parts Co.:
    LORIANNE G. HANSON, ESQ.
    BULLIVANT HOUSER BAILEY PC
    1700 Seventh Avenue - Suite 1810
    Seattle, Washington 98101-1397
    lorianne.hanson@bullivant.com

TELEPHONIC APPEARANCES OF COUNSEL (Cont'd)

On behalf of ITT LLC
     RONALD C. GARDNER, ESQ.
     DAVID D. MORDEKHOV, ESQ.
     GARDNER TRABOLSI & ASSOCIATES PLLC
     2200 Sixth Avenue - Suite 600
     Seattle, Washington 98121
     rgardner@gandtlawfirm.com
     dmordekhov@gandtlawfirm.com


On behalf of the Hajoca Corporation:
     KEVIN J. CRAIG, ESQ.
     GORDON REESE SCULLY MANSUKHANI LLP
     701 Fifth Avenue - Suite 2100
     Seattle, Washington 98104
     kcraig@grsm.com




                          o0o

Q.   That's fine.  That's fine.

**A.   I don't think I can --**

Q.   It was a long time ago.  I'm just trying to --

**A.   I mean -- yeah.**

Q.   -- find out what you remember.

MS. RAPP:  Go ahead.

**A.   Well, these questions, I mean, when your mom and dad were born, and when were you here, and exactly when did Lany start there.  I don't remember. That's 40-50 years ago.**

Q.   Yes.

**A.   And you keep asking the same questions.**

Q.   Yes.

**A.   Okay.**

Q.   I'm sorry.  This is what I have to do.  So I'm just trying to --

**A.   Okay.**

Q.   -- find out what you remember.  If you don't remember or if you have an estimate, that's fine.  Tell me that.  You're my opportunity to get information about your brother.

**A.   Well, you know, we did many, many projects together.  And I would say 80 percent of the projects in that era was with either Certain-Teed or John**

Mansfield, and we did a lot of -- and Greystone, and Associated Concrete came in also.  And it's hard to pick the projects apart back that long.  But I can -- like that one project I remember explicitly.  But I'll just tell you I don't know if I don't know.

Q.   That sounds good.

A.   Okay.

MS. PEARSON:  And I'll respectfully move to strike the nonresponsive portions.

Q.   Okay.  Yesterday, you said something about sometime around '70 and '72, you became a supervisor with Shoreline.  Did I hear that correctly?

A.   Yes.  That was on the Lake Stevens project.

Q.   Okay.  During that project?

A.   At the start of the project.

Q.   So before that time, you were an operator?

A.   Correct.

Q.   Okay.  And then what did it mean for you to become a supervisor?  How did your job change?

A.   You run a crew instead of operating.  I was out at the machine and run the crew, and lining up things.

Q.   Okay.

A.   Getting ready for tomorrow every day.

Q.   Okay.  Once you became -- or when you were

# Exhibit 11



# PohlmanUSA

## Court Reporting and Litigation Services

---

Richard Trumbull

November 18, 2019

---

Peter L. Bergrud, et al.

vs.

Bartells Asbestos Settlement Trust, et al.

THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR PIERCE COUNTY

_____

CHERYL L. BERGRUD, Individually and)
as Personal Representative for the )
Estate of PETER L. BERGRUD,        )
                                   )
          Plaintiff,               )
                                   )
vs.                                )   No. 19-2-06952-5
                                   )
BARTELLS ASBESTOS SETTLEMENT TRUST,)
et al.,                            )
                                   )
          Defendants.              )
                                   )
_____

DISCOVERY DEPOSITION UPON ORAL EXAMINATION

OF

RICHARD TRUMBULL

_____

     Taken at: 415 Ellingson Road

        Pacific, Washington

DATE TAKEN:  November 18, 2019

REPORTED BY:  ELIZABETH PATTERSON HARVEY, RPR, CCR 2731

A P P E A R A N C E S:

FOR THE PLAINTIFF:

    D'Arcy L.R. Rapp
    dreinhard@MRHFMLaw.com
    Maune Raichle Hartley French & Mudd, LLC
    1015 Locust Street, Suite 1200
    St. Louis, Missouri 63101
    314.241.2003

FOR BORGWARNER MORSE TEC LLC (via telephone):

    Michael J. Madderra
    mmadderra@bbllaw.com
    Bennett Bigelow & Leedom, PS
    601 Union Street, Suite 1500
    Seattle, Washington  98101
    206.622.4511

FOR CONSOLIDATED SUPPLY CO., GENUINE PARTS CO., and MCWANE, INC.:

    Karleen J.  Scharer
    karleen.scharer@bullivant.com
    Bullivant Houser Bailey
    1700 Seventh Avenue, Suite 1810
    Seattle, Washington  98101
    206.292.8930

FOR WATER APPLICATIONS DISTRIBUTION GROUP, INC.:

    Jeff Bone
    asbestos@corrcronin.com
    Corr Cronin Michelson Baumgardner Fogg & Moore
    1001 Fourth Avenue, Suite 3900
    Seattle, Washington  98154
    206.625.8600

A P P E A R A N C E S

FOR MUELLER CO.:

        Ronald C. Gardner
        asbestos@gantlawfirm.com
        Gardner Trabolsi & Associates
        2200 Sixth Avenue Suite 600
        Seattle, Washington  98121
        (206) 256-6309


FOR HAJOCA CORPORATION (via telephone):

        Kevin J. Craig
        seaasbestos@grsm.com
        Gordon & Rees Scully Mansukhani
        701 Fifth Avenue
        Suite 2100
        Seattle, Washington  98104
        206.695.5100


FOR CERTAIN-TEED CORP and H.D. FOWLER INC.:

        Patricia O. Pearson
        ppearson@gth-law.com
        Gordon Thomas Honeywell
        600 University, Suite 2100
        Seattle, Washington  98101
        206.676.7599


FOR ITT, LLC (via telephone):

        Cory M. Martin
        cory.martin@morganlewis.com
        Morgan, Lewis & Bockius, LLP
        One Market, Spear Street Tower
        San  Francisco, California  94105
        (415) 442-1000

A P P E A R A N C E S

FOR HONEYWELL INTERNATIONAL, INC.:

              Andrew Chen
              HW Asbestos SEA@perkinscoie.com
              achen@perkinscoie.com
              Perkins Coie LLP
              1201 Third Avenue, Suite 4900
              Seattle, Washington  98101
              (206) 359-8000


FOR CROWN, CORK & SEAL, INC. (via telephone):


              Alice Serko
              aserko@tktrial.com
              Tanenbaum Keale LLP
              One Convention Place
              701 Pike Street
              Suite 1575
              Seattle, Washington  98101
              (206) 889-5082


FOR J-M MANUFACTURING CO., INC.:

              David A. Shaw
              dshaw@williamskastner.com
              Williams Kastner & Gibbs, PLLC
              601 Union Street, Suite 4100
              Seattle, Washington  98101
              206.628.6600



     *  *  *  *  *  *  *

DEPOSITION OF RICHARD TRUMBULL

EXAMINATION INDEX

| EXAMINATION BY: | PAGE |
|---|---|
| MS. PEARSON | 6, 177 |
| MR. GARDNER | 135 |
| MR. SHAW | 145 |
| MR. BONE | 183 |
| MS. SCHARER | 189, 217 |
| MR. MARTIN | 199 |
| MR. CHEN | 206 |
| MR. MADDERRA | 215 |

EXHIBIT INDEX

| EXHIBITS FOR IDENTIFICATION | PAGE |
|---|---|
| Exhibit 1    Photographs | 16 |
| Exhibit 2    Drawing | 117 |
| Exhibit 3    Publication - Asbestos Cement Pipe Producers Association | 158 |

**A     That I recall, yes.**

Q     Okay.  Any other work with A/C pipe that you observed Lanny do that we haven't talked about?

**A     Other than moving around and unloading and installing.**

Q     We talked about that, right?

**A     Yeah.**

Q     We talked about that stuff.

**A     That's -- I think that covers a lot of it.**

Q     Well, does that cover all of it?

**A     As best I can recall right now, yes.**

Q     Okay.  Do you know the brands of A/C pipe that Lanny worked with during his career?

**A     Certain-Teed and JM.**

Q     How do you know that he worked with those brands?

**A     They were stamped.  There was a stamp on the pipe that would say Certain-Teed.  They were usually in a green or a blue.  That's what I recall, is the green and the blue for sewer and for water.**

Q     Do you remember any other brands other than those two?

**A     I don't.**

Q     Do you recall ever seeing him work with Flint-Coat A/C pipe?

**A     No.**

Q    How about CAPPCO?

**A    I do not.**

Q    Do you recall Kubota?

**A    No.  I chuckle because there's a Kubota machine.**

Q    Sure.

**A    So no, I do not recall that.**

Q    Okay.  Are you able to say that any particular brand of A/C pipe was used on any particular project that Lanny worked on?

**A    No, I would say it's pretty -- depending on what kind of -- the project required and got the best deal on. So whatever is the most efficient.  So I couldn't pick one over the other.**

Q    You couldn't remember which brand of A/C pipe was used on any project that Lanny worked on; is that right?

**A    No.  It was either Certain-Teed or JM.  What I'm saying is each job may have been a different, JM or Certain-Teed, depending on what kind of deal they got with those contractors.**

Q    Okay.  Focusing in on the Certain-Teed A/C pipe, based on what you remember, do you remember the color of it?

**A    Green or blue.**

Q    The pipe?

**A    Oh, the pipe.  No, I'm sorry.  Concrete color, cement color, gray-ish.**

# Exhibit 12

**CARL ANDREW BRODKIN, MD  MPH  FACOEM**
Occupational & Environmental Medicine
3607 47ᵗʰ Avenue N.E.;  Seattle, WA 98105
Phone: 206-523-4180  Fax: 206-523-0815

February 10, 2020

**To:**   D'Arcy L.R. Rapp, Esq.
Maune Raichle Hartley French & Mudd

**From:** Carl Andrew Brodkin, MD MPH FACOEM

**Re:**   Peter Bergrud  (Dr. Brodkin Medical Evaluation Report)
(Bergrud  v. Bartells Asbestos Settlement Trust, et al.)

Please find attached, per your request, Dr. Brodkin's report in the above-referenced case addressing Mr. Bergrud's Occupational & Environmental Medical history, asbestos-related health effects, scientific/medical evidence of causation, clinical course and whether treatment was reasonable and necessary, as well as state of the art medical knowledge regarding asbestos health effects.

My medical report includes the following sub-sections:

Section 1: Clinical Summary & Material Reviewed (Pages 1-7)
Section 2: Occupational & Environmental History (Pages 1-27)
Section 3: Chronologic Review of Medical Records (Pages 1-13)
Section 4: Diagnosis & Assessment (Pages 1-11)
Section 5: Reference Reliance List (20 Pages)

Should additional exposure or medical information become available, I would be pleased to review these materials.  Should this contribute substantively to the exposure and/or health-related information or opinions described in this report, conclusions and opinions will be provided as separate addenda.

*Carl A. Brodkin, m. D.*

**PAGE 1 OF 79  WITH COVER**

BERGRUO, PETER

DIAGNOSIS : ASSESSMENT

DX :  Malignant Pleural Mesothelioma (L), causally-related to direct occupational exposure as a career pipelayer (1965 -> 1989 ; ≥ 25 yrs.) to asbestos cement pipe during water and sewer line installation cutting / sawing (power saw), beveling / machining (power saw, rasp-file, hand-machining tool) and drill / tapping (hand-drilling); and 2) fire hydrants c̄ Acm gaskets during removal (scraping, wire-brush ; power-grinding [barrel-bonnet ; lower barrel flanges; 1965 - early 1980's); with additional occasional / intermittent environmental exposure to Acm 3) friction products (1960 - 1980's personal vehicle maintenance) during brake removal - blowout (~ 3-4 brakes/yr.) ; clutch bell-housing blow-out (# 15-20x [lifetime]) and 4) indirect foundry-refractory dust (~1950 - 1960 [stepmother's laundering of father's contaminated work clothing - Bethleher Steel furnace / casting operations]), leading to progressive clinical deterioration with respiratory failure and death over ~ 6 mos. (11/18 - 4/19) on April 21, 2019, to a high degree of medical certainty :

7

Diagnosis: Assessment (cont'd)

- Strong Epidemiologic Evidence for Asbestos-Related Mesothelioma

Epidemiologic studies of asbestos cement workers, gasket-exposed workers (including pipe fitters), other chrysotile-exposed workers (including friction products), crocidolite-exposed workers, as well as domestic/indirect exposure to asbestos, indicate high risk for development of mesothelioma.
(see REFERENCE - RELIANCE LIST).

3) LATENCY

- Asbestos Exposure: $\leq$ 1960's - $\geq$ 1980's

- Clinical Presentation: 11/18   (Dx: 2/26/19)

- Decades latency c/w asbestos-related mesothelioma

    - Mean ($\bar{x}$) latency 48 yrs. (14-75 yrs.)
                        (monfalcone Registry)
                        (Bianchi; Ind Med 2001)

Diagnosis: Assessment (Cont'd)

4) DIFFERENTIAL DIAGNOSIS : ABSENCE OF ALTERNATIVE CAUSES FOR MESOTHELIOMA : CLINICAL DETERIORATION)

– Asbestos exposure pre-eminent risk (Tosavainin; SJWEH '97)
   – Meets all HELSINKI Criteria – Exposure Hx, latency, path

   –"a hx of significant occup., domestic or environ
      exposure will suffice for attribution" (Helsinki)

   – "a hx of brief or low-level exposure should
      be considered sufficient for meso to
      be designated as occup.-related" (Helsinki)

   – Meso demonstrated in assoc. c̄ low cumulative
      exposures from few days (Skammeritz; JOEM 2011),
      to several weeks (Greenberg; Davies; BJIM 1974)
      (↑ risk c̄ increasing dose)

– Identified asbestos exposure in OEM Hx
      (Cullen; Rosenstock; Text Clin OEM, 2nd Ed 2005)

– Meets all BRADFORD-HILL Criteria for causation
      (Hill. Proc Royal Acad Sci 1965)

Diagnosis & Assessment (cont'd)

- No alternative cause of mesothelioma
  - Ø hx of therapeutic radiation
  - Ø hx of recurrent pneumothorax
  - Ø hx of chronic empyema (infection)
  - Ø hx of erionite exposure

- No evidence of alternative primary malignancy
  - PET-CT (3/12/19) localized to (L) pleura
  - IHC markers specific for mesothelioma

- No association between cigarette smoking & meso
  (Muscat; CA Res 1991)
  - mild-moderate distant former smoker (DK ≤ 1974)
    (16 pack-yrs [1ppd; ~1957-1973; <3½y/o])
  - mild COPD (emphysematous changes/scattered
    bullae reported on CT imaging—
    At times symptomatic c̄ mild dyspnea
    on moderate strenuous exertion [5/2/11],
    not requiring treatment).
  - No significant impact on life
    expectancy c̄ Ø evidence of
    clinically-significant (severe) obstruction
    (Ø wheezing on any PE findings),
    and cigarette smoking cessation decades previously.
    - Devereaux. BMJ 2006; 332:1142
    - Cooper. Chest 1994; 105:335

Diagnosis: Assessment (cont'd)

- Stable health c̄ well-controlled medical conditions:
  - Atrial Fibrillation c̄ single CVA (stroke [6/16])
    - Rx anti-coagulant (warfarin) therapy without recurrence
    - Overall 4% annual risk for recurrent stroke following initial event, without statistically significant increased risk associated c̄ A.fib etiology (Burn et al. Long-Term Risk of Recurrent Stroke After a First-Ever Stroke. Stroke 1994; 25(2): 333-337).
  - Mild Aortic Stenosis (AS [≥ 9/16/16]) - Aortic valve area mildly reduced (> 1.5cm² [9/16/16 - 1/10/19 ECHO]), c̄ normal cardiac function (LVEF Nl 55%-71%), without symptoms (e.g. CHF, syncope) - low mortality risk - < 1%/year (and effectively treatable should symptoms develop). (Vahanian et al. Risk stratification of Patient c̄ Aortic Stenosis". European Heart J 2010; 31: 416 - 423.
  - HTN, hypercholesterolemia, OA, lumbar disc dz monitored / stable / well-controlled.
∴ No prior medical condition significantly impacting life expectancy.

Diagnosis : Assessment (cont'd)

– Life Expectancy Prior to Mesothelioma at 77 y.o.

$\sim$ 9.85 yrs. ($\sim$ 87 y.o.)
(SSA 2013 Life Tables)

– Medical Care Reasonable : Necessary

Carl A. Brodkin, M.D.

# Exhibit 13

# REPORT OF CHRISTOPHER DEPASQUALE, MPH, CIH
## RE: Peter 'Lanny' Bergrud
### February 19, 2020

At the request of Maune, Raichle, Hartley, French & Mudd, LLC, I have reviewed case specific information regarding Mr. Peter 'Lanny' Bergrud, and prepared this report concerning his exposure to asbestos-containing materials (ACM). I am a Senior Industrial Hygienist with Compass Environmental, Inc. located at 1751 McCollum Parkway, Kennesaw, GA 30144. I am certified in the comprehensive practice of industrial hygiene by the American Board of Industrial Hygiene (Certificate No. 8361 CP). Industrial hygiene is the field of identification, evaluation and control of occupational and environmental health hazards. I have practiced industrial hygiene for over twenty-two years. In the field of asbestos management and control, I have conducted asbestos sampling in over one hundred buildings, including commercial office buildings, hospitals, industrial plants, and government facilities. I have performed monitoring on individuals and at facilities to evaluate potential exposures to asbestos and analyzed such samples over the course of my career. Furthermore, I have participated in sampling to evaluate historical exposures to asbestos. I have researched the published literature, and unpublished reports and studies, to understand the historical exposures workers experienced. I have read over one thousand depositions given by workers that have worked with or around asbestos-containing products to learn the work practices they followed. These have included workers in asbestos product manufacturing, construction trades, building maintenance, and others in various settings. I am also familiar with the standards, guidelines and regulations applicable to workers' exposure to asbestos. My curriculum vita is attached providing specific details of my qualifications, experience and publications. Compass Environmental, Inc. invoices $325 per hour for my time plus any necessary expenses.

The case specific materials provided and relied upon in developing my opinions were the following:

1. Deposition of Juan Bergrud, Volumes 1 through 3, and exhibit 2 to deposition; October 15, 2019, through November 7, 2019;

2. Deposition of Richard Trumbull, November 18, 2019;

3. Deposition of John Cowdrick, November 21, 2019;

4. Deposition of James Bidon, December 10, 2019;

Page 1 of 14

## Asbestos Exposures

Exposures to asbestos are expressed as a concentration of asbestos (either as fibers or structures) in air. The units are either fibers per cubic centimeter of air (f/cc) or structures per cubic centimeter of air (s/cc).

The work of Mr. Bergrud's father, Arthur Bergrud, at Bethlehem Steel likely resulted in exposure to asbestos. Reportedly, Arthur Bergrud showered and changed at work, but would bring home coveralls he worked in to be laundered at home. This would have likely resulted in some exposure to asbestos for Mr. Peter 'Lanny' Bergrud.

Mr. Peter 'Lanny' Bergrud would have had significant exposures to asbestos when he cut asbestos cement (AC) pipe or when he was a helper during the cutting of the AC pipe. He would have also at times had significant exposures to asbestos during tapping operations. Asbestos cement pipes typically contain between ten and twenty-five percent asbestos by weight. The major U.S. manufacturers combined chrysotile and crocidolite asbestos in their formulations.[1] In 1977, the Asbestos Cement Pipe Producers Association conducted a study to measure exposures during the installation of asbestos cement pipe.[2,3] The results are summarized in Table 1.

---

[1] Millette, J.R., Compton, S., and DePasquale, C.; "Microscopical Analyses of Asbestos-Cement Pipe and Board", *The Microscope*, Vol. 66:1, pp. 3-20, 2018.

[2] Noble, W.M., et al., of Equitable Environmental Health, Inc. "Asbestos Exposures During the Cutting and Machining of Asbestos Cement Pipe," Report to The Asbestos Cement Pipe Producers Association, Arlington, VA, March 16, 1977.

[3] Equitable Environmental Health, Inc. "Dust Exposures During the Cutting and Machining of Asbestos Cement Pipe, Additional Studies" Report to The Asbestos Cement Pipe Producers Association, Arlington, VA, December 15, 1977.

from clutch removal.[27] The authors reported a range of exposures of 0.015 – 0.13 f/cc during this work. This study examined only the removal of clutches from vehicles and not the installation of new clutch assemblies. Furthermore, no effort was made to clean the bell housing surrounding the clutches. A practice Mr. Juan Bergrud described they would perform using compressed air. Any effort to remove debris from the housing containing the clutch friction plate would result in greater exposures.

The range of airborne fiber concentrations for those times when asbestos-containing gaskets were cleaned from automotive equipment would vary. Some gaskets were likely cork or rubber and resulted in no excess exposure. Other gaskets may have been completely covered with a layer of soft metal (e.g., copper) effectively encasing the asbestos fibers within. Asbestos-containing gaskets that were scraped off would have likely resulted in some exposure. If additional cleaning procedures were used on the surface, such as a wire brush, a powered wire brush, or the use of compressed air then additional airborne fibers would be generated.

In conclusion, it is my opinion that Mr. Peter 'Lanny' Bergrud suffered exposures to asbestos occupationally through his own work and as a bystander to the work performed by others with asbestos containing cement pipe and asbestos-containing gaskets associated with fire hydrants, as well as personally through automotive repair work.

I hold the opinions expressed herein to a reasonable degree of scientific certainty.

Christopher DePasquale, MPH, CIH

February 19, 2020
Date

---

[27] Cohen, H.J. and D. R. Van Orden, "Asbestos Exposures of Mechanics Performing Clutch Service on Motor Vehicles", *J. Occup. And Environ. Hyg.*, Vol. 5, No. 3, 2008, pp. 148-156.

# Exhibit 14

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 09 2019 2:51 PM

KEVIN STOCK
COUNTY CLERK
NO: 19-2-06952-5

SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

PETER L. BERGRUD and
CHERYL L. BERGRUD, husband and wife,

     Plaintiffs,

vs.

BARTELLS ASBESTOS SETTLEMENT
TRUST;

BORGWARNER MORSE TEC LLC, as
successor-by-merger to Borg-Warner
Corporation;

CERTAIN-TEED CORPORATION,
Individually and as successor-in-interest to
WATER WORKS SUPPLY CORP.;

CONSOLIDATED SUPPLY COMPANY;

CLOW VALVE CO., Individually and as
successor-in-interest to Iowa Valve Co.

CROWN, CORK & SEAL COMPANY, INC.;

GENERAL ELECTRIC COMPANY;

GENUINE PARTS COMPANY;

H.D. FOWLER CO., INC.;

HAJOCA CORORATION  as successor-in-
interest to HUGHES SUPPLY CO.,

NO.

COMPLAINT FOR PERSONAL
INJURIES

COMPLAINT FOR PERSONAL INJURIES - 1

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

Individually and as successor-in-interest to Western Utilities Supply Co.;

HOME DEPOT USA, INC., as successor-in-interest to HUGHES SUPPLY CO., Individually and as successor-in-interest to Western Utilities Supply Co.;

HONEYWELL INTERNATIONAL, INC., Individually and as successor to Allied Signal, Inc. and The Bendix Corporation;

ITT CORPORATION, Individually and as successor-in-interest to Kennedy Valve Manufacturing Company;

J-M MANUFACTURING COMPANY, INC.;

KELLER SUPPLY CO.;

MCWANE, INC., Individually and as successor-in-interest to Iowa Valve Co.

METROPOLITAN LIFE INSURANCE COMPANY;

MUELLER CO.;

MUELLER WATER PRODUCTS, INC.;

WATER APPLICATIONS DISTRIBUTION GROUP, INC., f/k/a U.S. Filter Distribution Group, Inc., Individually and as successor-in-interest to Pacific Supply Co., Inc.;

UNION CARBIDE CORPORATION;

WCM INDUSTRIES, INC. f/k/a Woodford Manufacturing Company; and

WOODFORD MANUFACTURING COMPANY,

     Defendants.

COMPLAINT FOR PERSONAL INJURIES - 2

MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

## I.      PARTIES

Plaintiffs PETER L. BERGRUD and CHERYL L. BERGRUD are married individuals who reside in Grapeview, Washington.

Defendants and/or their predecessors-in-interest are corporations who, at all times relevant herein, either owned/controlled premises where Plaintiff PETER L. BERGRUD was exposed to asbestos, or who manufactured, sold, and/or distributed asbestos-containing products or products that were used in conjunction with asbestos and/or asbestos-containing products and/or equipment, and/or equipment solely designed to be used with asbestos-containing products mined, manufactured, supplied, distributed, produced, processed, imported, converted, compounded and/or sold by the Defendants.

## II.      JURISDICTION & VENUE

Plaintiff PETER L. BERGRUD was exposed to asbestos for which Defendants have liability in the state of Washington.  At all times relevant herein, all Defendants owned/controlled premises in the state of Washington where Plaintiff PETER L. BERGRUD was exposed to asbestos and/or Defendants transacted business in this state by mining, manufacturing, supplying, distributing, producing, processing, importing, converting, compounding, selling, or otherwise purposefully placing into the stream of commerce asbestos-containing products or products used in conjunction with asbestos, products they purposefully directed into the state of Washington, and into Pierce County and the counties of Plaintiff PETER L. BERGRUD'S exposure.  Therefore, Defendants may be served with process in Washington, pursuant to RCW 4.28.180 and 4.28.185.

This Court has jurisdiction over each and every named Defendant pursuant to RCW 4.12 *et seq.* and Washington case law: By mining, manufacturing, supplying, distributing, producing, processing, importing, converting, compounding, selling, and/or causing to be used asbestos or asbestos-containing products to which Plaintiff PETER L. BERGRUD was exposed in Washington, Defendants purposefully availed themselves of the privilege of doing business in Washington, thus invoking the benefits and protections of Washington's laws.   Venue is

COMPLAINT FOR PERSONAL INJURIES - 3       **MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

appropriate pursuant to RCW 4.12.025 because Defendants reside in Pierce County, Washington by: currently transacting business in Pierce County and/or by transacting business at the time the cause of action arose in Pierce County.

Defendants H.D. FOWLER CO., INC.; KELLER SUPPLY CO.; and PACIFIC WATER WORKS SUPPLY CO., INC. are Washington corporations.

### III.    FACTS

Plaintiff PETER L. BERGRUD (DOB: ████████████ was exposed to asbestos and asbestos-containing products, which had been mined, manufactured, supplied, distributed, produced, processed, imported, converted, compounded sold, and/or placed into the stream of commerce by Defendants and/or was exposed to asbestos through the use of products manufactured by Defendants, and/or was exposed to asbestos on premises owned and/or controlled by Defendants.  As a direct and proximate result of this exposure, Plaintiff PETER L. BERGRUD developed mesothelioma.  Plaintiffs provide the following information:

| | | |
|---|---|---|
| A. | Specific Disease: | Mesothelioma |
| B. | Date of Diagnosis: | February 2019 |
| C. | Military Service: | U.S. Air Force |
| D. | Occupation(s): | Laborer |
| E. | Places of Exposure: | Commercial, industrial and residential jobsites in the Seattle, WA area; Household exposure through father's employment at Bethlehem Steel in Seattle, WA; non-occupational automotive repairs in Seattle, WA |
| F. | Dates of Exposure: | Approximately 1952 to 2010 |
| G. | Current Address: | ██████████████ |

COMPLAINT FOR PERSONAL INJURIES - 4

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

## IV.   LIABILITY

Plaintiffs claim liability based upon the theories of common law negligence; product liability (or if applicable to certain product sellers, RCW 7.72 et seq.); conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability. The liability-creating conduct of Defendants consisted, *inter alia*, of negligent and unsafe design; failure to inspect, test, warn, instruct, monitor, and/or recall; failure to substitute safe products; marketing or installing unreasonably dangerous or extra-hazardous and/or defective products; marketing or installing products not reasonably safe as designed; marketing or installing products not reasonably safe for lack of adequate warning and marketing or installing products with misrepresentations of product safety; failure to warn and/or protect plaintiff regarding the deleterious effects of asbestos utilized on Defendants' premises.

## V.   DAMAGES

As a proximate result of Defendants' negligence and/or product liability and/or other basis of liability, Plaintiff PETER L. BERGRUD sustained pain, suffering, and disability in an amount not now known, but which will be proven at trial. Plaintiff PETER L. BERGRUD also sustained medical expenses and economic losses in an amount to be proven at trial. As a proximate result of Defendants' negligence and/or product liability and/or other basis of liability, Plaintiff CHERYL L. BERGRUD has suffered loss of spousal relationship as a result of Plaintiff PETER L. BERGRUD's illness, including a loss of emotional support, love, affection, care, services, companionship, and assistance in an amount to be proven at trial. Plaintiff PETER L. BERGRUD's children have sustained a loss of parental-child relationship as a result of Plaintiff PETER L. BERGRUD's illness.

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. For general and special damages specified above, including pain, suffering, loss of consortium and parental-child relationship, and disability;

COMPLAINT FOR PERSONAL INJURIES - 5

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

2. For medical and related expenses and economic loss, all of which will be proven at the time of trial;

3. Past and future loss of care, maintenance, services, support, advice, counsel, and consortium which Plaintiff CHERYL L. BERGRUD would have received from Plaintiff PETER L. BERGRUD before his illness and disability caused by his exposure to asbestos;

4. For Plaintiffs' costs and disbursements herein;

5. For prejudgment interest in the amount to be proven at trial; and

6. For such other relief as the Court deems just.

DATED this 9th day of April, 2019.


/s/ Meredith Good
MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
Kelly L. Battley, WSBA No. 53071
Meredith Good, WSBA No. 39890
80 SE Madison Street, Suite 310
Portland, OR 97214
Phone: (800) 358-5922
Fax: (314) 241-4838
Counsel for Plaintiffs

COMPLAINT FOR PERSONAL INJURIES - 6

MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
80 SE MADISON ST, SUITE 310
PORTLAND, OREGON 97214
(314 ) 241-2003 – FACSIMILE (314) 241-4838

# Exhibit 15

# CONSOLIDATED FINANCIAL STATEMENTS DECEMBER 31, 2023



### Anxiety claims

Eight of the Group's subsidiaries that operate or have operated facilities in France classified as containing asbestos, were the subject of anxiety claims brought by current or former employees not suffering from an occupational disease due to asbestos – claiming compensation for prejudice of anxiety suffered as a result of their alleged exposure to asbestos.

As of December 31, 2023, a total of 861 lawsuits had been brought against these companies.

At the same date, the lawsuits have been all definitely completed.

The total amount of compensation paid since the outset of the litigations was €8.8 million as of December 31, 2023 (against approximately €8.5 million as of December 31, 2022).

It should be clarified that the above figures do not take into account suits filed against companies that are no longer part of the Group.

Last, the total amount registered as provision for asbestos-related litigations in France – inexcusable faults lawsuits and anxiety claims – amounted to around €7 million as of December 31, 2023 (compared to around €8 million as of December 31, 2022).

## Situation in the United States

### Measures taken to achieve an equitable and permanent resolution of the former CertainTeed Corporation's legacy asbestos liabilities in the United States

DBMP LLC, an affiliate of CertainTeed LLC based in North Carolina, that holds the legacy asbestos liabilities of the former CertainTeed Corporation, filed, on January 23, 2020, a voluntary petition for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of North Carolina in Charlotte. The matter remains pending. The purpose of the filing is to achieve a certain, final and equitable resolution of all current and future claims arising from asbestos-containing products manufactured and sold by the former CertainTeed Corporation.

DBMP LLC intends to seek court authority to establish a trust under Section 524(g) of the US Bankruptcy Code – a specific provision that is applicable to companies that face substantial numbers of asbestos-related claims – to achieve a fair and equitable resolution of its asbestos-related liabilities. Upon establishment of the trust, current and future plaintiffs with qualifying claims will be able to receive faster payment of their claims without the delay, stress and uncertainty of litigation in the tort system; at the same time, the creation and funding of such a trust will permanently and finally resolve DBMP LLC's asbestos liability.

During the course of this bankruptcy process, which is expected to take up to approximately five to eight years, all asbestos litigations have been stayed and all related costs suspended, providing DBMP LLC with the time and protection to negotiate an agreement to be approved on behalf of all claimants and by the court.

This action was taken as a result of the increasing risks presented in the US tort system. Despite the passage of time, the aging of the population and lessening opportunity for claimants to assert legitimate claims of exposure to the asbestos-containing products of the former CertainTeed Corporation, naming practices in the tort system continued to result in a steady volume of claims against DBMP LLC, with no foreseeable end in sight. In addition, there has been, in general, an escalation of settlement demands and verdicts in the tort system.

Certain adversary proceedings have been filed by representatives of current and future asbestos plaintiffs against DBMP LLC, CertainTeed LLC, Saint-Gobain Corporation, Compagnie de Saint-Gobain and various other parties. No decisions on the merits of the claims have been made and such claims do not affect the Company's financial assessment of the Chapter 11 case.

### Impact on the financial statements

Following the commencement of the proceeding under Chapter 11 of the US Bankruptcy Code on January 23, 2020, the assets and liabilities of DBMP LLC and its wholly-owned subsidiary Millwork & Panel LLC, and in particular the provision for asbestos-related litigation in the United States, are no longer consolidated in the Group's financial statements.

Nonetheless, because of a funding agreement between CertainTeed LLC and DBMP LLC by which CertainTeed LLC has agreed to fund the costs of the Chapter 11 case and, ultimately, the 524(g) trust, in both cases solely to the extent DBMP LLC is unable to do so in full, the Group recorded in its consolidated financial statements a provision corresponding to the amount of the estimated debt against DBMP LLC amounting to $407 million as of December 31, 2023 ($410 million as of December 31, 2022).

The Group's consolidated income for 2023 is not impacted by the ongoing Chapter 11 proceeding described above.

As a result of this bankruptcy proceeding, all legal costs and indemnity payments related to DBMP LLC's asbestos tort claims have been suspended, and no further charges in relation to such claims have been taken in 2023 (as in 2022).

## Situation in Brazil

In Brazil, former employees of Brasilit, that once manufactured fiber cement containing asbestos, suffering from asbestos-related occupational illnesses are offered, depending on the case, either financial compensation alone or lifetime medical assistance combined with financial compensation. Around 1,200 contractual instruments have accordingly been signed to date.

Two class actions were initiated against Brasilit in 2017 by two associations defending former employees exposed to asbestos at the São Caetano (São Paulo state) and Recife (Pernambuco state) plants, asking for their medical assistance and compensation to be revised. First and second instance decisions were rendered in connection with the suit related to the São Caetano plant respectively in July 2020 and July 2021, rejecting the claims of the plaintiffs. The latter have nevertheless appealed the second instance decision. First and second instance decisions were rendered in relation to Recife case, respectively in February and October 2022 rejecting the claiming party arguments. The plaintiff has appealed such second instance decision.

A third class action was initiated against Brasilit in 2019 in Capivari (State of São Paulo) by the Labor prosecutor asking for health insurance, as well as collective moral damages, in favor of employees, former employees and their respective families, as well as subcontractors who were exposed to asbestos. First and second instance decisions were rendered respectively in September 2020 and May 2023 partly in favor of the plaintiffs. In particular, collective moral damages were granted to the plaintiffs, for an amount reduced to BRL 5 million (€0.8 million). Brasilit has appealed the second instance decision.

Brasilit is subject to controls by the Ministry of Labor and continues to comply with all of its legal obligations with regard to medical assistance for its current and former employees.

## NOTE 11    SHAREHOLDERS' EQUITY AND EARNINGS PER SHARE

### 11.1  Equity

#### 11.1.1  Equity

At December 31, 2023, Saint-Gobain's capital stock was composed of 506,438,012 shares with a par value of €4 each (515,769,082 shares at December 31, 2022).

#### 11.1.2  Additional paid-in capital and legal reserve

This item includes capital contributions in excess of the par value of capital stock as well as the legal reserve, which corresponds to a cumulative portion of the yearly net income of Compagnie de Saint-Gobain.

#### 11.1.3  Retained earnings and consolidated net income

Retained earnings and consolidated net income correspond to the Group's share in the undistributed earnings of all consolidated companies.

#### 11.1.4  Treasury stock

Treasury stock is measured at cost and recorded as a deduction from equity. Gains and losses on disposals of treasury stock are recognized directly in equity and have no impact on net income for the period.

Forward purchases of treasury stock are treated in the same way. When a fixed number of shares is purchased forward at a fixed price, this amount is recorded in "Other liabilities" against a deduction from equity under "Retained earnings and net income for the year".

Saint-Gobain shares held or controlled by Compagnie de Saint-Gobain and Saint-Gobain Corporation are shown as a deduction from equity under "Treasury stock" at acquisition cost.

The liquidity agreement signed with Exane BNP Paribas on November 16, 2007 and implemented on December 3, 2007 for a period up to December 31, 2007 has been automatically renewed since that date.

At December 31, 2023, 4,376,475 shares were held in treasury (December 31, 2022: 4,406,990 shares). In 2023, the Group acquired 17,111,277 shares (2022: 18,011,705 shares) directly on the market The number of shares sold in 2023 was 2,935,434 versus 3,174,316 in 2022. 14,206,358 shares were canceled in 2023, compared with 13,177,086 shares in 2022.

For the purposes of a compensation plan set up in January 2008 for certain employees in the United States, Compagnie de Saint-Gobain shares are held by the trustee, Wachovia Bank, National Association. In the consolidated financial statements, these shares are treated as being controlled by Saint-Gobain Corporation.

#### 11.1.5  Number of shares

| | Number of shares | |
|---|---|---|
| | Issued | Outstanding |
| **NUMBER OF SHARES AT DECEMBER 31, 2021** | **524,017,595** | **521,270,908** |
| Group Savings Plan | 4,916,097 | 4,916,097 |
| Stock subscription option plans | 12,476 | 12,476 |
| Shares purchased | | (18,011,705) |
| Shares sold | | 3,174,316 |
| Shares canceled | (13,177,086) | |
| **NUMBER OF SHARES AT DECEMBER 31, 2022** | **515,769,082** | **511,362,092** |
| Group Savings Plan | 4,778,291 | 4,778,291 |
| Stock subscription option plans | 96,997 | 96,997 |
| Shares purchased | | (17,111,277) |
| Shares sold | | 2,935,434 |
| Shares canceled | (14,206,358) | |
| **NUMBER OF SHARES AT DECEMBER 31, 2023** | **506,438,012** | **502,061,537** |

#### 11.1.6  Dividends

The Annual Shareholders' Meeting of June 8, 2023 approved the recommended dividend payout for 2022 representing €2 per share (€1.63 per share for 2021). The ex-dividend date was June 12 and the dividend was paid on June 14, 2023.