FILED & JUDGMENT ENTERED

Christine F. Ramsey

April  29  2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_____
Ashley Austin Edwards
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>     DBMP LLC,<br><br>          Debtor. | Case No. 20-30080<br>Chapter 11 |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants,<br><br>          Plaintiffs,<br><br>v.<br><br>     DBMP LLC and CERTAINTEED LLC<br><br>          Defendants, | Adv. Proc. No. 21-03023 |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants,, each on behalf of the estate of DBMP LLC,<br><br>          Plaintiffs,<br><br>v. | Adv. Proc. No. 22-03000 |

1

|  |  |
|---|---|
| Certainteed LLC, Certainteed Holding Corporation, and Saint-Gobain Corporation, <br><br> Defendants, | |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants, each on behalf of the estate of DBMP LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Compagnie De Saint-Gobain S.A., Saint-Gobain Corporation, Saint-Gobain Delaware Corporation, Certainteed LLC, Certainteed Holding Corporation, Joseph Bondi, Sean Knapp, Lawrence Rayburn, Michael Starczewski, Vincent Dinenna, Robert Panaro, Donald Melroy, Pierre-André De Chalendar, Benoit Bazin, Antoine Vignial, Hubert Reichardt, Daniel Biarneix, Sreedhar Natarajan, Guillaume Texier, Thomas Kinisky, Carol Gray, John Sweeney, Eric Placidet, Mark Rayfield, and Keith Campbell, <br><br> Defendants, | Adv. Proc. No. 22-03001 |

**ORDER AND OPINION GRANTING STAY OF ORDER**

**THIS MATTER** is before the Court upon the Debtor's *Motion for a Stay Pending Appeal*[1] (the "Motion"), filed March 31, 2026, regarding the Court's *Order Partially Granting and Sustaining and Partially Denying Plaintiff's Privilege Motion and Defendants' Objection*[2] (the "Order").[3] On March 31, 2026, the non-DBMP Defendants joined the Motion. *See Joinder to*

---

[1] [Doc. No. 3403; Consolid. Adv. Pro. Doc. No. 415; Fraud. Transf. Adv. Pro. Doc. No. 353; Fid. Duties Adv. Pro. Doc. No. 322].

[2] [Doc. No. 3390; Consolid. Adv. Pro. Doc. No. 411; Fraud. Transf. Adv. Pro. Doc. No. 348; Fid. Duties Adv. Pro. 317]; 2026 WL 973870; 2026 Bankr. LEXIS 883 (Bankr. W.D.N.C. Mar. 16, 2026).

[3] Capitalized terms not otherwise defined herein have the meanings given to them in the Order.

*Motion for Stay Pending Appeal*.[4] On April 7, 2026, the Plaintiffs filed the *Brief in Response*[5] (the "Response"), and on April 10, 2026, the Defendants filed the *Reply in Support*[6] (the "Reply"). On April 15, 2026, the Court held a hearing on the Motion (the "Hearing").[7] At the Hearing, among others, Greg Gordon appeared on behalf of the Debtor, Gabrielle Gould appeared on behalf of the non-Debtor Affiliates, Carrie Hardman appeared on behalf of the Official Committee of Asbestos Personal Injury Claimants, and Felton Parrish appeared on behalf of the Future Claimants Representative. For the reasons below, the Court grants the Motion.

## I.   BACKGROUND

1.      On January 23, 2020, DBMP filed for Chapter 11 relief with the stated goal of establishing a trust under section 524(g) of the Bankruptcy Code. DBMP is one of two successor entities of Old CT, the other being New CT, that were formed three months prior to the Petition Date as a result of the Restructuring, which terminated Old CT's existence and allocated almost all of Old CT's assets to New CT while allocating all of Old CT's asbestos liabilities to DBMP. The Restructuring and DBMP's ensuing bankruptcy filing represent a novel two-part legal maneuver known as the 'Texas Two-Step', whereby an entity seeks bankruptcy relief while limiting the burdens of bankruptcy to only the entity holding the liabilities. DBMP's case is one of only four such Texas Two-Step bankruptcy cases, all of which have been brought in this Court.

---

[4] [Doc. No. 3405; Consolid. Adv. Pro. Doc. No. 416; Fraud. Transf. Adv. Pro. Doc. No. 354; Fid. Duties Adv. Pro. 323].

[5] [Doc. No. 3409; Consolid. Adv. Pro. Doc. No. 418; Fraud. Transf. Adv. Pro. Doc. No. 356; Fid. Duties Adv. Pro. 325].

[6] [Doc. No. 3410; Consolid. Adv. Pro. Doc. No. 419; Fraud. Transf. Adv. Pro. Doc. No. 357; Fid. Duties Adv. Pro. 326].

[7] *See Transcript for Hearing/Trial held on 4/15/2026* [Doc. No. 3419; Consolid. Adv. Pro. Doc. No 425; Fraud. Transf. Adv. Pro. Doc. No. 363; Fid. Duties Adv. Pro. 333] (the "Hearing Transcript").

2.      The Plaintiffs have challenged DBMP's filing and the Defendants' Texas Two-Step by bringing three adversary proceedings against the Defendants (the "Adversary Proceedings"):

- (1) Adv. Pro. No. 21-03023, seeking to substantively consolidate DBMP and New CT;
- (2) Adv. Pro. No. 22-03000, seeking to prove the Defendants' Texas Two-Step constituted a fraudulent transfer; and
- (3) Adv. Pro. No. 22-03001, seeking to prove the Defendants' Texas Two-Step constituted a breach of fiduciary duty and related misconduct.

Discovery is ongoing for the first two Adversary Proceedings while discovery for the third is stayed pending resolution of the second.[8]

3.      Discovery for the Adversary Proceedings has languished for years due to disputes over the Defendants' asserted privilege. At the outset, the Plaintiffs contend that the Defendants blocked disclosure of "nearly half" of documents responsive to the Plaintiffs queries on the grounds they were privileged (the "Documents").[9] Additionally, during the Plaintiffs' depositions of various personnel of the Defendants (the "Depositions" and the "Deponents"), the Defendants objected to many lines of inquiry as invading privilege (the "Deposition Objections").[10] While the Defendants have withdrawn their privilege claims as to some of the Documents and Deposition Objections, they have maintained the validity of most.[11]

4.      On August 23, 2021, the Plaintiffs filed the Privilege Motion, the operative filing ultimately leading to the Order. Therein, the Plaintiffs argued that the Defendants' privilege assertions were invalid on two grounds: (1) the crime-fraud exception, due to the Defendants' Texas Two-Step constituting a fraudulent transfer; and/or (2) at-issue waiver, because at least some

---

[8] *See* Order, ¶ 49 n. 177.
[9] *See id.*, ¶ 53.
[10] *See id.*, ¶ 54.
[11] *Cf. id.*, ¶ 100.

of the Defendants' asserted privilege related to matters that the Defendants had affirmatively injected.[12]

5.      Sometime prior to February 16, 2023, the parties agreed to refer their privilege disputes to a discovery referee and ultimately selected the Honorable Judge Don Bridges (the "Referee") to serve in this role.[13] The parties further agreed that the Court would review any recommendations by the Referee *de novo*.[14] On March 4, 2024, the Referee filed the First Report, which recommended primarily overruling some Deposition Objections on non-waiver bases but also that at-issue waiver had occurred.[15] On April 24, 2025, the Referee filed the Final Report, which recommended that, for the approximately 70% of the Documents that the Referee reviewed, approximately 40% required disclosure because they were not privileged or were subject to the at-issue waiver discussed in the First Report, as well as which Documents would require disclosure if the Court found the crime-fraud exception applied.[16]

6.      Following the Final Report, the parties submitted briefing on these recommendations and the Privilege Motion generally.[17] On September 24, 2025, the Court held a

---

[12] *See id.*, ¶ 55.

[13] *See id.*, ¶¶ 60–61.

[14] *See id.*, ¶ 60.

[15] *See id.*, ¶¶ 66–68 (discussing how the First Report recommended that (1) various Deposition Objections be overruled as they blocked nonprivileged information, (2) the Defendants had waived privileged as to the intent behind DBMP's bankruptcy filing due to various submissions, and (3) reconvened depositions feature a proctor in part since some Deposition Objections constituted speaking objections);

[16] *See id.*, ¶ 71–72 (discussing how the Final report recommended (1) that, of the approximately 2,700 Documents that the Referee reviewed, approximately 1,110 be disclosed in part or in whole (a) because "their content was purely factual or involved non-legal discussions," or (b) because of the Defendants' DBMP's bankruptcy filing submissions discussed in the First Report, and (2) that, if the Court sides with the Plaintiffs on the fraudulent transfer question underpinning the crime-fraud exception dispute, than many additional of the Documents relating to the Funding Agreement topic should be disclosed).

[17] *See id.*, ¶ 73 & notes 229 & 230.

hearing on the Privilege Motion, the Reports, and the briefing on the same, after which the Court took the matters under advisement. On March 16, 2026, the Court entered the Order following an in-camera review of the nearly 4,000 Documents. On the crime-fraud exception question, although the Court provided some guidance, it ultimately deferred deciding the issue in the Order since the Court had found other privileged materials required disclosure on alternative grounds.[18]

7.       First, the Court found in the Order that the asserted privilege over parts or all of approximately 300 of the Documents, and as to various Deposition Objections, did not exist because the information therein failed to meet the requirements for privilege or constituted improper speaking objections.[19] Second, the Court found the privilege for approximately 125 Documents and for one Deposition Objection had been waived by the Defendants because those Documents comprised drafts of documents that were intended to be published or otherwise disclosed beyond the privilege relationship, pursuant to Fourth Circuit case law.[20] Third, the Court found a limited at-issue waiver after first resolving the applicable standard given the lack of uniformity between courts on the issue.

8.       At-issue waiver is directed at precluding a privilege asserter from relying on privileged communications while simultaneously shielding the privilege objector from accessing such communications.[21] This principle, central to evidentiary privileges, predates the modern

---

[18] *See id.*, ¶¶ 179–190.

[19] *See id.*, ¶ 98 (identifying "documents such as histories of mesothelioma, articles, meeting requests, and purely business emails"); *id.*, ¶¶ 99–121.

[20] *See id.*, ¶¶ 221–224 (citing and discussing *In re Grand Jury Procs.*, 727 F.2d 1352 (4th Cir. 1984), *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984), *United States v. Under Seal (In re Grand Jury Subpoena)*, 341 F.3d 331, 336 (4th Cir. 2003), *Taylor v. Wolbert (In re Wolbert)*, 2010 WL 8971772 (Bankr. W.D.N.C. Feb. 17, 2010)).

[21] *See* Order, ¶ 227.

attorney client privilege itself.[22] Of the varying existing approaches for at-issue waiver, two approaches, which the parties principally focus on and argue, are often contrasted:

- (1) The *Hearn* test, which consists of three elements: (1) an assertion of the privilege that was a result of some affirmative act by a party; (2) the relevance to the case of the protected information put at issue; and (3) the criticalness of the protected information for the opposing party to litigate the case.[23]
- (2) The *Rhone* rule, under which at-issue waiver may only occur when a party "disclos[es] or describe[es] [] attorney client communication" "to prove [their] claim or defense."[24]

Both *Hearn* and *Rhone* are widely criticized: *Hearn* for weakening the privilege by adopting an overly broad 'relevance' standard, and *Rhone* for enabling strategic abuse by collapsing at-issue waiver into other waiver doctrines based on disclosure or description.[25]

9.      While the number of federal and state courts which, at least in name, adopt *Hearn* or *Rhone* are roughly even,[26] those courts have done so with significant modification or later evolution.[27] Similarly, many courts adopt hybrid or entirely different approaches. Although the Fourth Circuit has cited both *Hearn* and *Rhone* for illustrative purposes, and rejected some versions of *Hearn*, it has not adopted a test for at-issue waiver, resulting in divergent approaches among

---

[22] *See id.*, ¶ 227 n. 379.

[23] *See id.*, ¶ 229 (citing *Hearn v. Ray*, 68 F.R.D. 574 (E.D. Wash. 1975)).

[24] *See id.*, ¶¶ 235–238 (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994)).

[25] *See id.*, ¶¶ 230–231; *id.,* ¶¶ 242–244.

[26] *See id.*, ¶ 230; *id.,* ¶ 241.

[27] *See id.*, ¶ 231 (discussing how courts that adopt *Hearn* have heightened its first and third elements); *id.,* ¶¶ 267–270 (discussing how the Third Circuit has abrogated *Rhone's* rule by adopting anticipatory waiver, which arises without disclosure or description of privilege communication (or any consideration of the specific case facts) so long as privileged communications are so central to the privilege asserter's claim that their reliance on the communications seems inevitable).

courts within the Circuit.[28] While this Court has indicated in this case a preference for *Rhone* over

*Hearn*, it has also endorsed waiver outside *Rhone's* categorical rule.[29]

10.     The Order did not adopt *Hearn* or *Rhone*, but rather adopted an alternative approach

that recognizes *Hearn's* weaknesses and treats *Rhone* as the governing rule in most contexts,

subject to one key carveout: certain dispositive legal state-of-mind submissions. Specifically,

under this test:

- (1) "[A] legal state of mind submission can waive privilege as to the topic of that submission" if there is "a legal nexus to the submission, such that it is ex facie and objectively assurable that [an] attorney's advice constitutes much of the information underpinning that submission;" and
- (2) fairness so requires based on a two-part inquiry examining (a) the "centrality" or importance of the submission and (b) the "necessity of piercing privilege to rebut the assertion."[30]

Under this limited test, and specifically in this case with the benefit of in-camera review, the Court

found that the Defendants had committed at-issue waiver by affirmatively making certain critical

state-of-mind submissions on legal matters to the Court, primarily on the Petition Date.

11.     These submissions spanned four topics: (1) the decision for DBMP to file

bankruptcy; (2) the intent and effect of the Funding Agreements; (3) the intent and effect of the

Defendants' Texas Two-Step as to the various claimants constituting the Plaintiffs; and (4) the

inclusion of Millwork & Panel in DBMP.[31] The Order found that the last three topics satisfied the

above test,[32] whereas the first did not.[33]

---

[28] *See id.*, ¶¶ 245–251.

[29] *See id.*, ¶ 278 & n. 449.

[30] *See id.*, ¶ 287–288.

[31] *See id.*, ¶¶ 297–298.

[32] *See id.*, ¶¶ 311–342.

[33] *See id.*, ¶¶ 300–310

12. The Court found that this waiver required disclosure of approximately 175 of the Documents in part or in whole, as well as the overruling of certain Deposition Objections. Combined with the other Documents found not privileged, this resulted in the Order directing disclosure, in whole or in part, of approximately 600 Documents. The Order explicitly stayed "the effect of th[e] [O]rder for thirty days," partly "to permit any post-ruling motions or interlocutory appeals."[34]

13. On March 30, 2026, the Defendants filed the *Motion and Joinder of CertainTeed LLC, CertainTeed Holding Corporation and Saint-Gobain Corporation in the Debtors Motion for Reconsideration and Amendment of Order* [Doc. No. 3400] (the "Reconsider Motion"). While the Defendants have indicated they intend to appeal the Order to both the District Court and the Fourth Circuit, they have not yet filed a notice of appeal. This appears to be due to the pending Reconsider Motion.

14. Additionally, on April 21, 2026, a scheduling order was entered for the upcoming estimation trial of the Defendants' asbestos liabilities (the "Estimation Trial"). See *Amended Agreed Case Management Order for Estimation of the Debtor's Current and Future Mesothelioma Claims* [Doc. No. 3417]. This Estimation Trial is scheduled to take place between September and November of 2028.

## II.   DISCUSSION

15. Federal Rule of Bankruptcy Procedure 8007 allows a party to seek a stay of a bankruptcy court order pending an appeal of the same, *see* Fed. R. Bankr. P. 8007(a)(1)(A), before or after any notice of appeal has been filed. Fed. R. Bankr. P. 8007(a)(2). The Supreme Court has delineated that a party requesting a stay pending appeal must establish, and courts must weigh, four factors:

---

[34] *See id.*, ¶ 344.

9

"'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies'."

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the traditional standard are the most critical." *Id.*, at 434. The movant "bears the burden" of establishing the four factors. *Id.*, at 433–34. "'A stay is not a matter of right, even if irreparable injury might otherwise result'," but "instead 'an exercise of judicial discretion'." *Nken*, 556 U.S. at 433 (citation omitted).[35]

16.     The parties dispute whether a stay of the Order is warranted under these factors, which the Court addresses below. The parties agree, however, that any stay should carve out the production of approximately 100 Documents that the Order found not privileged and that Defendants have agreed to produce notwithstanding any appeal, as well as the reconvening of the Depositions for questioning not implicated by the Order's draft or at-issue waiver rulings.[36]

17.     As to the scope of timing of any stay, the Defendants request a stay extending until 30 days after the resolution of their appeal and any other post-ruling relief sought by the Defendants with respect to the Order.[37] The Plaintiffs argue that, if a stay is granted, it should be implemented in limited stages and revisited as the procedural posture becomes clearer, specifically first upon the resolution of the Reconsider Motion and the filing of a notice of appeal of the Order.[38] The Defendants object to any such iterative stay, arguing that it would be cumbersome to require additional briefing at various stages of the appellate process and unnecessary, as the Plaintiffs may

---

[35] *In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012) ("Stays pending an appeal are only granted in limited circumstances" (citations omitted)); *In re Hopeman Bros.*, 667 B.R. 101, 105 (Bankr. E.D. Va. 2025) ("Even if the four elements are established, the granting of a stay is discretionary" (citation omitted).).

[36] *See* Response, ¶¶ 43–44; Reply, ¶¶ 20–21.

[37] *See* Motion, p. 2.

[38] *See* Response, ¶ 43.

move to dissolve any stay at any time.[39] The Court will discuss this disagreement below, as it mainly relates to the third factor, nonmovant harm.

## A. First Factor: Likelihood of Success on Appeal

18.  The first factor, the success factor, requires the movants to show that there is a strong likelihood of success on appeal. For this factor, it does not suffice for a movant to establish that the "chance of success" is "'better than negligible'" or that success is "a mere possibility"; rather, the movant must make the required "strong showing." *Nken*, 556 U.S. at 434 (citations omitted). "[S]imply restating previous arguments from earlier filings" does not suffice; a movant "must instead show 'something more' than what it has argued previously." *Wellington*, 631 B.R. at 838 (citations omitted).[40] This requires, at a minimum, some "reason for revisiting the [c]ourt's conclusions on the merits," such as "'new information, authority or analysis" sufficient to persuade the court to reconsider its prior decision. *Bullock*, 603 B.R. at 416 (quoting *In re Special Proceedings*, 840 F. Supp. 2d. at 372). Importantly here, it may also be satisfied where "'the issue to be appealed is an issue of *first impression in the circuit, or that district courts have disagreed on the issue*'." *Wellington*, 631 B.R. at 839-40 (citation omitted) (emphasis added).

19.  For the success factor, the Defendants first rely on the fact that the Order resolved privilege questions that were (1) difficult, lacked appellate guidance, and have divided courts, and (2) warrant special protection against erroneous rulings given the important and critical role of privilege in the legal system.[41] Second, Defendants argue the Order's at-issue rule (1) contravenes

---

[39] *See* Reply, ¶ 22.

[40] *See also, e.g.*, *In re Bullock*, 603 B.R. 411, 416 (Bankr. S.D. Ill. 2019) ("'[M]ere repetition' of [] prior arguments is insufficient to satisfy [the success factor]" (quoting *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008).); *Palomo*, 2019 U.S. Dist. LEXIS 232712, at *1 (holding "merely restat[ing] arguments and recit[ing] cases from his previous filings" did not establish the success factor).

[41] *See* Motion, pp. 2–3.

Fourth Circuit precedent requiring disclosure or description,[42] (2) conflicts with other decisions within the Fourth Circuit addressing at-issue waiver,[43] (3) is inconsistent with broader privilege precedent by (a) rejecting that principle that privilege rules should be predictable,[44] (b) adopting a standard based not on the privilege asserter's objective conduct but on the specifics of their lawyer,[45] and (c) permitting waiver to arise from a party's assertion of privilege in response to deposition questioning,[46] and (4) effectively collapses into a relevance inquiry that lacks meaningful limiting principles such that it will almost always result in waiver.[47]

20.    In response, the Plaintiffs first emphasize the "strong showing" required for Defendants to establish the success factor.[48] The Plaintiffs argue that this standard makes the Defendants' second argument insufficient because it merely restates arguments previously advanced in briefing on the Order, which the Court rejected, without explaining why those conclusions were erroneously rejected by the Court.[49] Additionally, the Plaintiffs reject the

---

[42] *See id.*, p. 4 (citing *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018), *Smith v. Scottsdale Ins. Co.*, 621 F. App'x 743, 746 (4th Cir. 2015), *Shaheen v. WellPoint Cos.*, 490 F. App'x 552, 557 (4th Cir. 2012)).

[43] *See id.*, pp. 4–5 (citations omitted).

[44] *See id.*, pp. 5–6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) (stating that "uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all").

[45] *See id.*, pp. 6–7 (citation omitted).

[46] Motion, p. 7 (citing *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 1998 WL 1742589, at *6 (E.D.N.C. Sept. 28, 1998) (holding that privilege does not allow "a party to justify piercing his adversary's attorney-client privilege by virtue of its own injection of the privilege into the lawsuit"); *Scottsdale*, 40 F. Supp. 3d at 723 (holding that, "in order to impliedly waive the attorney-client privilege, the party asserting the privilege must take some affirmative action to place its attorney's advice in issue")).

[47] *See id.*, pp. 7–8.

[48] *See* Response, ¶ 25–26.

[49] *See id.*, 27–28. Additionally, Plaintiffs argue that Defendants' singular focus on the legal questions resolved by the Order and their failure to engage with the Order's factual bases for satisfying its at-issue rule prevents Defendants from establishing the success factor, because waiver involves questions of fact subject to the stringent "clearly erroneous" standard on appeal. *See* Response, ¶ 29

Defendants' first argument, contending that the difficulty or importance of the question appealed does not establish likelihood of success on appeal, much less a strong showing required to satisfy the success factor.[50]

21.     The Court finds that Defendants have established the success factor through their first argument, and that it weighs in favor of a stay. First, the questions resolved by the Order are sufficiently difficult that appellate review is warranted, and the existing division among courts further underscores the appropriateness of review. Second, the importance of the privilege issues in this case also weighs in favor of allowing interlocutory review. The Court disagrees with the Plaintiffs that the success factor requires a showing that the Order is likely to be reversed on appeal. In the Court's view, the combination of the lack of clarity in the governing law and the importance of the issues weighs in favor of the requested relief.

22.     However, the Court rejects Defendants' second argument for establishing the success factor, because it restates the Defendants' prior arguments and at times misconstrues the Order.

23.     Relatedly, the Defendants' argument that this rule conflicts with Fourth Circuit precedent ignores the Order's extensive explanation of why the authorities they cite do not require adopting *Rhone's* disclosure-only rule. As the Order explains, the Fourth Circuit in *Sky Angel* rejected a finding of waiver of privileged communications on a topic where those communications had not been disclosed, even though the privilege asserter had made state-of-mind submissions on that topic to litigate the case. The critical basis for that holding, however, was that the relevant

---

(citing *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986); *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 123 (4th Cir. 1994); *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).

[50] Hearing Transcript, 59:21–60:20.

topic concerned the party's understanding of nonlegal facts, not its understanding of the law.[51]

Consistent with that distinction, the Order held that state-of-mind submissions may support a

finding of waiver of privilege without disclosure only where the submissions themselves, without

regard to whether privileged communications on the topic occurred, sufficiently concerned legal

matters to make reliance on legal advice reasonably certain. Those were not the circumstances in

*Sky Angel*, and that decision therefore did not foreclose the rule adopted by the Order.[52]

24.     Similarly, Defendants' assertion that the Order's at-issue waiver rule "allow[s] for

[] waiver even where [the privilege asserter] does not affirmatively invoke or rely on" privileged

materials mischaracterizes the Order, which makes it clear that the rule focuses exclusively on

---

[51] *See* Order, ¶ 248 (explaining that *Sky Angel* involved a privilege objector seeking privileged communications about the privilege asserter's understanding of a distribution system using the public internet, based on employees' testimony that they were unsure whether the privilege objector would use the public internet; and explaining that *Sky Angel* found "no record" support that the testimony relied on privileged communications "merely because [the privilege objector] sought legal advice on the same topic as its employees' testimony").

[52] *Shaheen* likewise does not require following *Rhone*'s disclosure-only rule, because its facts also did not involve state-of-mind submissions directly about the law. They involved a broader topic concerning business decisions that merely implicated the law. *See, e.g.*, Order ¶ 247. Additionally, although Smith rejected waiver where a privilege asserter made state-of-mind submissions about the law after seeking legal advice on the same legal topic, the privilege asserter there could also prove that those submissions were developed sufficiently independently of the legal advice, so reliance on privileged communications could not be assumed. That holding turned precisely, and only, on the proof present in that case. *See, e.g.*, Order ¶ 249.

Finally, the Defendants also assert that the Order declined to follow Supreme Court guidance that privilege rules be predictable. *See* Motion, pp. 5–6 (describing the Order as declining to follow *Rhone* ""due to concerns that 'predictable rules … can effectuate their own manipulation'" (citing Order, ¶ 282)). This description misconstrues the Order as the Defendants quotation omits the key adverb "perfectly" preceding "predictable," and thus broadens the noncontroversial point actually made there that, simply, categorical rules have drawbacks and are not always demanded to extremes. Contrary to this distortion, the Court strongly believes in the importance of upholding predictability as to privilege; indeed, predictability was why the Court did not adopt other approaches encompassed by the Defendants' suggested rules. *Cf, e.g.*, Order ¶ 324 (declining to adopt the anticipatory waiver test allowed under *Rhone* because 'super-relevance' is no less opaque than simple relevance).

whether such affirmative reliance occurred. *See, e.g.*, Order ¶ 278. In particular, the rule applies only where a privilege asserter has affirmatively elected, without adversarial provocation, to litigate its case in significant part based on legal state-of-mind submissions; any resulting waiver is exclusively a function of those submissions. This requirement plays a central gatekeeping role in the Order's at-issue waiver analysis.[53]

25.     Instead, the Defendants argue that the first part of the second step, considering "'the centrality of th[e] submission to the dispositive or critical issues in a case,'" amounts to a heightened relevance standard.[54] However, this description ignores that this consideration is, first, indeed heightened, and, second, only one of three elements, with the threshold element being the privilege asserter's own affirmative litigation choices. The Defendants further contend that the second part of the inquiry, which considers the necessity of piercing privilege to rebut the submission, "will always or almost always be satisfied" because a privilege objector "typically cannot obtain the evidence through other means" when privilege bars disclosure. On this view, they argue, the Order's rule would invariably find waiver except for the presumably rare circumstance where privileged information is relevant but not "central."[55] However, that argument is both conceptually flawed and contradicted by the Order itself, which demonstrates

---

[53] The Defendants also misconstrue the Order by arguing that it adopted the rule based on their lawyers' particular resources. *See* Motion, p. 6 (citing Order ¶ 290). The cited language was not a basis for the rule. Rather, that point was to quell any discomfort with the unfortunate fact that, whenever a trial court is not bound by a specific standard and must decide between different available approaches, not every client may be able to afford counsel that can advise on those approaches and how to avoid their consequences. The Court simply noted how this concern was not implicated here given that, when the Defendants made their legal state-of-mind submissions, there existed more than enough practitioner guidance urging attorneys advise their clients that such submissions could cause waiver, for any lawyer to be on notice of that potential consequence. In any event, the rule would apply even if the concern was implicated since, of course, substantive legal rules apply to parties regardless of a party's representation.

[54] *See* Motion, p. 7.

[55] *See* Motion, pp. 7–8.

15

that this purported "rare instance" occurred here with respect to the DBMP Filing Decision topic, the most heavily litigated issue in the briefing and before the Referee, which the Court nonetheless found did not require any disclosure of privileged materials.[56]

26.     Despite the above issues with the Defendants' arguments on these points, the Court finds that the Defendants have established the success factor and that it weighs in favor of a stay on the basis that review of the questions resolved by the Order is sufficiently warranted.

## B.  **Second Factor: Irreparable Harm to the Movant**

27.     The second stay factor, the movant harm factor, considers what irreparable harm, if any, the movant will suffer absent a stay. Harm is irreparable when "it 'cannot be fully rectified by the final judgment after trial.'" *Mt. Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 216 (4th Cir. 2019) (citation omitted). "[S]imply showing some 'possibility of irreparable injury' [] fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citation omitted). "[T]he required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent,'" and requires a "clear

---

[56] The Defendants offer the related (and also restated) argument that the Order "perversely" contravenes the rule that waiver cannot arise due to a privilege objector's deposition questions and/or the privilege asserter's objections to those question, since its rule does not per se disallow deposition testimony from playing a part in the analysis and thus See Motion, p. 7 (citing Order ¶ 286; *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 1998 WL 1742589, at *6 (E.D.N.C. Sept. 28, 1998)).

However, that description overextends the actual role deposition testimony plays in the analysis. The rule adopted simply incorporated the noncontroversial point that, when a waiver has occurred, deposition testimony can diminish the necessity of what that waiver would otherwise require. The Defendants are thus attacking the exit ramp that exists for their very benefit by offering an opportunity to avoid or limit the consequences of their own affirmative litigatory choices. That reasoning is flawed because, as the Order explained, an opportunity to avoid a consequence does not become the cause of that consequence if the opportunity does not prevail. *See* Order ¶¶ 280–82 & 286. The Defendants cannot assert this exit ramp punishes them for objecting since, as the Order explained, the Defendants should have objected in the Depositions as they did since no waiver had been found yet; however, those objections do not absolve their prior submissions causing a potential waiver. *See* Order ¶ 286.

showing" of the same. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

28.     The Supreme Court has held that courts can remedy an erroneous "disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 109 (2009). The Fourth Circuit in *In re Search Warrant Issued June 13, 2019* nevertheless recognized that an opposing party's "review of privileged materials seriously injures the privilege [asserter]" for purposes of the movant harm factor. 942 F.3d 159, 175 (4th Cir. 2019), as amended (Oct. 31, 2019). In *In re Grand Jury 2021 Subpoenas*, the Fourth Circuit further explained such injury arises because, "where [] privilege [] is concerned, once the cat is out of the bag, there is effectively no perfect remediation." 87 F.4th 229, 247 (4th Cir. 2023). This injury "var[ies] in [] significance" between specific cases, with "some [] be[ing] momentous, [while] others are more mundane," while the availability of interlocutory review for "some of the more consequential [] privilege rulings" and "protective orders [] limit[ing] [] spillover effects" for the rest makes this injury "'only imperfectly reparable.'" *Mohawk*, 558 U.S. at 112.

29.     To establish the movant harm factor for a stay, the Defendants argue the point from *Search Warrant* and *Grand Jury* above that an erroneous disclosure of privileged material is irreparable, as well as this Court's prior recognition of the same.[57] Specifically, the Defendants argue that the Plaintiffs' review of privileged materials deemed waived by the Order, even if that ruling is later reversed and the materials excluded, "could inform Plaintiffs' litigation strategy, including with respect to further depositions and document requests," and thereby allow the Plaintiffs to further pierce the Defendants' privilege beyond disclosed materials. The Defendants

---

[57] *See* Motion, p. 8 (citing *Search Warrant*, 942 F.3d at 175; Nov. 16, 2022 Hr'g. Tr. 58:6-9; *Grand Jury*, 87 F.4th at 247).

17

further contend that such review could "potential[ly] [] irreversibly shape the conduct of a complex, long-running set of proceedings."[58]

30.     The Plaintiffs reject the Defendants' assertion that this harm suffices to satisfy the movant harm factor, primarily on the grounds that various safeguards exist, apart from a stay, that would eliminate or at least mitigate such harm. The Plaintiffs first submit that (1) their review would remain strictly confidential, as public dissemination of evidence not yet admitted is already barred by both the Order and a separate confidentiality agreement in this case, and (2) they are willing to enter into an additional protective order to address any remaining concerns not addressed by the existing protections.[59] The Plaintiffs argue that such protective measures are generally sufficient to address any injury from erroneous disclosure and render a stay unnecessary in most cases.[60]

31.     Second, the Plaintiffs submit that various procedural mechanisms exist to prevent Plaintiffs from using their review of materials deemed waived under the Order to further pierce the Defendants' privilege beyond those materials, while an appeal of the Order is pending or in the event of reversal.[61] Third, the Plaintiffs submit that if the Order is reversed, the privileged materials reviewed under it "could be withdrawn from use, and their contents excluded from further

---

[58] Reply, ¶¶ 11–12.

[59] See Plaintiffs Response, ¶ 30; Hearing Transcript, 49:25–50:4 (citing *Agreed Protective Order Governing Confidential Information* [Doc. No. 251]).

[60] See Response, ¶¶ 30–31 (citing *Mohawk*, 558 U.S. at 109 & 112; *Adair v. EQT Prod. Co.*, 2012 WL 2526982, at *4 (W.D. Va. June 29, 2012) (holding that a protective order precluding public disclosure provides adequate protection for documents allegedly subject to privilege); *Loboa v. Women's Health All., P.A.*, 2019 WL 5459176, at *3 (E.D.N.C. Oct. 24, 2019) (denying motion to stay and holding that movant failed to show irreparable harm from disclosure of assertedly protected information)).

[61] *See* Hearing Transcript, at 48:8–49:24 (citing Fed. R. Civ. P. 26(c), 30(c)(2), 34(b)(2)(C), 45(d)(2)(B), 45(d)(3); Fed. R. Evid. 502(d)).

proceedings."[62] The Plaintiffs contend that the combination of these safeguards "is an adequate remedy in place to safeguard the Debtor's asserted privilege interests."[63]

32.    The Court finds that Defendants have sufficiently established the movant harm factor to weigh in favor of a stay. In particular, the Court believes that Plaintiffs' review of the waived privileged documents, if the Order is reversed, could constitute irreparable harm to the Defendants' case given the reality that the Plaintiffs would still have learned information otherwise potentially protected by privilege. Even if the Plaintiffs cannot or do not directly use the materials from which they learned the information, it is not improbable that the Plaintiffs could, using that knowledge, find other nonprivileged and admissible evidence for the information. That possibility would result in the Plaintiffs having gained an advantage in this case solely due to a potentially reversed ruling and thus produce an injustice to the Defendants. Formal exclusion of the privileged materials, and the other safeguards the Plaintiffs submit, seem unlikely to completely foreclose this possibility.

---

[62] See Response, ¶ 31.

[63] At the hearing, the Plaintiffs argued that their review of the waived privileged materials would not harm DBMP's estate, even if the Order were erroneous, because they are estate representatives charged with investigating and pursuing estate causes of action. *See generally* Hearing Transcript, 45:19–47:14. The Plaintiffs argued that access to the materials would help them stress-test the Defendants' assertions and assess potential estate claims. *See id.* The Plaintiffs also argued that any harm to DBMP would be minimal given its status as a shell company with no employees, operating only as a holding company for Millwork & Panel LLC, which runs two plants and whose sole customer is the CertainTeed enterprise. *See id.* Because the materials allegedly do not contain trade secrets or customer data, Plaintiffs contended that disclosure would not materially affect DBMP's limited business or the CertainTeed enterprise. *See id.* Instead, the information would only help inform the estate and the Court about DBMP's reasons for seeking bankruptcy relief. *See id.*

The Court finds this argument compelling and considered it when drafting the Order. But because Plaintiffs did not raise it in the Motion briefing or the briefing on the Order, the Court deems it too late to weigh significantly now. The Court notes this is not the first time the Plaintiffs have waited to raise a rather substantive argument in a hearing that was unbriefed. While nothing necessarily precludes this, it creates a certain unfairness to the opposing party.

33.     While the Court recognizes that the harm establishing the movant harm factor is not perfectly concrete, at this juncture, the harm is substantial enough to outweigh its somewhat speculative nature.

## C. Third Factor: Substantial Harm to the Nonmovant

34.     The third factor, the nonmovant harm factor, considers whether the nonmovant will suffer substantial harm from a stay. Any stay of ruling necessarily entails some harm to the nonmovant since it delays relief granted under the stayed order. However, "[the] mere assertion of delay does not constitute substantial harm," at least if "minimized by expedition" in resolving the appeal, given that "[s]ome delay would be occasioned by almost all interlocutory appeals." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003). Moreover, although "'justice delayed is justice denied,' it is also true that justice rushed may be no justice at all." *Sweeney v. Graham*, 2025 U.S. App. LEXIS 5901, at *42 (4th Cir. Mar. 13, 2025).

35.     Still, delay can constitute substantial harm where specific circumstances make the delay uniquely unfair to the nonmovant. Thus, substantial harm to the nonmovant from delaying litigation "is certain [] where plaintiffs have mesothelioma, asbestosis, or pleural disease, or where decedents' survivors await compensation for support." *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 441 (5th Cir. 2001); *cf. Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127–28 (4th Cir. 1983) ("Of particular significance in balancing the competing interests of the parties in the case at bar are the human aspects of the needs of a plaintiff in declining health as opposed to the practical problems imposed by the proceedings in bankruptcy, which very well could be pending for a long period of time. A stay under such circumstances would work manifest injustice to the claimant.").

36.     Similarly, substantial nonmovant harm exists when "[a] stay would continue to delay resolution of [an] action" that has already been delayed for years. *Goldberg v. Skyline Tower Painting Inc.*, 2024 U.S. Dist. LEXIS 72430, at *8 (D. Md. Apr. 22, 2024). However, such continued delay is not sufficient to satisfy the harm factor if it "maintain[s] the status quo pending

20

review" where the delay prior was (1) due to nonaction on the nonmovants' part in advancing their case and (2) dwarfs the estimated delay a stay pending appeal will involve. *West Virginia v. United States EPA*, 90 F.4th 323, 332 (4th Cir. 2024).

37.     Additionally, given that "[e]videntiary prejudice encompasses [] lost, stale or degraded evidence or witnesses whose memories have faded or who have died," *Ray Communs., Inc. v. Clear Channel Communs., Inc.*, 673 F.3d 294, 305 (4th Cir. 2012), delay from a stay can constitute substantial harm where it does not just postpone resolution of a case but also could materially alter the nonmovant's ability to litigate the same. *See, e.g.*, *Pelt v. United States Dep't of Homeland Sec.*, 2023 U.S. Dist. LEXIS 85450, at *9 (D. Md. May 15, 2023).

38.     The Plaintiffs argue that the nonmovant harm factor weighs against a stay because the Defendants' requested stay is (1) broad and indefinite, (2) would further delay the Adversary Proceedings by postponing not only a final resolution but also necessary preparation for the Plaintiffs to proceed, and (3) would materially and irreparably harm the Plaintiffs' case through continued loss or degradation of critical evidence.[64]

39.     The Defendants argue that the Plaintiffs have not shown substantial harm from a stay based on further delay because the Plaintiffs are responsible for the delay in the Adversary Proceedings to date,[65] whereas the Defendants are willing to mitigate any delay by certifying the Order for direct appeal to the Fourth Circuit.[66] Additionally, the Defendants argue that any harm is minimized because they have agreed to produce approximately one-sixth of the Documents

---

[64] Key witnesses may no longer be employed by the Defendants, and at least one deponent has passed away.

[65] *See* Motion, pp. 10–11 (asserting that (1) the Plaintiffs reraised discovery requests two years ago, with which the Defendants have "promptly" responded and/or complied, whereas the "Plaintiffs often waited months to respond," as well as that (2) the Plaintiffs "have been slow to advance other litigation matters" such as by reraising the common-interest doctrine question in briefing for the Order after it first arose three years ago).

[66] *See* Reply, ¶ 30.

found to be discoverable by the Order.[67] Lastly, the Defendants argue that even without a stay, some delay in the Adversary Proceedings is inevitable given (1) the completion of ongoing discovery and (2) the pending 2028 Estimation Trial which will determine whether DBMP is insolvent, as Plaintiffs allege in the Adversary Proceedings.[68]

40.     The Court finds that the nonmovant harm factor may be sufficiently established to weigh against a stay at this juncture. First, as to the Defendants' assertion that the 2028 Estimation Trial must occur prior to the Adversary Proceeding, the Court notes that the manner in which the Plaintiffs advance their case is their prerogative, subject to applicable law. Second, further delay poses a risk of substantial prejudice to the Plaintiffs' case with respect to key Deponents. As time passes, evidence may degrade due to the limitations of human memory. and additional Deponents may become unavailable.

41.     However, at this juncture, the Court views this factor as not significant enough to warrant denying a stay. Crucially, as Defendants themselves note, the Plaintiffs can move to dissolve any stay should the period for resolution of an interlocutory appeal extend to a point that would cause substantial harm to Plaintiffs.

**D.  <u>Fourth Factor: Public Interest</u>**

42.     The fourth factor, the public interest factor, considers the public's interest in granting the stay. In the privilege context, this factor weighs (1) the public interest in safeguarding privilege from erroneous rulings versus (2) the public interest in the advancement and ultimate adjudication of the stayed litigation. *Cf., e.g., FTC v. Boehringer Ingelheim Pharm., Inc.*, 241 F. Supp. 3d 91, 101 (D.D.C. 2017) (holding that the public interest factor "does not militate either in

---

[67] *See* Motion, p. 9 (stating that "fewer than 500 documents would be at issue in [the Defendants'] appeal, as this Court in the Order found only 573 (of over 3,000) subject to disclosure, and [the Defendants] expect[] to produce approximately 100 of those 573").
[68] *See id.*

favor of or against a stay" where the interest in fair and consistent application of privilege rules is counterbalanced by the public interest in the underlying action to which the discovery pertains).

43. The Defendants argue the public interest factor weighs in favor of a stay given the importance of the attorney-client privilege to our justice system,[69] while the Plaintiffs contend that the safeguards discussed above sufficiently protect any privilege and that the prior delay in the Adversary Proceedings warrants greater weight being given to the public interest in their resolution.[70]

44. The Court finds that the Defendants have sufficiently established that the public interest factor weighs in favor of a stay due to the importance of preserving the Defendant's privilege against a potentially reversed ruling. While the Court acknowledges there is a competing public interest in the advancement of the Adversary Proceedings, at this point in time, the requested stay is not likely to sufficiently hamper that interest so as to outweigh the countervailing interest in protecting privilege.

### III.   CONCLUSION

45. In sum, the Court finds that the Defendants have sufficiently established the first, second, and fourth factors to warrant granting a stay of the Order pending appeal. The Plaintiffs may move to dissolve the stay should it result in undue delay. At this juncture, the Court proceeds

---

[69] *See* Motion, p. 11 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Search Warrant*, 942 F.3d at 175 n.15 & 182; *United States v. Jones*, 1999 WL 1057210, at *3 (D.S.C. Oct. 5, 1999) ("[I] light of overwhelming concerns about protecting the sanctity of the attorney/client privilege, public interest weighs in favor of issuing a stay"); *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 475 (E.D. Va. 2011) (stating "the public interest risks being irreparably harmed absent a stay" of an order requiring disclosure of confidential information)).

[70] *See* Response, ¶ 41 (discussing how Federal Rule of Bankruptcy Procedure 1001(a) providing that the rules "must be construed, administered, and employed by both the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding" both constitutes an actual rule requirement this Court must follow as well as represents a "statement of public policy and public interest that disputes like the present one should be determined efficiently," which would be contravened by "[a]n indefinite stay").

under the hope that an appeal can be resolved expeditiously and directs the Defendants to pursue

such appeal without delay.[71]

**WHEREFORE**

1.  The Motion is **GRANTED** and the Order is stayed until 30 days after resolution of any post-

    ruling relief sought by the Defendants as to the Order.

2.  The Plaintiffs may move to dissolve the stay of the Order at any time that it appears that the

    stay will last long enough to alter the above analysis as to the stay factors or for any reason not

    contemplated in this Order.

**SO ORDERED.**

**This Order has been signed electronically.**                    **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**

---

[71] In both the Motion and in the Reply, the Defendants submitted to the Court that for a stay movant to establish the success factor under Fourth Circuit law, even if the court "'does not believe the [privilege holder's arguments] are likely to succeed'[,] when it comes to privilege, 'the stakes are high enough' and 'the potential harm of unwarranted disclosure' is serious enough that privilege holders 'should be afforded a meaningful opportunity to seek appellate review,' so long as their arguments are 'colorable and worthy of consideration'," citing *Grand Jury* (4th Circ. 2023) for the quoted language. Motion, p. 9 (citing 87 F.4th 229, 247 (4th Cir. 2023)) (first alteration in original and second added); see Reply, ¶ 8 (quoting and citing the same language).

     While that language does appear in the opinion, the language does not originate from the opinion but was being quoted from a district court order in that case. Nonetheless, the Motion and Reply both quote the language without the standard 'citing' parenthetical or internal quotation. This error then omits the fact that it was a quote and implies that the Fourth Circuit made a substantive holding in that case when that case explicitly did not decide that question. *See Grand Jury* (4th Circ. 2023), 87 F.4th at 247 (quoting the language "without deciding the issue.").