FILED & JUDGMENT ENTERED

Christine F. Ramsey

May  20  2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_____
Ashley Austin Edwards
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>    DBMP LLC,<br><br>        Debtor. | Case No. 20-30080<br>Chapter 11 |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants,<br><br>        Plaintiffs,<br><br>v.<br><br>    DBMP LLC and CERTAINTEED LLC<br><br>        Defendants, | Adv. Proc. No. 21-03023 |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants, each on behalf of the estate of DBMP LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>    Certainteed LLC, Certainteed Holding Corporation, and Saint-Gobain Corporation,<br><br>        Defendants, | Adv. Proc. No. 22-03000 |

1

|  |  |
| --- | --- |
| Official Committee Of Asbestos Personal Injury Claimants, and Sander L. Esserman, in his capacity as Legal Representative for Future Asbestos Claimants, each on behalf of the estate of DBMP LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Compagnie De Saint-Gobain S.A., Saint-Gobain Corporation, Saint-Gobain Delaware Corporation, Certainteed LLC, Certainteed Holding Corporation, Joseph Bondi, Sean Knapp, Lawrence Rayburn, Michael Starczewski, Vincent Dinenna, Robert Panaro, Donald Melroy, Pierre-André De Chalendar, Benoit Bazin, Antoine Vignial, Hubert Reichardt, Daniel Biarneix, Sreedhar Natarajan, Guillaume Texier, Thomas Kinisky, Carol Gray, John Sweeney, Eric Placidet, Mark Rayfield, and Keith Campbell,<br><br>Defendants, | Adv. Proc. No. 22-03001 |

**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING MOTION**

**THIS MATTER** is before the Court upon the Debtor's *Motion for Reconsideration and Amendment of Order*[1] (the "Motion"),[2] filed March 30, 2026, regarding the Court's *Order Partially Granting and Sustaining and Partially Denying Plaintiff's Privilege Motion and Defendants' Objection*[3] (the "Order"), entered March 16, 2026. On March 30, 2026, the non-DBMP Defendants joined the Motion. *See Motion and Joinder of CertainTeed LLC, CertainTeed Holding Corporation and Saint-Gobain Corporation in the Debtors Motion for Reconsideration*

---

[1] [Doc. No. 3399; Consolid. Adv. Pro. Doc. No. 412; Fraud. Transf. Adv. Pro. Doc. No. 349; Fid. Duties Adv. Pro. Doc. No. 318].

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Order.

[3] [Doc. No. 3390; Consolid. Adv. Pro. Doc. No. 411; Fraud. Transf. Adv. Pro. Doc. No. 348; Fid. Duties Adv. Pro. 317]; 2026 WL 973870; 2026 Bankr. LEXIS 883 (Bankr. W.D.N.C. Mar. 16, 2026).

*and Amendment of Order*.[4] On April 24, 2026, the Plaintiffs filed the *Brief in Response*[5] (the "Response"), and on May 8, 2026, the Defendants filed the *Reply in Support*[6] (the "Reply"). On May 13, 2026, the Court held a hearing on the Motion (the "Hearing").[7] At the Hearing, among others, Greg Gordon appeared on behalf of the Debtor, Gabrielle Gould appeared on behalf of the non-Debtor Affiliates, Carrie Hardman appeared on behalf of the Official Committee of Asbestos Personal Injury Claimants, and Felton Parrish appeared on behalf of the Future Claimants Representative. For the reasons below, the Court partially grants and partially denies the Motion.

## I.   DISCUSSION[8]

1.      The Defendants seek reconsideration of the Order pursuant to 11 U.S.C. § 105(a) and two Federal Rules of Civil Procedure (each, a "Civil Rule") and their incorporating Federal Rules of Bankruptcy Procedure (each, a "Bankruptcy Rule"), namely, (1) Civil Rule 59(e) and Bankruptcy Rule 9023, and (2) Civil Rule 52(b) and Bankruptcy Rule 7052.[9]

---

[4] [Doc. No. 3400; Consolid. Adv. Pro. Doc. No. 414; Fraud. Transf. Adv. Pro. Doc. No. 350; Fid. Duties Adv. Pro. 318].

[5] [Doc. No. 3430; Consolid. Adv. Pro. Doc. No. 429; Fraud. Transf. Adv. Pro. Doc. No. 367; Fid. Duties Adv. Pro. 337].

[6] [Doc. No. 3446; Consolid. Adv. Pro. Doc. No. 433; Fraud. Transf. Adv. Pro. Doc. No. 371; Fid. Duties Adv. Pro. 341].

[7] *See Transcript for Hearing/Trial held on 5/13/2026* [Doc. No. 3452; Consolid. Adv. Pro. Doc. No. 442; Fraud. Transf. Adv. Pro. Doc. No. 383; Fid. Duties Adv. Pro. 350].

[8] The Court will discuss any pertinent background below within the sections for which they are relevant. For the full factual and procedural history of the case, see Order, ¶¶ 1–75, or, for a shorter summary of the same, see *Order and Opinion Granting Stay of Order*, ¶¶ 1-14 [Doc. No. 3435; Consolid. Adv. Pro. Doc. No. 430; Fraud. Transf. Adv. Pro. Doc. No. 368; Fid. Duties Adv. Pro. 338].

[9] *See* Motion, p. 2 & ¶¶ 10–13.

A. **Legal Standard for Reconsideration, Alteration, or Correction of a Judgement**

2. The Civil Rules and their incorporating Bankruptcy Rules provide three separate avenues for parties to request a bankruptcy court reconsider and amend or otherwise alter a judgement. Specifically, Civil Rule 59(e) permits a party to move for a bankruptcy court to "alter or amend a judgment." Fed. R. Civ. P. 59(e) (incorporated into bankruptcy by Fed. R. Bankr. P. 9023 with a shortened period to move of 14 days after the ruling). Civil Rule 52(b) permits a party to move for a bankruptcy court to "amend its findings—or make additional findings—and [] amend the judgment accordingly." Fed. R. Civ. P. 52(b) (incorporated by Fed. R. Bankr. P. 7052 for bankruptcy adversary proceedings and with the same shortened period to move). Neither Civil Rule 59(e) nor Civil Rule 52(b) delineates in the statutory language the bases a movant must show for a court to grant reconsideration under either Civil Rule. In contrast, Civil Rule 60(a) permits a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record …. [O]n [a] motion or on [the court's] own." Fed. R. Civ. P. 60(a) (incorporated into bankruptcy by Fed. R. Bankr. P. 9024).[10]

1. **Section 105(a)**

3. First, the Motion relies on 11 U.S.C. § 105(a) through which the Defendants appear to request the Court use the broad powers granted to bankruptcy courts by that provision, specifically, the power to take any action "that is necessary or appropriate to carry out the provisions of [Title 11]," to override any otherwise applicable requirements for reconsideration under Civil Rules 59(e) or 52(b).

---

[10] Although all the Civil Rules and Bankruptcy Rules discussed herein have been amended since much of the case law interpreting those rules cited here, none of those amendments effected the rules application here.

4

4.       As held by the Supreme Court, "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *L. v. Siegel*, 571 U.S. 415, 421 (2014) (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105–6 (16th ed. 2013)) (explaining how this limit on § 105(a) "is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere" (citations omitted)); *see also Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Accordingly, Fourth Circuit law prohibits § 105(a) serving as "'a license for a court to disregard the clear language and meaning of the bankruptcy statutes *and rules*'." *David v. King*, 109 F.4th 653, 666 (4th Cir. 2024) (emphasis added) (quoting *Off. Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 303 (4th Cir. 1987)).[11] Based on this, Fourth Circuit bankruptcy courts reject requests to use § 105(a) "'to create substantive rights that are otherwise unavailable under applicable law.'" *In re Stokes*, 198 B.R. 168, 175 (E.D. Va. 1996) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).[12] Thus, because Civil Rules 59(e) and 52(b) are incorporated into

---

[11] *Accord Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013) ("[Section] 105(a) is not a 'roving commission to do equity.' A bankruptcy court's equitable powers 'must and can only be exercised within the confines of the Bankruptcy Code'" (citations omitted).); *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir. 2002) ("But section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code" (citation omitted).).

[12] *See also Gold v. Eccleston (In re Dornier Aviation (N. Am.), Inc.)*, 320 B.R. 831, 839 (E.D. Va. 2005) ("[Section] 105 of the Code, which concerns the bankruptcy court's equitable powers, does not allow a court to create new substantive rights" (citations omitted).).

bankruptcy proceedings through the Bankruptcy Rules, the Court cannot use § 105(a) to alter the standards that otherwise govern those rules, to the extent the Defendants request such relief.

**2.    Civil Rule 59(e)**

5.      Civil Rule 59(e) requires that the movant show adequate grounds that amendment is necessary either "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715, 728 (4th Cir. 2026) (citation omitted). "In general … 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly'." *Id.* (citation omitted). Thus, while Civil Rule 59(e) enables "'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings'," it "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d at 403 (citation omitted). Courts should not grant a "[Civil] Rule 59(e) motion unless the court abused its discretion." *Arvon v. Liberty Mut. Fire Ins. Co.*, 2021 WL 3401258, at *3 (4th Cir. Aug. 4, 2021) (citation omitted). In general, showing abuse of discretion requires satisfying a high bar to prevail on appeal. *See generally In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 250 (4th Cir. 2023) (citations omitted).

6.      For the third route for Civil Rule 59(e) relief, "courts are given wide leeway in determining what constitutes manifest injustice." *In re Boyd*, 618 B.R. 133, 162 (Bankr. D.S.C. 2020) (citation omitted). Civil Rule 59(e) reconsideration is warranted "when 'the dismissal of the [] suit might have been avoided through the exercise of due diligence'," but "'does not exist where ... a party could have easily avoided the outcome, but instead elected not to act until after a

final order had been entered'." *Arvon*, 2021 WL 3401258, at \*3 (citation omitted). Fourth Circuit courts have described Civil Rule 59(e) reconsideration as warranted where "a court 'has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension'." *In re Peugh*, 662 B.R. 261, 270 (Bankr. D.S.C. 2024) (citations omitted). In general, some Fourth Circuit courts have required that a movant under the manifest injustice route "show that it acted with diligence and that it stands to suffer injury that is 'direct, obvious, and observable,' rather than mere potential prejudice." *Hartford Cas. Ins. Co. v. Farley Assocs.*, 2014 WL 4219953, at \*5 (D.S.C. Aug. 25, 2014) (citations omitted).

7.      Courts, including those in the Fourth Circuit, have rejected attempts to utilize Civil Rule 59(e) to modify a court's dicta. *See, e.g., Hudson v. State Farm Ins. Co.*, 2019 WL 96216, at \*1 (E.D.N.C. Jan. 3, 2019) (rejecting Civil Rule 59(e) reconsideration because the statements movant sought to correct were "dicta and [did] not change the court's holding in its order"); *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 2024 WL 4573631, at \*3 (S.D. Fla. Mar. 11, 2024) (rejecting Rule 59(e) motion to reconsider dicta because movant "is seemingly [] attempt[ing] to correct the [c]ourt's perspective of his actions," when those "comments were merely dicta, and 'dicta is not binding on anyone for any purpose'" (citations omitted) (emphasis added); *cf. also, e.g., Abbs v. Sullivan*, 963 F.2d 918, 924–25 (7th Cir. 1992) (Posner, J.) ("If as we believe a winning litigant cannot appeal from a phrase or sentence—or for that matter *an extended discussion*—that he doesn't like in the opinion announcing the judgment in his favor, he must not be permitted to lever his way into the appellate court by asking the judge to delete the offending phrase, or sentence, or whatever and then appealing from the judge's refusal to do so. Rules 59(e) and 60(b) speak of motions to amend or vacate or modify the court's judgment. Dicta are not judgments. A

motion to vacate a dictum is outside the scope of these rules and an appeal from a denial of such a motion is frivolous and therefore does not engage our jurisdiction" (emphasis added).).

### 3.   Civil Rule 52(b)

8.      Civil Rule 52(b) is intended to "'correct manifest errors of law or fact.'" *In re Houck*, 2019 WL 2246542, at *1 (Bankr. W.D.N.C. May 23, 2019) (citation omitted). Some Fourth Circuit courts have described Civil Rule 52(b)'s "purpose … is in part 'to clarify essential findings or conclusions, correct errors of law or fact'." *Kora & Williams Corp.*, 2007 WL 1073994, at *1 (quoting COLLIERS ON BANKRUPTCY, 15th ed. Revised, ¶ 7052 (2006)). Others have described "'[t]he purpose of Rule 52(b) is [] allow[ing] a court to correct manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence, but not to "relitigate old issues, to advance new theories, or to secure a rehearing on the merits"'." *Butts v. United States*, 2018 WL 5078440, at *1 (N.D.W. Va. Apr. 23, 2018) (citation omitted). Civil Rule 52(b) is not intended to allow "'a party who realizes, with the acuity of hindsight, that [they] failed to present [their] strongest case at trial'," since "'entertain[ing Civil] Rule 52(b) motions in such a fashion would defeat the compelling interest in the finality of litigation'," wherefore Civil Rule 52(b) requires the movant "'show that the Court's findings of fact or conclusions of law are not supported by the evidence in the record'." *Id.* (citations omitted).

9.      Some Fourth Circuit courts have concluded that Civil Rule 52(b) involves a standard "far lower than the weighty [] test for amending" under Civil Rule 59(e). *See Kora*, 2007 WL 1073994, at *1 (citation omitted). In contrast, other Fourth Circuit courts have held that the standards for reconsideration under Civil Rule 52(b) and Civil Rule 59(e) are the same. *See Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, 2013 WL 5274356, at *3 n. 3 (D. Md. Sept. 17, 2013), aff'd, 594 F. App'x 798 (4th Cir. 2014) ("Rule 52(b) [] requir[ing] a showing of a "clear

error of law" or "manifest injustice" [] is coextensive with the requirements of Rule 59(e)" (citation omitted); *Ridgeway v. Stevenson*, 2011 WL 1466325, at *1 n. 1 (D.S.C. Apr. 15, 2011) ("[I]t appears that Petitioner's standard under Rule 52 is identical to the requisite standard under Rule 59(d)" (citing *Wahler v. Countrywide Home Loans*, Inc., 2006 WL 3327074, at *1 (W.D.N.C. Nov. 15, 2006)).). As with Civil Rule 59(e) above, federal courts have denied Rule 52(b) motions seeking to modify dicta. *See, e.g.*, *Lyons v. JeffersonBank & Tr.*, 793 F. Supp. 989, 992 (D. Colo. 1992) ("While one may quarrel with this vague characterization, this proposed finding is, again, wholly immaterial to my ultimate conclusion.").

### 4.    Civil Rule 60(a)

10.    "The Fourth Circuit describes the purpose of Rule 60(a) as allowing the court to "to fix a 'slip[ ] of the judicial pen.'" *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 416 (4th Cir. 2025) (quoting *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677, 679 (7th Cir. 2003)). Civil Rule 60(a) permits the Court "to conform the text with its original intent." *See Sartin v. McNair L. Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014). This includes an "unintended ambiguity that obfuscates the court's original intent." *See id*; *see also Rhodes v. Hartford Fire Ins. Co.*, 548 F. App'x 857, 859 (4th Cir. 2013) (per curiam) ("Rule 60(a) applies when 'the court intended one thing but by merely clerical mistake or oversight did another'" (citation omitted).); *accord United States v. Griffin*, 782 F.2d 1393, 1397 (7th Cir. 1986) ("[F]actual and legal misconceptions, as well as exercises of discretion, may not be corrected under [Civil] Rule 60(a), while blunders in execution may be."). However, Civil Rule 60(a) cannot be used to "to reconsider an issue that has already been decided, or to revisit the court's decisions already made." *See Chavez-Deremer*, 147 F.4th at 416 (citing *Sartin*, 756 F.3d at 265). In essence, "[Civil] Rule 60(a) allows a court to correct records to show what *was* done, rather than change them to reflect what *should have been* done."

9

*Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006) (emphasis in original).

11.     In contrast to Rule 59(e) and Rule 52(b), a correction under Rule 60(a) creates "no actual substantive change to the parties' rights that was not contemplated by the original memorandum order." *See Rhodes*, 548 F. App'x at 860 (citing *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 199 (5th Cir. 2011)). Therefore, the court only corrects "blunders in execution," and does not "change[] its mind, either because it made a legal or factual mistake… or …it has decided to exercise its discretion in a manner different from the way it was exercised." *See id.*, at 859-60 (quoting *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002)). Further while Rule 52(b) and Rule 59(e) concern amending or altering findings or judgments respectively, see Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 52(b), Rule 60(a) more broadly encompasses changes to the "judgment, order, or other part of the record." *See* Fed. R. Civ. P. 60(a).

*******************

12.     On the Court's view, Civil Rules 52(b) and 59(e) have the same high bar standard of manifest injustice or clear error of law. However, even where Civil Rules 52(b) and 59(e) reconsideration is unavailable, modification of an order may be appropriate under Civil Rule 60(a) based upon the much lower standard of showing any language in the Order that warrants clarification.

**B.  <u>Analysis and Application</u>**

13.     The Defendants seek reconsideration of the Order for the following: (1) various paragraphs that the Defendants argue improperly relied on the Injunction Order; (2) a discussion of the history of asbestos litigation both generally and with regard to Old CT in the background section of the Order (the "Asbestos Background Section"), on the basis that certain portions were

unbriefed and prejudge certain issues; and (3) a small sample of the Documents that the Order found were not privileged which the Defendants argue do meet the test for privilege in the Order.

### 1.    The Order's References to the Injunction Order

14.    The Defendants seek reconsideration of the Order based on three references to the Injunction Order.

#### a.    In General

15.    First, the Defendants argue that the Order committed a clear error of law by making a general holding that the Injunction Order had preclusive effect in these proceedings. In support of that argument, the Defendants point to various descriptions of the Injunction Order or parts thereof as "'binding'."[13] Such descriptions, the Defendants argue, constituted a clear error of law since, "[e]ven within a given case, findings in preliminary injunction proceedings are provisional and decided on a limited record" and thus "are not binding at the merits stage."[14] First, the Court agrees that the Injunction Order did not have preclusive effect. Preclusion requires a final merits ruling,[15] which the Injunction Order does not constitute.[16]

---

[13] *See* Motion, ¶ 15 (first quoting Order, ¶ 306 n. 490, then citing Order, ¶¶ 303 n. 483 & 309 n.493); Reply, ¶ 1 (same).

[14] *See* Motion, ¶ 16 (citations omitted).

[15] *See Baker v. GMC*, 522 U.S. 222, 233 n.5 (1998) (defining claim preclusion as requiring "a valid final adjudication" and issue preclusion or collateral estoppel as requiring "a valid final judgment" (citation omitted)); *Abella Owners' Ass'n v. MI Windows & Doors, Inc. (In re MI Windows & Doors, Inc., Prods. Liab. Litig.)*, 860 F.3d 218, 224 (4th Cir. 2017) (defining res judicata as requiring "judgment on the merits" (citation omitted)).

[16] *See, e.g., Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 682, n.7 (4th Cir. 2018) ("[W]e note that findings of fact made when granting a preliminary injunction are not binding at trial.")); *accord Kuzinich v. Cty. of Santa Clara*, 689 F.2d 1345, 1350 (9th Cir. 1982) ("In California …. [I]ssues litigated in a preliminary injunction action are not res judicata

16.     Accordingly, the Court acknowledges that the Order's use of 'binding' to describe the Injunction Order could be construed as erroneously finding preclusion, if the word 'binding' is understood in its usual sense of mandatory acquiescence and if the paragraph is viewed in isolation. Thus, the Court will grant limited relief under Civil Rule 60(a) to clarify that the Injunction Order did not have a preclusive effect and the Order did not make any findings in sole reliance on the Injunction Order.

17.     However, this clarification does not mean that no part of the Injunction Order could ever guide the Court or otherwise serve as law of the case as to findings dispositive to the Injunction Order.[17] Relatedly, nothing categorically precludes the Court from considering evidence from the Injunction Proceeding record for a separate proceeding, nor does anything bar the Court from concurring with any reasoning in the Injunction Order, based on the Injunction Proceeding

---

and do not form a basis for collateral estoppel" (citations omitted)); *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 754 (S.D.N.Y. 1990) ("Findings made in a preliminary injunction proceeding therefore are seldom considered sufficiently final to be given preclusive effect" (citations omitted).).

[17] The law of the case doctrine, while "'an amorphous concept', '[i]s most commonly defined [as] posit[ting] that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case'." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (alterations added) (citations omitted). Crucially, the doctrine "'directs a court's discretion, it does not limit the tribunal's power'." *Id.* (citation omitted); *see also Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68-69 (4th Cir. 1988) ("The law of the case doctrine is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation" (citation omitted).). This is a key difference between the doctrine and standard preclusion from res judicata. *Cf. Arizona v. California*, 460 U.S. 605, 618–19 (1983) ("[L]itigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which, after appeal, the binding finality of res judicata and collateral estoppel will attach."). Accordingly, even where the doctrine "might appear applicable," it is not mandatory, if, for example, it "would weaken to an intolerable extent the finality of [] decrees," *Arizona*, 460 U.S. 605 at 618-19, or where "'the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice"'." *Pepper*, 562 U.S. at 506-07.

record or common sense.[18] Importantly, the Injunction Order resulted from multiple days of evidentiary hearings and a litany of declarations and deposition designations. Lastly, this clarification does not alter any of the specific findings made by the Court in the Order. *Cf infra* note 23 & ¶¶ 21–25.

      b.  <u>The Funding Agreement</u>

18.    The Defendants further argue that the Order actually did improperly adopt certain Injunction Order findings as to the Funding Agreement so as to subject the Defendants to manifest injustice. The Defendants primarily base this argument on paragraph thirty of the Order ("Paragraph 30") in the background section within the context of discussion of the Restructuring and the various Intercompany Agreements into which the contracting parties entered around the Restructuring Date. Paragraph 30 describes six potential issues that the Injunction Order found existed under the Original Funding Agreement. The Defendants argue that Paragraph 30 "appears to adopt [] wholesale" the Injunction Order findings of those issues.[19] Such adoption is erroneous, Defendants argue, (1) because this Court acknowledged, after entry of the Injunction Order and prior to the Order, that one of the issues may have been in error,[20] and (2) because it does not

---

[18] Illustratively, some Fourth Circuit courts have treated prior rulings made in preliminary proceedings, despite not being preclusive, as still warranting deference. *Cf., e.g.*, *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 1998 WL 1108931, at *3 (E.D. Va. May 22, 1998). Indeed, the sentences describing the Injunction Order as 'binding' were intended to make this limited point. The Court was simply trying to say that the Injunction Order could and should be considered.

[19] *See* Motion, ¶ 20.

[20] *See id.*, ¶ 20 & ¶ 4 n. 6 ("The Funding Agreement never required, as a condition to funding a trust, that New CT obtain relief pursuant to section 524(g) or agree to the terms of a confirmed plan. Judge Whitley later recognized that this error in the PI Findings and Conclusions likely stemmed from his confusion regarding different language in the funding agreement in the Aldrich cases. *See* Dkt. 1155, Oct. 14, 2021 Hr'g Tr. at 13:21-14:25.").

account for the Second Amended Funding Agreement, which (a) controls for analyses of the Adversary Proceeding claims and (b) cured or precluded the other five issues.[21]

19.     The Court acknowledges that Paragraph 30 does create some ambiguity. Viewed in isolation, the paragraph could be read as rejecting the Defendants' arguments as to the Second Amended Funding Agreement's effect on the five issues, based on the paragraph's use of present tense verbs for the issues without mention of the Second Amended Funding Agreement. However, that ambiguity does not warrant relief under Civil Rule 59(e) because, both on its own terms and when considered in context, the paragraph did not prejudge any issue. Paragraph 30 is simply dicta because it appears in a background section and is not a finding of fact; thus, because it is not an operative ruling, Civil Rule 59(e) is unavailable.[22]

20.     Further, in context, the "manifest injustice" the Defendants assert could arise from Paragraph 30 absent amendment—namely, the prejudging of Adversary Proceeding issues—is expressly disclaimed elsewhere by the Order within its operative findings. In particular, the Order expressly declined to decide in its operating rulings both (1) which Funding Agreement controls and (2) what effect the Second Amended Funding Agreement has on the five issues, if that

---

[21] *See id.*, ¶ 20.

[22] Additionally, even as dicta and viewed in isolation, the Second Amended Funding Agreement does not make a recitation of the five issues erroneous. That recitation described the various Intercompany Agreements entered into by the Defendants during the post-Restructuring Date and pre-Petition Date period. During that period, only the Original Funding Agreement existed, whereas the Second Amended Funding Agreement did not. *See* Order, ¶¶ 28–29. Accordingly, no error exists from omitting a discussion of the Second Amended Funding Agreement in the paragraph. The only possible error in the paragraph could be its exclusive use of the present tense and recitation of the one issue of the six that was made in mistake. At any rate, both errors could only constitute clerical ones that cannot warrant reconsideration under Civil Rule 59(e). As to the issue which this Court years ago recognized was a mistake, the Plaintiffs have agreed to not reraise it, wherefore it is now moot.

agreement controls, precisely because further detailed briefing was needed. *See* Order ¶¶ 179, 186,

& 189.[23] Still, the Court will grant limited relief under Civil Rule 60(a) to clarify that Paragraph

30's background information did not trump that express ruling in the Order.

    c.   The DBMP Filing Decision

    21.    The Defendants argue that the Order improperly adopted certain Injunction Order

findings as to DBMP's decision to file for bankruptcy, thereby subjecting the Defendants to

manifest injustice. Specifically, the Defendants cite the Order's ruling "that the decision for DBMP

to file bankruptcy was made much prior to the January 22 Meeting and at least as of the

Restructuring Date" (the "DBMP Filing Decision Finding") which rejected the Defendants'

arguments otherwise.[24] The Defendants argue this finding "adopts the characterizations in the

[Injunction Order] regarding [] the planning and implementation of the prepetition corporate

restructuring" (the "Injunction Order Discussion").[25] They argue such adoption constitutes error

---

[23] The Defendants raise, in addition to Paragraph 30, one operative finding in the Order
concurring with the Injunction Order's findings as to the Funding Agreement. Namely, the
Defendants cite the Order's ruling that "the Plaintiffs may be able to present plausible evidence"
that the Funding Agreement did not constitute reasonably equivalent value based on, at least,
how the Funding Agreement "was not negotiated at arm's length, which is required for valid,
binding contracts," "as this Court has already found" in the Injunction Order. Order, ¶ 185 (cited
in Motion, ¶ 16). Crucially, that finding did not constitute a final merits ruling as to whether the
Funding Agreement constitutes reasonably equivalent value on that basis, but simply a ruling
that the non-arm's length basis precludes dismissal of the Fraudulent Transfer Adversary
Proceeding, as is probably required pursuant to law of the case. *Compare supra* note 17 *with
Order Denying Motion to Dismiss Amended Complaint* [Fraud. Transf. Adv. Pro. Doc. No. 89].
Thus, that sentence cannot prejudge any issues to warrant reconsideration under Civil Rule 59(e)
since it too was simply a preliminary finding. Additionally, the finding did not constitute
adoption of the Injunction Order's findings, but rather independent concurrence with reasoning
in the Injunction Order and this Court's later denial of dismissal of the Adversary Proceedings.
Accordingly, it cannot warrant reconsideration or alteration of the Order under any rule.

[24] *See* Motion, ¶ 15 (citing Order, ¶¶ 305–306 & 309).

[25] *See id.*, ¶ 15.

because it ignores how this Court later stated that the Injunction Order Discussion "'could be considered dicta'"[26] and how "findings in preliminary injunction proceedings are provisional and decided on a limited record."[27] Lastly, they conclude such adoption creates manifest injustice by prejudging "disputed allegations in the[] Adversary Proceedings."[28] The Court rejects this argument in full and grants no reconsideration or clarification under any Civil Rule.

22.     First, the DBMP Filing Decision Finding did not adopt the Injunction Order Discussion. The Court made the DBMP Filing Decision Finding independently of the Injunction Order and simply concurred with that order's reasoning based not only on the evidence in the record, but also on common sense. *See, e.g.*, Order, ¶ 307 (rejecting the Defendants' arguments as to the DBMP filing decision as "unpersuasive even without considering [the] evidence [from the Injunction Proceeding], based on unavoidable realities for any significant and substantial corporation transaction such as the Defendants' Texas Two Step").[29]

23.     Second, the fact that the Injunction Order Discussion may have been dicta in the Injunction Order does not preclude the Court from concurring with those passages. As explained above, while dicta does not mandate preclusion, it also does not bar independent agreement. *See supra* note 18. Similarly, the fact that evidence for those passages arose from a preliminary proceeding record does not bar consideration of such evidence. Additionally, the Court described the Injunction Order Discussion as dicta not due to insufficient adversarial submission on DBMP's filing decision for the Injunction Order, but because the Injunction Order Discussion was not

---

[26] *See* Motion, ¶ 15 (quoting Jan. 6, 2022 Hr'g Tr., at 22:6-13 [Doc. No. 1285] ("January 6 2022 Hearing Transcript")).

[27] *See id.*, ¶ 16.

[28] *See id.*, ¶ 15.

[29] Additionally, the Court's in-camera review of the Documents, conducted separately from the DBMP filing decision topic, did not negate the DBMP Filing Decision Finding.

dispositive to the Injunction Order.[30] Further, the Court discussed how the deciding the questions as to the DBMP filing decision was indeed relevant and necessary for deciding the Defendants' privilege for the Adversary Proceedings.[31] Relatedly, it is worth noting the Court making the DBMP Filing Decision Finding precluded the possibility that hundreds more of the Documents may have required disclosure, given how, without the finding, the Referee recommended disclosure of a massive number of Documents to rebut the Defendants' submissions on this topic. *Cf.* Order, ¶ 309 n. 493.[32]

24.     Moreover, the Court described the Injunction Order Discussion as dicta in part because it precisely required an in-camera review, which was executed by the Court for the Order.[33] Importantly, this point, originally made by the Court years prior to the Order, negates the Defendants' arguments that the DBMP Filing Decision Finding was not germane to the Order. The Court was forced to make the DBMP Filing Decision Finding due to the parties' extensive litigation

---

[30] *See* January 6 2022 Hearing Transcript, at 22:6–18 (describing how although "both sides addressed it in detail" the DBMP filing decision question, those submissions did not ultimately determine the Injunction Order's operative findings but other law that applied regardless of which side prevailed as to DBMP filing decision).

[31] *See id.*, at 23:3–15 (describing how the Plaintiffs' inquiries as to DBMP filing decision question seek "discovery for use in future proceedings in the case" and "is relevant to" some issues).

[32] Notably, the Referee found the Defendants' arguments on the DBMP filing decision so unpersuasive and so contradicted by the Documents, to recommend it could serve as a basis for fraud on the court. *See* Order, ¶ 190 n. 352.

[33] *See* January 6 2022 Hearing Transcript, at 21:24–22:5 ("I really couldn't make a full-fledged decision as to whether all this was privileged then or not…. [As] I didn't have an in-camera review of the documents."); *id.*, at 2125:4–14 ("[B]ecause what we're dealing with here are effectively business strategies that emanated from legal advice, the decision to do the divisional merger, the corporate restructuring, and all that, those things are blended together…. You can't do it on a generalized basis,…. You have to look at the documents and talk about each of the individual issues.").

of and briefing on this topic. Accordingly, the DBMP Filing Decision Finding was entirely proper, not because the Injunction Order demanded it, but because the Court was called upon to decide the issue. Additionally, regardless of the Injunction Order Discussion, the Court made the DBMP Filing Decision Finding in the Order and it now constitute the law of the case.[34]

### 2.    The Order's Background on Asbestos Litigation in General and for Old CT

25.    The Defendants seek reconsideration of the Order as to the Asbestos Background Section regarding descriptions of asbestos litigation and liability, both in general and specifically with regard to Old CT.[35] The Defendants argue that any such descriptions were in error since "[t]he parties neither briefed nor offered evidence on any of these issues," which did "[n]o[t] bear on the privilege issues" disposed of by the Order.[36] The Defendants further argue they will present at the Estimation Trial arguments contrary to the descriptions. Unless those descriptions are withdrawn, the Defendants argue the Order "prejudge[s] issues to be addressed in the Estimation Proceeding, and could prejudice the [Defendants] in that proceeding," which would constitute "a manifest injustice to the [Defendants]."[37]

26.    On this basis for reconsideration, the Court will also not withdraw these statements because the issues raised by the Defendants do not satisfy the standard for reconsideration under

---

[34] Additionally, as the Court noted in the Order, the DBMP Filing Decision Finding did not prejudge an issue dispositive to any Adversary Proceedings, as the DBMP filing decision question is at most relevant to some issues in the Adversary Proceedings, "but it is most assuredly not dispositive." *See* Order, ¶ 304 & 304 ns. 487–88 (citations omitted). Although the Defendants are right that the DBMP filing decision topic have been vigorously disputed in the Adversary Proceedings for years, those disputes are not a function of their importance but the parties' choices.

[35] Motion, ¶ 29 (citing Order, ¶¶ 2-7 & 12-16).

[36] *Id.*, ¶ 29.

[37] *Id.*, ¶ 34.

Civil Rule 59(e). The Asbestos Background Section's occurrence in the overall background section of the Order makes it clear that those descriptions were dicta that, as the Defendants acknowledge, was simply included "to provide a more comprehensive description of the nature of the Chapter 11 Case" for the public.[38] Accordingly, notwithstanding any potential issues due to their being unbriefed, they could not be construed as prejudging any issues. Still, explicit clarification to this effect is not improper. Thus, the Court will grant limited relief under Civil Rule 60(a) to clarify that Asbestos Background Section does not prejudge any issues for the Estimation Trial.[39]

### 3.    The Order's Rulings as to Certain Documents

27.    As to the specific Documents of which the Defendants seek reconsideration, the Defendants argue that twenty-two Documents[40] that the Court had found to be not privileged are in fact privileged. They contend that eleven of the Documents clearly meet the legal purpose requirement despite the Court having found otherwise, whereas the rulings as to eleven Documents misidentified the specific Document, which, when properly identified, also meets the legal purpose requirement.[41] As to these Documents and their privilege, the Court agrees and grants reconsideration under Civil Rule 59(e) with regard to those Documents' designations in Appendix B. The Court finds that fifteen of the Documents are fully privileged; however, one Document of these fifteen is also subject to the at-issue waiver found in the Order. The Court finds that the

---

[38] *Id.*, ¶ 34.

[39] Of course, this clarification and any of the above clarifications do not bar the Plaintiffs from using any sources in the Order for persuasive authority, simply from treating the sources as binding and unrebuttable by the Defendants.

[40] In the Motion, Reply, and at the Hearing, the Defendants described this number as twenty-four. However, the Court has double counted the total numbers of the Documents on which the Defendants make this argument and counts only twenty-two.

[41] *See* Motion, ¶ 35; Reply, ¶ 16.

remaining seven Documents are also privileged in part but still require some disclosure as to parts that are not privileged. The Court has appendaged to this Order a new revised Appendix B representing these new reconsidered rulings.

**WHEREFORE**

1.) The Motion is partially **DENIED** and partially **GRANTED**.

2.) The Court **CLARIFIES** that the Injunction Order did not have any preclusive effect for any finding in the Order;

3.) The Court **CLARIFIES** that Paragraph 30 of the Order does not constitute a holding (1) that the Original Funding Agreement controls for the analysis or (2) that the Second Amended Funding Agreement did not affect any of the issues with the Funding Agreement found by the Injunction Order, as the Order explicitly declined to decide either question;

4.) The Court **CLARIFIES** that none of the discussion in the Asbestos Background Section prejudges any issues in or precludes any arguments for the Estimation Trial;

5.) The Court **AMENDS** Appendix B to **REDESIGNATE** 22 Documents in line with this order.

**IT IS SO ORDERED.**

**This Order has been signed electronically.**                    **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**

20